IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

LEO FORD and BOSTON LIFE AND
ANNUITY,

                Plaintiffs,

vs.                                          Case No. 9:16-cv-80618

KPMG LLP; BELMONT INSURANCE
MANAGEMENT; CASEY MCDONALD, et. al,

                Defendants.

_____/

### DEFENDANT BRADLEY BARROS' MOTION TO DISMISS; ACCOMPANYING MEMORANDUM OF LAW; REQUEST FOR ORAL ARGUMENT

Defendant Bradley Barros, through undersigned counsel and pursuant to Rules 12(b)(1), 12(b)(6) and 9 (a) Fed. R. Civ. P., moves to dismiss the Complaint with prejudice.

As detailed below, Plaintiffs have neither capacity nor standing to bring this action because:

(a). the claims of "direct injury" are claims belonging to the Plaintiff Boston Life and Annuity ("Boston Life") but

(b). Boston Life's assets – including choses in action – do not belong to Boston Life or to the individual Plaintiff Leo Ford because – as alleged in the Complaint itself – control of Boston Life and its assets are vested in a liquidating receivership (Compl. ¶ 42) which is ongoing in nature, Compl. ¶ 42. Further,

(c). Boston Life was "struck off" the rolls in the BVI seven years ago and is devoid of any capacity to engage in this litigation.

The federal civil RICO counts are time-barred , as appears from the allegations in the

Complaint itself.   Additionally, there is no <u>factual</u> allegation of the necessary predicate act of mail fraud.

This Complaint also calls out for a *Twombly/Iqbal* analysis for dismissal on the basis of implausibility:  Plaintiffs contend that one of the largest law firms in the world – Greenberg Traurig – and one of the largest international accounting firms in the world – KPMG – entered into a criminal enterprise with Defendant Bradley Barros to "steal [Boston's] products and clients," Compl. ¶ 143, even though neither KPMG nor Greenberg Traurig is in the insurance business .  The Complaint seeks to cobble together a variety of miscellaneous ancient grievances Leo Ford had with a variety of disparate persons and firms,  sprinkles in a talismanic recitation of the elements of a civil RICO claim, and delivers the resultant smorgasbord to this Court under a claim that federal jurisdiction exists.  It does not.

As set forth in the Memorandum which follows, federal jurisdiction is founded upon 28 U.S.C. Sec. 1331, based on 18 U.S.C. Section 1961-1968 (Civil RICO) (Counts I and II).  The remaining Counts III-IX are founded upon [sic] "pendant jurisdiction"  (Compl. ¶ 7; i.e., supplemental jurisdiction, 28 U.S.C. Sec. 1367.)  However, because the federal RICO counts (I and II) fail, the state-law claims fail due to the absence of federal jurisdiction.  Additionally, each of the state-law claims (Counts III-IX inclusive) is facially and fatally deficient:  each is time barred from the face of the Complaint, and each violates one or more fundamental principles under Florida law, requiring dismissal with prejudice.

Finally, essential portions of the Complaint call for this Court to pass upon the propriety of actions taken by officers acting in and for the Courts of the British Virgin Islands – KPMG and its various employees and related entities who are named as Defendants herein.  Because this Court serves as a Court of original jurisdiction and not of appellate jurisdiction, it cannot become

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

involved in passing upon matters which should be adjudicated abroad, such as alleged

impropriety by KPMG in carrying out its duties as liquidating Receiver in the British Virgin

Islands – a matter which is clearly within the purview and jurisdiction of the receivership court

itself, not this Court.

For these reasons, and for the reasons more fully set forth below, the Complaint must be

dismissed with prejudice

<div align="center">

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
BARROS' MOTION TO DISMISS**

</div>

## I.     INTRODUCTION – OR, AN ATTEMPT TO BRING SOME ORDER TO THE CHAOS OF THE COMPLAINT.

The allegations of the Complaint relate to a financial scandal in the Caribbean which took

place in approximately 2000-2005.  While the nature of the scandal appears in "bits and pieces"

in the confusing narrative of this Complaint, it may be helpful for the Court if these "bits and

pieces" are identified and placed in an overall context.

Boston Life marketed insurance programs to over 50 customers with a "refund of

premium" plan whereby the insureds could recoup their premiums if they were free of claims

during five years of coverage.  *See* Compl. ¶ 39, it was a "five year pay-in product."

The marketing of the insurance involved providing a tax opinion to the customers to the

effect that the customers could take a federal income tax deduction for the premiums paid to

Boston Life. It is this feature which underlies the allegations that Greenberg Traurig would not

update the "opinion" (Compl. ¶ 83) and that Greenberg Traurig "refused to write the 5th year

opinion letter", (Compl. ¶ 91) so that Boston could not obtain the fifth year premiums from 54

clients absent the tax opinion letter, Compl. ¶ 92.

Unfortunately for the 50 plus clients, Ford put Boston Life out of business during the

<div align="center">

3

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

</div>

fourth year, *See* Compl. ¶ 42, leading to an explosion of ligation both in the Caribbean and in Florida as the insurance customers attempted to obtain their premium refunds.  Thus we see the reference to Boston Life suing the customers, seeking a declaratory judgment in the Eastern Caribbean Supreme Court (Compl. ¶ 93).  (In this regard, *see Employers International and others v. Boston Life and Annuity Co., Ltd*., HCVAP 2007/005, where the alleged "summary judgment in favor of Boston Life," (Complaint, paragraphs 93, 96, 103) was REVERSED on appeal.) The customers obtained a freeze on Boston Life's assets, (Compl. ¶ 94); litigation was also instituted in Florida  (Compl. ¶ 95).  It was this prior litigation activity which gave rise to the depositions and affidavits referenced by Plaintiffs (*See*, e.g., Complaint ¶s 38, 61, 67, 75, 87). Plaintiffs then claim that Defendant Barros conspired with Greenberg Traurig and others to compete with Boston Life in the insurance industry and to "steal" Boston Life's clients; allegedly, Greenberg Traurig's refusal to issue tax opinions for Boston Life for the fifth policy year, and instead, writing tax opinions for Barros/Bancroft (Complaint ¶ 50) was part of the conspiracy to ruin Boston Life's business.

While it is hoped that the foregoing effort to bring clarity to the chaos in the Complaint is of assistance to the Court, other portions to the Complaint render it substantially unintelligible. Various people and companies are sprinkled randomly amongst the allegations without explanation.  Paragraph 41 partially identifies someone named "May".  Paragraph 45 names "Puritan"; "LCCF"; "Hoilman"; and "MetCap."  Paragraph 51 discusses – with no context at all – "Staffworks" , "SCI"; "Scolari."  Paragraph 70 randomly refers  to "IAPB"; "Dijon"; "Sentry and  Benefit Purpose Trust."   In Compl. ¶ 69, Plaintiffs refer to a mysterious, not – attached, "Exhibit 4, p. 167, line 14 through p. 168, line 10 and Exhibit 11c."   However, while these irregularities in pleading, in violation of Rule 8(c), Fed. R. Civ. P., might compel an amended

4

Complaint, in the final analysis they are of no consequence, because this action must be dismissed with prejudice, all as detailed below.

## II.    LACK OF CAPACITY/LACK OF STANDING.

A Plaintiff's lack of capacity is properly raised by motion prior to a responsive pleading. *De Saracho v. Custom Food Machinery, Inc.,* 206 F.3d 874 (9th Cir. 2000).

Rule 17(b) Fed. R. Civ. P. provides that the capacity to sue, in the case of corporations, is governed by the law of the jurisdiction where the corporation was organized.  Here, the Complaint alleges (paragraph 28) that Boston Life was domiciled in the British Virgin Islands. The Complaint further alleges  (paragraph 42) that KPMG was appointed in the BVI as a liquidating receiver of Boston Life in 2008.

Under the law of the British Virgin Islands, two circumstances exist which compel the conclusion that neither  the individual Plaintiff nor Boston Life has any authority to pursue this action.  Specifically:

A.    With Boston Life being placed into liquidating receivership, control of its assets – including  causes of action for damages – passed to the control and authority of the liquidating receiver.  Such is the general rule, *see e.g*., *Hamilton v. Flowers*, 183 So. 811 (Fla. 1938), and is the law in the BVI.  Sec. 175 of the Virgin Islands Insolvency Act, (No. 5 of 2003) provides:

> (1)    Subject to subsection (2) with effect from the commencement of the liquidation of a company.
>
> (a)    the liquidator has custody and control of the assets of the company ….
>
> (2)    Subsection (1) does not affect the right of a secured creditor to take possession of and realize or otherwise deal with assets of the company over which that creditor has a security interest.

Further, under Sections 185 and 186 of the Insolvency Act, *supra*, it is the duty of the

5

liquidator to take possession of, protect and realize the assets of the company, with the "power to commence…legal proceedings in the name of the company."  Accordingly, <u>Boston Life has no legal authority to institute this action</u>; only its liquidating receiver can do so.

B.      Boston Life is no longer an existing legal entity.  In 2009 it was "struck off" from the rolls of viable legal entities for and under the laws of British Virgin Islands.  *See* Notice of Filing Apostilled Certificate from BVI Financial Services Commission, filed contemporaneously herewith. Having been "struck off," Boston Life simply has no capacity to maintain this action. Sec. 215(1) of the BVI Business Companies Act 2004 (as amended) provides, in pertinent part:

> Where a company has been struck off the Register, the company, and the directors, members and any liquidator or receiver thereof may not
>
> > (a)      Commence any legal proceedings; carry on any business or in any way deal with the assets of the company.

Further, Boston Life has been dissolved.  *See M.H. Smith (Plant Hire) Ltd. v. D.L. Mainwaring*, (T/A Inshore) [1986] BCLC 342: upon dissolution, a company ceases to exist and no action can be started in its name.

Similarly, the individual Plaintiff Leo Ford has no standing to bring this action.  His claims are merely derivative:  that is, the claims of direct injury to Boston Life purportedly caused indirect loss to Ford, a principal of Boston Life.  Where the claimed damages flow primarily from injuries to an entity, the injuries to the shareholders are indirect and do not provide a basis for individual suit.  *See generally*, *AmSouth Bank v. Wynne*, 772 So.2d 574 (Fla. 1st DCA 2000); *Fried v. Easton*, 293 So.2d 87 (Fla. 3rd DCA 1974).  *See also Dinuro Investments, LLC v. Camacho*, 141 So.3d 741 (Fla. 3rd DCA 2014):  the requirement is that there

be direct harm to the shareholder or member which does not flow substantially from a direct

harm to the company.

Because the damage claims asserted in the Complaint "belong to" Boston Life, Ford has

no standing or capacity to assert them.  Rather, claims which belong to Boston Life would of

necessity have to be asserted by the Receiver and the proceeds of litigation would then be

devoted to payment of Boston Life's creditors.   Ford's claims of loss of his investment in

Boston Life, and his alleged inability to collect sums contractually owed to him by Boston Life,

(Complaint ¶29) are *indirect* losses which could be paid to him by Boston Life if Boston Life

recovered on the claims made here (which it cannot).

Boston Life has been stricken off the rolls and dissolved, and with that dissolution comes

the end of this action.  No valid judgment may be rendered for a dissolved corporation absent

statutory authority extending the life of the corporation for litigation purposes.  *Oklahoma*

*Natural Gas Co. v. Oklahoma*, 273 U.S. 257, 259 (1927).  Under the law of its domicile – BVI –

the ability to sue ceased  upon being "stricken off" in 2009.  A suit filed by Boston Life is akin to

a suit filed  by a ghost, not creating a case or controversy for adjudication as required by Article

III, Sec. 2 of the Constitution of the United States.  This matter is not "justiciable" because

Boston Life – being non-existent – cannot have an "adverse legal interest," *Aetna Life Inc. Co. v.*

*Haworth*, 300 U.S. 227, 240 (1937).  As Plaintiffs lack standing, the Complaint must be

dismissed.  Rule 12(b)(1), Fed. R. Civ. P.

Plaintiffs also lack standing to assert a variety of other claims appearing in the

Complaint.  Federal district courts are courts of original jurisdiction, not appellate courts

reviewing actions of other tribunals.  *See* 28 U.S.C. Sec. 1331.  Under that premise, and under

principles of international comity, this Court has no jurisdiction to rule upon the propriety of

Case No.  9:16-cv-80618

actions taken by KPMG in the British Virgin Islands while acting as liquidating receiver under the aegis of a foreign tribunal.  Here, Plaintiffs contend  (Complaint ¶ 42-49, 101-105) that KMPG, as the liquidating receiver appointed by the receivership court in the British Virgin Islands, engaged in various acts of misconduct.  Under the disguise of "RICO", Plaintiffs ask this Court to rule on the propriety or impropriety of KPMG's conduct of the liquidating receivership, and to hold the Defendant Barros liable as an alleged co-conspirator in an alleged "RICO enterprise" with KPMG.   However, claims against a foreign receiver require that leave to sue be granted by the <u>appointing</u> court.  *Ray v. Trice*, 42 So. 901 (Fla. 1907); *Dunscombe v. Loftin*, 154 F.2d 963 (5th Cir. 1946;) S.*E.C. v. Lincoln Thrift Assoc*., 557  F.2d 1274 (9th Cir. 1977).  No such authority exists.

Similarly, Plaintiffs seek to challenge in this Court the propriety of the asset freeze imposed on the assets of Boston Life by the Eastern Caribbean Supreme Court (*See* Compl. ¶ 94, 95).  The propriety of that freeze order is not for determination by this Court, nor is whether Defendant Barros failed to make a full disclosure to the Court in the British Virgin Islands when he provided testimony in proceedings in that jurisdiction. Compl. ¶ 81-83.

Similarly, Plaintiffs asked this Court to determine (¶ 59 of the Complaint) that the insurance program set up by Bancroft does not result in deductibility of premiums paid; but neither Plaintiff claims to have paid any such premiums, so neither has standing to litigate such an issue.  Further, absent any allegations that either Plaintiff was a "buyer or seller" of a security, Plaintiffs lack standing to seek a determination here that Bancroft's  insurance program constituted the sale of unregistered "securities," as alleged in ¶s 58, 59 of the Complaint.  *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975).

8

Case No. 9:16-cv-80618

## III.   THE FEDERAL RICO CLAIMS ARE BARRED BY LIMITATIONS ON THE FACE OF THE COMPLAINT.

A defense of statute of limitations is appropriate under Fed. R. Civ. P. 12(b)(6) where the defense appears on the face of the Complaint itself. *Tello v. Dean Witter Reynolds*, 410 F.3d 1275, 1288 (11th Cir. 2005).

The statute of limitations applicable to federal RICO claims is four years, arising from the first predicate act –not the last – to injure the Plaintiff. *See*, *Jay E. Hayden Foundation v. First Neighbor Bank N.A*., 610 F.3d 382, 386-87 (7th Cir. 2010).

A RICO cause of action accrues when a plaintiff knew or should have known of his injury and the source of the injury, and no "equitable tolling" is available to a plaintiff who fails to exercise due diligence. *Madison 92 Street Associates LLC. v. Courtyard Management, Corp*. 624 Fed. Appx. 23, 26-27 (2d Cir. 2015). Even if a Plaintiff makes no inquiry, once there are sufficient "storm warnings" to trigger a duty of inquiry, knowledge will be imputed as of the date the duty of inquiry arose. Where a reasonably intelligent person would have knowledge of  a fact suggesting the probability of injury, the RICO statute of limitations begins to run. *See Koch v. Christie's Intern. PLC*, 699 F.3d 14, 151-52 (2d Cir. 2012).

The four year period begins to run when Plaintiff knew or should have known enough information to warrant an investigation. *Daly v. Pearl Spirits, Inc*., 438 F. Appx. 644, 645-66 (9th Cir. 2011). The "injury discovery" rule applies when Plaintiff is on notice of facts which should arouse suspicion. *In Re: Integrated Res. Inc. Real Estate Ltd. Partnerships Securities Litigation,* 851 F. Supp. 556, 557 (S.D. N.Y. 1994).

Here, Plaintiffs repeatedly  allege that Defendants conspired to "steal" Boston's clients. (Compl.¶ 143, 158.) They claim (Compl. ¶ 76) that in <u>2001</u> Defendant Sigel (an alleged co-

9

Case No. 9:16-cv-80618

conspirator with Defendant Barros) agreed to a 50/50 business arrangement with Ford – but Ford certainly must have known long ago that Sigel was not proceeding with a business relationship with Ford.  Similarly, they allege that  in *2002* (that is, 14 years before the suit was filed) Barros and other Defendants diverted from Boston Life some $2.7 million dollars in premium payments that were allegedly "intended for an insurance program offered by Boston Life and Annuity".  Compl. ¶ 39.  It cannot be contended, rationally, that the Plaintiffs did not know that $2.7 million dollars did not arrive to their accounts!  Plaintiffs allege that Defendant Barros*, in 2002,* diverted a client of Boston Life.   *See* Compl. ¶ 72, 73.  Further, the Complaint alleges that Greenberg Traurig and Bancroft were publicly acting in concert in 2004 (Compl. ¶ 63, 63) and that Defendants have been profiting from their activities since at least *2005* (Compl. ¶ 155).   They then allege (Compl. ¶ 79) that "during this time" a "smear campaign" was launched against them, with attorney William Hoilman filing suits in Miami and assisting Defendant Barros in the BVI litigation and smear campaign – activities which were ongoing in <u>2006</u>,  Compl. ¶ 86. They also allege that in *2008* KPMG was appointed as liquidator of Boston Life.  Plaintiffs now contend (Compl. ¶ 42) that KPMG had a conflict in serving as both liquidator and auditor for Boston Life – a conflict which – if existing – undeniably was apparent to Plaintiffs back in 2008.

Following all of the allegations of activities taking place between 2001 and 2006,  Barros allegedly approached Boston and discussed taking Boston's clients to Bancroft!  Compl. ¶ 80. Similarly, Plaintiffs  allege (Compl. ¶ 94) that before the Court decision in the BVI, Barros/Bancroft wanted Boston to transfer its clients to Bancroft; and  "while all this was going on, Barros told BLA [Boston Life] that Bancroft would take BLA's 52 clients, proving Bancroft was in the same business."  Complaint ¶ 98. These allegations are the final nails in the coffin: the essence of the Complaint is that the "conspirators" set up Bancroft as a competitor to "steal"

10

Boston Life's clients (Compl. ¶ 143, 158), but Plaintiffs admittedly knew that Bancroft/Barros were competing in the insurance industry ten years ago.   It is undeniable that the Plaintiffs were fully aware – a decade before this litigation was filed – that Barros and Bancroft had launched a competing insurance business.

With Plaintiffs having <u>admittedly</u> been on actual notice that Boston Life's  business interests were supposedly being injured by acts of the Defendant Barros for far more than four years prior to instituting this suit, this RICO action is barred by limitations.

### IV.   <u>NO RICO PREDICATE MAIL FRAUD ALLEGATION.</u>

The RICO statutes represent Congress' effort to combat organized long term criminal activity.  *HJ Inc. v. Northwestern Bell Telephone Company*, 492 U.S. 229, 230 (1989).  These statutes are not intended to hand the litigator a new tool for complex civil litigation, but rather are to serve as a weapon to fight crime.  *See Banco Latino International v. Gomez Lopez*, 95 F. Supp. 2d. 1327 (S.D. Florida 2000).  Given the severity of a trebled damages remedy under RICO, and the ease with which a litigant can plead a "mail fraud" concept, RICO complaints are particularly scrutinized to determine the existence *vel non* of the predicate act of "mail fraud".  *Crawford v. Franklin Credit Management Corp.*, 758 F.3d 473, 489 (2d Cir. 2014).  This Complaint fails to meet the heightened pleading standard of Rule 9(b), Fed. R. Civ. P.:  fraud must be pled with particularity.

Additionally, fundamental to the concept of "mail fraud" is that the Plaintiff must <u>have detrimentally relied upon the alleged misrepresentation which was made via the mail</u>.  *Caviness v. Derand Resources Corp.,* 983 F.2d 1295, 1305 (4th Cir. 1993).  The following chart tracks each particular event alleged in the Complaint as supposedly constituting "mail fraud" and

indicates how each alleged predicate act lacks any particularity and fails to constitute "mail

fraud":

**Fraud Allegation**

| |
|---|
| Paragraph 14 – <u>Greenberg Traurig sent two fraudulent invoices to Ford, redacting the latter bill</u>.  There is no claim that Ford detrimentally relied on either, and  Ford had both bills to compare, so how could he plausibly "detrimentally rely?" |
| Paragraph 19 – <u>Materials were mailed to Ford in Boca Raton</u>.  What, particularly was in the materials?  No allegation of falsity therein, or reliance. |
| Paragraph 21 – <u>Tax opinions were mailed to the Plaintiff</u>.  No allegation of falsity therein, or reliance. |
| Paragraph 24 – <u>The information flow went via U.S. Mail</u>.  No allegation of falsity or reliance. |
| Paragraph 24 – <u>Comparing two bills from Greenberg Traurig showed that entries regarding Barros were removed by redaction</u>.  Because Ford had both invoices, he knew of the differences; further, no allegation of reliance. |
| Paragraph 29 – <u>KPMG promised Ford that it would not to work for competitors</u>.  Promises of future performance are not "fraud." *PVC Windows, Inc. v. Babbit-bay Beach Const., N.V.,* 598 F.3d 802, 809 (11th Cir. 2010).  Further a false promise that one will perform a contract is not a predicate RICO act.  *Faryniarz v. Ramirez*, 62 F.Supp. 3d 240, 253 (D. Conn. 2014).  Further, the alleged verbal agreement is barred by Fla. Stat. Sec. 542.18 and 542.335(a), governing agreements which restrain trade. |
| Paragraph 43 – <u>KPMG agreed that no reserves were necessary and signed one year policies</u> – and that "[t]his is more mail fraud by the Conspirators."  What is the fraud? |
| Paragraph 54 – <u>Greenberg told Boston that it would renew the tax opinions</u> and that this is "[m]ore mail and wire fraud." Promises of future performance are not "fraud," *See PVC Windows*, *supra; Faryniarz, supra.* |
| Paragraph 55 – <u>Greenberg misled third party marketers (not the Plaintiffs) by making misleading statements regarding opinion letters</u> and that this was "[m]ore acts of mail and wire fraud."  However, there is no particularity as to any misleading statement, and no allegation of detrimental reliance <u>by Plaintiffs.</u> |
| Paragraph 56 – <u>Greenberg issued an email to a third party that it would prepare updates for two of the three opinion letters</u> – Supposedly involving "more mail and wire fraud." |

12

Case No.  9:16-cv-80618

---

Promises of future performance are not fraud; *PVC Windows*, *supra*; *Faryniarz, supra*; no alleged reliance <u>by Plaintiffs</u>, *McLaughlin, supra*.

---

Paragraph 74 – <u>Email sent by Barros in 2002 indicating that American General Life will provide certain insurance products for Boston Life and will promote the program</u> – claimed to be mail fraud because alleged conspirators were using the products for their own purposes.  Promises of future performance are not "fraud,"  *PVC Windows*, *supra; Faryniarz, supra.*

---

Paragraph 83, 84 – <u>Barros was told by Greenberg that Greenberg would not update the legal opinion because Boston Life was not paying the bills, but  Boston Life paid its bills.</u>  "More fraud."   No allegation of detrimental reliance by Plaintiffs; no allegation of improper use of the mails in connection therewith.

---

The Complaint is <u>devoid</u> of any factual allegations of mail fraud.  Repeated usage of the label "mail fraud" cannot substitute for the requisite factual allegation of fraud with particularity nor of use of the mails for commission of fraud, and detrimental reliance thereupon.

**V.**  **THE RICO COUNTS FAIL TO ALLEGE A "PATTERN OF RACKETEERING ACTIVITY".**

At the heart of any RICO claim is the necessary allegation of a "pattern" of racketeering activity, *Rotella v. Wood*, 529 U.S. 549 (2000).  Any alleged "pattern" is carefully scrutinized to curb efforts to transform routine commercial disputes into civil RICO actions.  *See Meier v. Musberger*, 588 F. Supp. 2nd 883, 900 (N.D. Ill. 2008).  To establish a "pattern" the plaintiff must demonstrate that the created acts amount to or pose a threat of continued criminal activity.  *Abell v. Potomac Insurance Company*, 946 F. 2d. 1160, 1167-68 (5th Dis. 1991).  This complaint does not allege any criminal activity.

Further, under Section 1962(c), it is unlawful for a person to "conduct" or "participate in the conduct" of the RICO enterprise.  However, mere association with the enterprise is insufficient, *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  The allegations regarding Greenberg Traurig's provision of legal services do not satisfy the *Reves* standard.  *See Bailey v.*

13

Case No.  9:16-cv-80618

*Treman Simmons et al*., 938 F. Supp. 825, 827-28 (S.D. Fla. 1996)  (law firm providing services normally provided by attorneys for clients did not have RICO liability:)  *See also In Re: Cascade Securities Litigation*,  840 F. Supp. 1558 (S.D. Fla. 1993).

Similarly, KPMG's rendition of auditing services and thereafter serving as court-appointed liquidator does not rise to the level of participating in the operation or management of an unlawful enterprise.  *See Department of Economic Development v. Arthur Anderson,* 924 F. Supp. 449, 465-66 (S.D.N.Y. 1996);  *Wiselman v. Oppenheimer*, 835 F. Supp. 1398 (M.D. Fla. 1993) (financial service company rendering professional services was not involved in the operation or management of a RICO enterprises;) *Petri v. Gatlin*, 997 F. Supp. 956 (N.D. Ill. 1997) (management of some of client's matters is not synonymous with being  engaged in the operation or management of a RICO enterprise.)

While the Complaint is prolix, once stripped of its talismanic incantations  of statutory RICO requirements there is simply no allegation of any control or participation by Barros in any cognizable "enterprise"  with Greenberg Traurig and KPMG.  Barros certainly did not control Greenberg Traurig nor KPMG, nor is it alleged that he did so.  And because the work of the lawyers and accountants in providing their professional services does not constitute operating or managing an enterprise, the "enterprise" with which Barros was purportedly affiliated simply cannot exist as a matter of law.  Indeed, the Complaint utterly fails to describe the nature of the decision-making within the alleged enterprise.  *See Dagh v. Metris Directs, Inc*., 363 F. 3d 82, 831 (9th Cir. 2003).  (overruled on other grounds).  Further, there is no "pattern" where – as alleged here – the objective of the alleged scheme was one discrete goal directed to one party. *See Home Orthopedics Corp. v. Rodriquez*, 781 F. 3d 521 (1st Cir. 2015).  *See* Compl. ¶ 158: the purpose of the alleged enterprise was to injure Boston Life.

14

Case No.  9:16-cv-80618

## VI.   TWOMBLY/IQBAL ANALYSIS: THE FEDERAL RICO COUNTS FAIL THE PLAUSIBILITY TEST, AND THUS FAIL TO STATE A CLAIM UNDER 12(b)(6).

Under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)  and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the plausibility of the Complaint is analyzed under a two-pronged approach. First, the Court must strip -out conclusory allegations to determine if the pleading properly asserts well-pled factual allegations rather than mere legal conclusions.  Second, if the Complaint contains adequate, properly – pled factual allegations and assuming their veracity, the Court is to determine whether the factual allegations "plausibly" give rise to an "entitlement  to relief." *Twombly, supra* at 556.  The factual allegations, assumed true, must push the claim across the line from conceivable to plausible, in light of any other "obvious alternative explanation."  *Iqbal, supra* at 678.

The first analytical step is to remove all "formulaic recitations" of RICO elements, *Iqbal, supra* at 678.   In order to strip this Complaint of its legal conclusions and rote recitations, the following paragraphs must be cast aside:

**Legal Conclusions – Rote Recitation**

| |
|---|
| Paragraph 10 –Defendants conspired in a multi-year and international enterprise to steal Boston's business. |
| Paragraph 41 – Conspirators continued an ongoing criminal enterprise for years. |
| Paragraph 42 – KPMG had a conflict in representing Boston and acting as its liquidator. |
| Paragraph 57 – Bancroft's product fails to qualify as insurance. |
| Paragraph 58 – Bancroft's product is a security. |
| Paragraph 59 – Bancroft's product is a security, premiums paid by customers are not tax deductible. |

15

| |
|---|
| Paragraph 107 – through 169 (pages 26-36) are entirely pure rote recitation of RICO concepts and elements. |

Having stripped the Complaint of the conclusory allegations, we see that the alleged purpose of the alleged conspiratorial enterprise is clearly delineated by the Plaintiffs: "The purpose of the scheme is to enable Defendants to ruin BLA's reputation and steal BLA's products and clients." [Compl. ¶ 143 and 158] Thus arises the fundamental issue under *Twombly*/*Iqbal*: this concept utterly reeks of implausibility. Under what plausible scenario is KPMG going make use of Boston Life's products and clients? KPMG is not in the insurance business. What is Greenberg Traurig going to with Boston Life's insurance products and clients? Greenberg Traurig is not in the insurance business. It is utterly implausible that these two Defendants engaged in such an implausible scheme – and Defendant Barros cannot be held to be part of a RICO "enterprise" with them where the existence of such enterprise utterly fails the plausibility test.

There is an obvious plausible alternative explanation here: free competition. Barros/Bancroft decided to compete in the insurance industry and utilized an auditor recognized in that field – KPMG - and a law firm with experience in that field – Greenberg Traurig. Certainly that explanation overwhelms and renders implausible the notion that a criminal enterprise was formed with a major accounting firm and a major law firm for the purpose of stealing insurance products and customers from a small insurance company operating out of the British Virgin Islands. *See, e.g.*, *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014). *And see RSM Production Corp. v. Freshfields Bruckhaus, Beringer U.S. LLP.*, 682 F.3d 1043, 1048-1052 (D.C. Cir. 2012) (where an alleged RICO conspiracy does not plausibly suggest an illicit accord among the alleged parties, but is not only

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900 F. 305·858·5261

compatible with,  but indeed is more likely explained  by, lawful, free market competition, dismissal is proper.)

The court may infer from the factual allegations any obvious alternative explanations suggesting lawful conduct rather than unlawful conduct, and dismissal is proper where – as here – the  alternative is at least equally compelling as the conclusion of criminal activity.  *American Dental Association v. Cigna Corporation*, 605 F. 3d 1283, 1290-93 (11th Cir. 2010).

## VII.   ALL THE STATE LAW CLAIMS FAIL.

Absent any basis for federal jurisdiction, no basis exists for this Court to undertake adjudication of the state – law claims, Counts III-IX inclusive.  Further, each of them fails on their own, under basic principles of Florida law.

### a.  Time-Bar.

It is clear from the face of the Complaint that Plaintiffs complain of events in the 2000 – 2008 time period.  It is also clear that Plaintiffs were on notice of the claimed injury in the time period of eight to fifteen years ago.  *See* Section III, *supra*.  Accordingly, all state-law tort claims are time-barred by Fla. Stat. Sec. 95.11(3)(o) (four year limitation).  The "breach of contract" claim, Count IV is time-barred by Fla. Stat. Sec. 95.11(3)(k) (four years); and the fraud claim is also barred by the statute of repose, Fla. Stat. Sec. 95.031(2).

Plaintiffs clearly recognize that these claims are time-barred by attempting to "plead around" the statutes of limitations, *See* Complaint, ¶s 201-204.  However, the conclusion that they could not have "reasonably discovered" their claims until reading a court case in 2012 (Compl. ¶ 204) is annihilated by their own admissions of knowledge elsewhere in the Complaint. *See* Sec. III, supra.   No "equitable tolling" is available to litigant who stands silent when known events give rise to a duty to inquire.  *Madison 92 Street Associates, supra*.

17

Case No.  9:16-cv-80618

     **b.**     **Each state-law claim is barred by other basic principles of law.**

     <u>Conversion– Count III</u> – Plaintiffs claim Defendants deprived them of possession and use of client information, fees and product information.  However, the tort of conversion addresses possessory rights in personal property.  Intangible "information" is not the subject of conversion, nor is "fees."  *See, e.g., Belford Trucking Co. v. Zagar*, 243 So.2d 646 (Fla. 4th DCA 1970). Further, this claim is time barred under Fla. Stat. Sec. 95.11(3)(o).

     <u>Breach of Fiduciary Duty – Count IV</u> – this Count is barred by statute, rule and limitations. In Count IV, Plaintiffs contend that the various Defendants owed a duty not to compete  (Compl. ¶ 176).  However, absent a signed writing meeting the requirements of Fla. Stat. Sec. 542.335(1)(a), this claim against Defendant Barros is barred by Fla. Stat. Sec. 542.18. This claim is therefore time barred.  Fla. Stat. Sec. 95.11(3)(o).

     As a matter of law, Defendant Barros could not have conspired with Greenberg Traurig in this regard.  As to the alleged co-conspirator Greenberg Traurig, the Rules Governing the Florida Bar eliminates this claim.   Generally, a restriction upon an attorney which impairs his or her ability to represent other clients violates public policy.  *See* Rules Regulating the Florida Bar Rule 4-5.6(b).  The rationale behind the rule is that an agreement with an attorney not to represent other clients restricts the access of the public to lawyers who might be the best available talent to represent *See* Professional Ethics of the Florida Bar, Opinion 04-2, January 21, 2005.

     <u>Fraud – Count V:</u>  this count is barred by lack of essential elements, by the statute of limitations and the statute of repose.  In Compl. ¶ 182 and 183, Plaintiffs contend that Defendants used false statements to induce "Plaintiff's clients" to detrimentally rely.  Obviously, Plaintiffs here have neither the authority nor the standing to assert a tort claim on behalf of their

<div align="center">18</div>

Case No.  9:16-cv-80618

"clients".  Accordingly, the Complaint must be analyzed in terms of the existence of allegations of false statement of material facts relied upon by the Plaintiff's themselves.

As detailed above in pages 11-12, the alleged misrepresentations described in the Complaint are all deficient for lack of any claim of justifiably detrimental reliance.  The statute of limitations applicable to these ancient alleged "events" is four years, Fla. Stat. Sec. 95.11(3)(o).  Finally, regardless of when Plaintiffs supposedly learned of the claimed fraud, the twelve year statute of repose in Fla. Stat. Sec. 95.031(2) bars these claims

Breach of Contract – Count VI.  The alleged verbal non-compete agreement with Barros (as well as with the alleged co-conspirators KPMG and Greenberg Traurig) is barred by:

- The "year clause" of the statute of frauds, Fla. Stat. Sec. 725. Given the "five year pay in" nature of Plaintiffs' insurance program (Compl. ¶ 39), the "not to be performed within the space of one year from the making" clause in Fla. Stat. Sec. 725 bars Count VI.  *See Browning v. Poirer,* 165 So.3d 663 (Fla. 2015).

- Limitations under Fla. Stat. Sec. 95.11(3)(k):  four years.

- Unenforceability under Fla. Stat. Sec. 542.18 and 542.335, invalidating restraints on trade, and requiring a signed writing.

Tortious Interference of Contract – Count VII.

This Count fails to specify that Defendant Barros interfered with any particular client with whom Plaintiff(s) had a contract (*see* the allegation in Compl. ¶ 189).  There is no factual allegation that Defendant Barros  induced or persuaded any particular client of Plaintiffs not to honor any particular contract; and the claim is time barred under Fla. Stat. Sec. 95.11(3)(o).

Tortious Interference with Advantageous Business Relation – Count VIII.

This Count fails to specify any particular client with whom Plaintiff(s) had business relationships

19

Case No.  9:16-cv-80618

(the allegation in Compl. ¶ 195); nor does it identify anyone whom Defendant Barros induced or persuaded not to continue in a business relationship with Plaintiffs: and the claim is time barred under Fla. Stat. Sec. 95.11(3)(o).

Florida Civil RICO – Count IX.  Count IX purports to be a claim under Florida Civil RICO – Fla. Stat. Sec.772.103. As described above, in regard to Counts I and II, this "tag along" state- law claim fails for all of the defects which cause Counts I and  II - federal RICO – to  fail.[1] Additionally, Count IX fails on its own to state a claim.  It merely alleges that Defendants actions violate Sec. 772.103, without even specifying which of the four subsections of Sec. 772.103 are allegedly implicated.

## CONCLUSION AND REQUEST FOR ORAL ARGUMENT

The Compliant is fatally flawed on numerous bases and must be dismissed with prejudice.  Its defects are so fundamental that they cannot be cured by amendment.  The Plaintiff Boston Life is a non-existent entity.  The federal civil RICO claims are barred by limitations; the state-law claims all fail due to limitations and other statutory prohibitions.  Accordingly, this action must be dismissed with prejudice.

Defendant Barros requests oral argument.  Given the confusing nature of the Complaint and the defects detailed above, Defendant Barros believes that oral argument will provide the court with an opportunity to probe and determine that this suit simply cannot be repaired by amendment.

---

[1] The statute of limitations for the state RICO claim is five years, *see* Fla. Stat. Sec. 772.17, which has expired.

20

Case No.  9:16-cv-80618

Respectfully submitted,

COFFEY BURLINGTON, P.L.
*Counsel for Bradley Barros*
2601 South Bayshore Drive, Penthouse
Miami, Florida  33133
Tel:  305-858-2900
Fax:  305-858-5261

By:  /s/ David A. Freedman
        David A. Freedman
        Fla. Bar No. 161817
        dfreedman@coffeyburlington.com
        mpalmero @coffeyburlington.com
        service@coffeyburlington.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by Notice of

Electronic Filing generated by CM/ECF, on this 25th day of July, 2016, on all counsel or parties

of record on the attached Service List.

Paul Platte, Esq.
1465 S. Ft. Harrison Avenue
Suite 202
Clearwater, Florida  33756
Telephone:  727-474-1011
Email: paul@paulplatte.com

Edward Marod, Esq.
Gunster Yoakley & Stewart, P.A.
777 S. Flagler Drive, Suite 500E
West Palm Beach, Florida  33401
Telephone:  561-655-1980
Email:  emarod@gunster.com

By:  /s/ David A. Freedman

21