**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**

CASE NO.: 9:16-cv-80618

Leo Ford,

Plaintiff,

v.

KPMG LLP; KPMG BVI Limited; KPMG Cayman; James Drury; Russell Crumpler; Belmont Insurance Management; Casey McDonald; Kris Beighton; Andrea Douglas; Greenburg Traurig, P.A.; Greenberg Traurig, LLP; Jerome Hesch; GFAN; ABG; Bancroft Property & Casualty, Ltd., (a/k/a Bancroft Life & Casualty, Ltd., and Bancroft Life & Casualty ICC, Ltd.); Bradley Barros; and Philip Sigel,

Defendants.

**DEFENDANT CASEY MCDONALD'S**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT**
**AND SUPPORTING MEMORANDUM OF LAW**

Defendant Casey McDonald by and through his undersigned attorneys, moves for an order dismissing the First Amended Complaint in its entirety, on the basis of lack of subject matter jurisdiction and *forum non conveniens*, as this Court lacks personal jurisdiction over Mr. McDonald, and as well because Plaintiff has failed to state a claim upon which relief can be granted.

## BACKGROUND

1. Although Plaintiff Leo Ford protests to the contrary, this action, as it pertains to Mr. McDonald, is really a challenge to the currently pending British Virgin Islands ("BVI") liquidation of now-dismissed plaintiff Boston Life & Annuity Company Limited ("BLA").

2. BLA is an insurance company that has been in liquidation in the BVI since late 2007 (hereinafter referred to as the "Liquidation").[1] *See* Declaration of BLA's court-appointed Joint Liquidator, Casey McDonald, ¶ 7 attached hereto as Exhibit A and incorporated herein.

3. On December 20, 2007, Mr. McDonald and Defendant Kris Beighton, individually, were appointed as Joint Provisional Liquidators over BLA, and, as admitted in the First Amended Complaint at paragraph ¶ 54, on February 27, 2008, they were appointed Joint Liquidators.[2] *Id.* at ¶¶ 7 and 8.

4. In challenging the Liquidation itself, the actions of the liquidators, and the BVI court in which the Liquidation is pending, Plaintiff alleges in the First Amended Complaint the following:

> "The Conspirators[3] continue up to and including July 8, 2016, in their ongoing criminal enterprise . . ." (A. Complt., ¶ 51).

---

[1] The insolvency process in the BVI is a collective process, by which the liquidator, **<u>acting as an agent of the Court</u>**, has a duty to gather assets and distribute them amongst the creditors claiming in the liquidation in accordance with the prescribed order of priority. Sections 184 and 185(1), BVI Insolvency Act, 2003. The statutory scheme requires creditors to submit claims, and for the liquidator to accept or reject such claims, with a right of appeal lying with the BVI court. Rule 59(1) BVI Insolvency Rules, 2005 (emphasis added). Relevant excerpts of the BVI Insolvency Act and the BVI Insolvency Rules are attached hereto as Exhibit B.

[2] At a creditor's meeting, on October 25, 2011, Kris Beighton resigned from office and Defendant Russell Crumpler was appointed as Joint Liquidator in his place. *Id.* at ¶ 7, fn 1.

[3] Plaintiff fails to define "Conspirators," but the context implies inclusion of Mr. McDonald.

> "Orders KPMG obtained from the BLA liquidation are unenforcable [sic] as the liquidation estate appointment, liquidation estate operation, and liquidation estate orders were obtained by fraud . . ." (A. Complt., ¶ 56);
>
> "In furtherance of the RICO conspiracy, the Conspirators continue the mail fraud and wire fraud as recently as July 8, 2016,[4] when the KPMG Defendants sent out fraudulent mail and wires to Ford and his lawyer . . ." (A. Complt. ¶¶ 3, 57).
>
> "[t]he liquidators failed in their duties" (A. Complt., ¶ 62);
>
> "KPMG, AS LIQUIDATOR, INTENTIONALLY NEGLECTED ITS FIDICICARY [sic] DUTIES" (A. Complt., Heading G, p. 16, and ¶¶ 63-64) (emphasis in original);
>
> "Defendants refused to provide Ford with Information about BLA while the KPMG Defendants managed BLA before, during and after the liquidation (A. Complt., ¶ 119);
>
> "KPMG, McDonald, Beighton, Crumpler, and Drury should never have accepted the position as liquidators" (A. Complt., ¶ 125);
>
> "[a]lthough Ford was the major single creditor at liquidation, KPMG, McDonald, Beighton, Crumpler, and Drury refused to allow him on the Creditors' Committee . . ." (A. Complt., ¶ 128)[5]; and
>
> "KPMG, McDonald, Beighton, Crumpler, and Drury refuse to pay and claims loans and distributions" (A. Complt., ¶ 130).

5. As well, the causes of action themselves, while legally deficient, appear, as to Mr. McDonald, to be premised on his actions as a liquidator. *See,* for example, Count X, Fraudulent Transfer, which again makes reference to the July 8, 2016 liquidator's letter, and the liquidation estate itself.

---

[4] Plaintiff's allegation of "fraudulent mail" dated July 8, 2016, is a reference to a letter from Russell Crumpler, as Joint Liquidator, concerning the BLA Liquidation. A copy of such letter (without enclosures) is attached hereto as Exhibit C and incorporated herein.

[5] Mr. Ford did seek to be appointed to the creditors' committee. See McDonald Declar., ¶ 9.

6. As more fully set forth below, these allegations and the putative claims they support are more properly brought in the Liquidation itself, currently being heard in The Eastern Caribbean Supreme Court, BVI, Claim Number BVI HCV 2007 10290.

## MEMORANDUM OF LAW

### I. This Action Should be Dismissed With Prejudice As To Mr. McDonald For Lack of Subject Matter Jurisdiction.

Subject matter jurisdiction encompasses the scope of sovereign immunity, and the Foreign Sovereign Immunity Act ("FSIA") provides the exclusive basis and means to bring an action against a foreign sovereign in the United States. *See Guevara v. Republic of Peru*, 608 F.3d 1297, 1305 (11th Cir. 2010). Under the FSIA, a foreign state is immune from the jurisdiction of this Court (or any United States court) except as provided in Title 28 §§1605-1607. 28 U.S.C. §1604.

As more fully set forth below, Mr. McDonald, as a BVI court-appointed liquidator, is a foreign state within the meaning of the FSIA. *Best Med. Belg., Inc. v. Kingdom of Belg.,* 913 F. Supp. 2d 230 (E.D. Va. 2012); *see also Fabe v. Aneco Reinsurance Underwriting, Ltd.*, 784 F. Supp. 448, 449-51 (S.D. Ohio 1991) (holding that liquidators appointed by the Bermuda Supreme Court to marshal the assets of defendant Bermudan company and generally wind up the company's affairs were included under the FSIA's definition of foreign state); *Granville Gold Trust-Switzerland v. Commissione Del Fullimento/Inter Change Bank*, 924 F. Supp. 397, 408 (E.D.N.Y. 1996) (holding the same regarding the individual members of a commission appointed by a Swiss court of appeals to supervise a Swiss bank's liquidation); *Refco, Inc. v. Galadari*, 755 F. Supp. 79, 80, 82 (S.D.N.Y. 1991) (holding same regarding committee of receivers appointed

by the government of Dubai to liquidate an Emirati company). Plaintiff has not, and cannot, allege the application of any of the exceptions to the FSIA which would confer jurisdiction on this Court over Mr. McDonald.

**A. The FSIA Precludes the Instant Action.**

The FSIA operates with the presumption that foreign sovereigns are immune from the jurisdiction of the United States courts. *See, Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428 (1989).

In *Best Med.*, a suit was brought against, *inter alia*, three individuals appointed by the Belgium court to serve as administrators to conduct day-to-day management of an insolvent company which was the subject of a Belgium court liquidation proceeding. *Id.* at 234-35. The plaintiffs alleged that these administrators conspired to take the company's property. *Id.* at 235. The United States District Court for the Eastern District of Virginia granted the defendants' motion to dismiss because it had no subject matter jurisdiction over the alleged actions of those performing judicial functions for the Belgian court.

*Best Med.* is factually on point. That court determined that the foreign court is considered the foreign state itself due to its core governmental function, and the administrators, acted pursuant to the court's appointment. *Id*. at 241. As such, it held that the FSIA precluded subject matter jurisdiction over the court-appointed administrators. "The prudence with which [the administrators] conducted themselves in their administration of [the foreign company] . . . is beyond the jurisdiction of this Court." *Id*. at 241. The same can, and should be said of Mr. McDonald as a BVI court-appointed liquidator.

## II. The Act of State Doctrine Bars Claims Against Mr. McDonald.

The act of state doctrine limits the power of the United States courts to examine and impugn the acts of another sovereign. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964). This doctrine "is applicable when `the relief sought or the defense interposed would [require] a court in the United States to declare invalid the official act of a foreign sovereign performed within' its boundaries." *World Wide Minerals, LTD. v. Republic of Kaz.*, 296 F.3d 1154, 1164 (D.C. Cir. 2002) (internal brackets omitted) (quoting *W. S. Kirkpatrick & Co. v. Environmental Tectonics Corp. Int'l*, 493 U.S. 400, 405 (1990)). The doctrine is to be interpreted and applied in accordance with the policy interests of "international comity, respect for the sovereignty of foreign nations on their own territory, and the avoidance of embarrassment to the Executive Branch in its conduct of foreign relations." *W. S. Kirkpatrick*, 493 U.S. at 408; *Nemariam v. Fed. Democratic Republic of Eth.*, 491 F.3d 470, 477 n. 7 (D.C. Cir. 2007). At the motion to dismiss stage, determination of the availability of the act of state defense is made on the basis of the pleadings alone, and the facts necessary to give rise to the defense must be contained within the four corners of the complaint. *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 754-55 (S.D.N.Y. 2004).

The *Best Med.* court considered this doctrine in "doubt[ing] the existence of jurisdiction to pass judgment upon the acts of a foreign state." *Best Med.* at 241. As is true of Mr. McDonald and his actions as a BVI court-appointed liquidator (as alleged in the amended complaint), the challenged actions in *Best Med.* were those of individuals operating as officers of the Belgium court, and the court declined to adjudicate the propriety of defendants' actions. This Court should do the same as to Mr. McDonald.

## III. This Action Should Be Dismissed As To Mr. McDonald For *Forum Non Convenien*s.

A district court may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject matter and personal jurisdiction, when questions of convenience, fairness, and judicial economy so warrant. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). "Under the federal doctrine of *forum non conveniens*, 'when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case,' even if jurisdiction and proper venue are established." *American Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994); *Wilson v. Island Seas lnvs., Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009). In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), the United States Supreme Court considered the doctrine of *forum non conveniens* and described two spheres of consideration: the private interest of the litigants, and the public interest. With respect the former, the court stated:

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained.

*Gulf Oil Corp*. at 508. In analyzing the factors of public interest that court stated:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws and in law foreign to itself.

*Id.* at 508-09.

In the instant action there is already an adequate alternative forum available, which possesses jurisdiction over all claims asserted against Mr. McDonald, and in which an adequate potential remedy is afforded to Plaintiff. That forum is the BVI court presiding over the BLA Liquidation, which action contemplates the same substantive matters as against Mr. McDonald at issue herein. The easiest, most expeditious and inexpensive forum for handling this case is that which has already undertaken adjudication of it: the BVI court. Moreover, Section 175(1)(c) of the BVI Insolvency Act, 2003 clearly and unambiguously provides that Plaintiff's claims are most properly (and exclusively) brought in the BVI Liquidation, where it states:

"… with effect from the commencement of the liquidation of a company:

(c) Unless the Court otherwise orders, <u>no person may</u>:

(i) commence or proceed with any action or proceeding against the company or <u>in relation to its assets</u>, or

(ii) exercise or enforce, or continue to exercise or enforce, <u>any right or remedy over or against the assets of the company</u>"

(emphasis added). *See also*, *Krys v. Shell Pensioenfonds* [2014] UKPC 41, a decision issued on appeal from the BVI Court to the English Privy Council, which held that a foreigner, like Plaintiff, submits to the exclusive jurisdiction of the BVI court by submitting a claim in the liquidation, as Plaintiff has done in the BLA Liquidation[6]. (emphasis added). The *Krys* Court further noted that "[i]n the United states, the Supreme Court has independently arrived at the same position and recognized the right of the state of an insolvent's domicile to restrain proceedings in another state designed to obtain a more favorable distribution of the assets, notwithstanding the constitutional duty of each state to give full faith and credit to judicial proceedings in every other state: *Cole v. Cunningham* (1890) 133 U.S. 107". *Id.* at ¶ 22.[7]

Legal commentators generally have noted a growing trend in private international law of attempting to file suit in an American court even for alleged injuries or breaches that occurred on foreign soil. *Kinney Sys. v. Continental Ins. Co.*, 674 So. 2d 86 (Fla. 1996). The Florida Supreme Court, in analyzing the state's own doctrine of *forum non conveniens* noted that "[t]here already is evidence the practice is growing to abusive levels in Florida" and further commentated that "[n]othing in our law establishes a policy that Florida must be a courthouse for the world, nor that the taxpayers of the state must pay to resolve disputes utterly unconnected with this state's interests." *Id*.

[6] *See* McDonald Declar., ¶ 10.

[7] *See also*, *Alexander v. Hillman*, 296 U.S. 222, 241-42 (1935) (nonresidents who present claims against receivers subject themselves to all consequences that attach to an appearance); *Enron Corp. v. Citigroup, Inc. (In re Enron Creditors Recovery Corp.)*, 410 B.R. 374, 383 (S.D.N.Y. 2008) ("Once a party submits to the jurisdiction of the bankruptcy court by making a claim, the party submits to the jurisdiction of the Court to establish the respective rights of the parties.").

These comments are especially relevant in an analysis of the instant action. That is, the alleged damages incurred by Plaintiff arise from actions undertaken in the BVI. The BVI forum is available and adequate and witnesses and documents are more readily accessible in the BVI. *See McLane v. Marriott Int'l, Inc.*, 547 Fed. Appx. 950, 955 (11th Cir. 2013) (affirming dismissal for forum non conveniens when critical witnesses concerning liability resided in Costa Rica); *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1384 (11th Cir. 2009) (affirming dismissal for forum non conveniens in part because evidence can only be obtained from Italian witnesses). Witnesses involved in the Liquidation are invariably in the BVI, and therefore cannot be compelled for live attendance at a trial in the Southern District of Florida. *See Gulf Oil Corp.* at 511 ("Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants."); *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003) ("Perhaps the most important 'private interest' of the litigants is access to evidence."). Lastly, but of equal importance, the public interest favors dismissal as the difficulty of applying BVI law makes trying the case in Florida federal court more burdensome.

There is no local interest in having this particular controversy decided in Florida, and the BVI has already expressed an interest in resolving this matter by virtue of the Liquidation pending there. Accordingly, this Court should decline to exercise jurisdiction over this matter and dismiss it pursuant to the doctrine of *forum non conveniens*.

**IV. There Is No Personal Jurisdiction Over Mr. McDonald.**

A Florida federal court must engage in a two-part inquiry to determine whether personal jurisdiction exists over foreign defendants. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). First, the court must determine that the complaint alleges sufficient facts to bring the defendant within the ambit of Florida's long-arm statute. *Id*. If the plaintiff satisfies the long-arm statute the court must then determine whether exercising personal jurisdiction over the foreign defendant satisfies constitutional due process such that "maintenance of the suit [in the State] does not offend 'traditional notions of fair play and substantial justice.'" *Id*. (internal citation omitted).

The burden shifting procedure for determining whether a defendant is subject to Florida's long-arm statute is well-established. The plaintiff must first plead the basis for jurisdiction in the language of Florida's long-arm statute. *Id.* If a defendant contests the application of the long-arm statute by filing declarations supporting his challenge, the burden then shifts to the plaintiff who must prove by sworn statements the basis for jurisdiction. *Id*. at 502-03.

**A. Mr. McDonald is Not Subject to Long-Arm Jurisdiction in Florida.**

**1. Specific Jurisdiction Is Neither Asserted Nor Supported.**

Under the first part of the jurisdictional inquiry, this Court must determine whether Florida's long-arm statute authorizes the exercise of personal jurisdiction over Mr. McDonald. Subsection (1) of the long-arm statute sets forth the requirements for the exercise of "specific" personal jurisdiction. That section provides that "[a] person, whether or not a citizen or resident of this state, who personally or through an agent,"

commits any one of a number of enumerated acts *in this state*, submits himself to the jurisdiction of the courts "for any cause of action *arising from*" such act. *See* Fla. Stat. § 48.193(1)(a) (emphasis added). "Satisfaction of this *arising from* requirement necessitates a 'direct affiliation,' 'nexus,' or 'substantial connection' . . . between the basis for the cause of action and the [action that falls under the long-arm statute]." *Glovegold Shipping, Ltd. v. Sveriges Angfartygs Assurans Forening*, 791 So. 2d 4, 10 (Fla. 1st DCA 2001); *Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 1246, 1269 (S.D. Fla. 2001). Absent satisfaction of this "connexity" requirement, specific jurisdiction does not exist. *Id.* at 1269.

In the First Amended Complaint, Plaintiff merely asserts, incorrectly, and in cursory fashion, that "Defendants conduct business in this District and/or reside in this District" (A. Complt., ¶ 11). Mr. McDonald does neither[8]. But in any event, by only referring to Mr. McDonald's place of business and residence, it appears that Plaintiff does not (and cannot) assert specific jurisdiction over Mr. McDonald.

### 2. Mr. McDonald does not have Sufficient Individual Contacts with Florida to Establish General Jurisdiction.

Subsection (2) of Florida's long-arm statute, providing for "general" personal jurisdiction, eliminates the connexity requirement. This subsection authorizes an exercise of personal jurisdiction over a non-resident defendant as to all claims if the defendant engages in "substantial and not isolated activity" within the state or has "continuous and systematic general business contacts" with the state such that the defendant can properly be considered to be "present" in the forum. *See* Fla. Stat. § 48.193(2); *see also Consolidated Dev. Corp. v. Sherritt*, Inc., 216 F.3d 1286, 1292 (11th

[8] *See* McDonald Declar., ¶¶ 12, 14, 16, 17, 19, 21, and 22.

Cir. 2000) ("The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state."). The level of contacts required to establish general jurisdiction "must be especially pervasive and substantial." Exhibit Icons, LLC v. XP Companies, LLC, 609 F. Supp. 2d 1282, 1294 (S.D. Fla. 2009) (quoting *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1343 (S.D. Fla. 2002)). The contacts must be so extensive as to be "tantamount to [a defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [the forum state's courts] any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Id.* at 1295.

Additionally, the Supreme Court of Florida has adopted the corporate shield doctrine which provides that a court cannot consider a defendant's contacts with Florida for purposes of personal jurisdiction if those contacts were made in his capacity as a corporate agent. *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993). That is, the corporate shield doctrine draws a distinction between a corporate officer acting on his own and a corporate officer acting on behalf of his corporation. *See Radcliffe v. Gyves*, 902 So. 2d 968 (Fla. 4th DCA 2005). The essential justification for this doctrine is fairness: It would be "unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Id*., *cited in Posner v. Essex* Ins. Co., 178 F.3d 1209, 1217 (11th Cir. 1999). In order to overcome the corporate shield and consider a defendant's acts committed as an employee or agent, the plaintiff must

show that the acts constitute intentional tortious conduct purposefully directed at Florida. *Office of the AG, Dep't of Legal Affairs v. Wyndham Int'l*, 869 So. 2d 592, 597 (Fla. 1st DCA 2004).

**3. Mr. McDonald's Contacts with Florida are Not Substantial, Systematic and Continuous.**

Plaintiff fails to allege any basis on which general jurisdiction is satisfied and for this reason alone, the action should be dismissed. *See Corneal v. CF Hosting, Inc.*, 187 F. Supp. 2d 1372, 1376 (S.D. Fla. 2001) (granting defendants' motion to dismiss because plaintiffs "failed to plead sufficient material facts to form a basis for personal jurisdiction" over the defendants); *see also Millennium Petrochemicals, Inc. v. Jago*, 50 F. Supp. 2d 654, 656 (W.D. Ky. 1999) (holding that dismissal is appropriate, without an evidentiary hearing, if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction) (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir.1997)).

Further, as Mr. McDonald declares, he meets none of the factors regularly cited to support the exercise of general jurisdiction, such as, by way of example, residence, property ownership, vehicle registration, voter registration, or business licenses. *See* generally, McDonald Declar.

Plaintiff does make reference to a single meeting attended by Mr. McDonald in Miami, but this meeting was attended by Mr. McDonald as BLA's liquidator, and by definition is exempt under the corporate shield doctrine, to say nothing of its insufficiency as a "substantial, systematic, and continuous" contact. *See* McDonald Declar., ¶ 25.

#### 4. Exercising Personal Jurisdiction Over Mr. McDonald Would Offend Due Process.

Exercising personal jurisdiction over Mr. McDonald in Florida "would transgress traditional notions of fair play and substantial justice." *Cable/Home Comm'n Corp. v. Network Prods, Inc*., 902 F.2d 829, 858 (11th Cir. 1990). In making this determination, the Court considers "the burden on the defendant of defending the suit in Florida; Florida's interest in adjudicating the suit; the plaintiff's interest in obtaining effective relief; the interests of the interstate judicial system in using resources efficiently; and the interests of the states in furthering shared substantive policies." *Einmo v. Aecom Gov't Servs.*, 2007 U.S. Dist. LEXIS 63293, *26 (M.D. Fla. Aug. 7, 2007).

Florida has little interest in resolving a dispute over actions by BVI court-appointed liquidators as to a BVI company. Not only does jurisdiction for resolving this dispute reside in the BVI, but all of the evidence (the liquidators' books and records) and the attendant witnesses (including the liquidators and the majority of those connected to the BLA liquidation estate) are in the BVI, and Mr. McDonald would be forced to incur international travel to defend a lawsuit in Florida that is unrelated to any acts committed in Florida.

Significantly, effective relief is available to Plaintiff in the Liquidation proceeding in the BVI. Thus, the burden here on Mr. McDonald, a Cayman Islands resident working there and in the BVI, to defend himself in Florida far outweighs the burden to Plaintiff, who can obtain relief from a proceeding already in progress. For these reasons, exercising personal jurisdiction over Mr. McDonald would be unfair.

In conclusion, Mr. McDonald is not subject to personal jurisdiction in Florida, and each of the claims asserted against him should be dismissed.

**V. Each of the Counts Fails to State a Claim Upon Which Relief Can Be Granted, under Rule 12(b)(6).**

Plaintiff's factual allegations are insufficient to show that Mr. McDonald engaged in any conduct that would support any of the ten causes of action set forth in his amended complaint. (It must be assumed that all 10 counts are asserted against Mr. McDonald, but that is far from clear). Moreover, no distinction is made among allegations as to the 18 defendants, and Mr. McDonald (and the other defendants) are left to guess as to capitalized terms that are not defined, assertions that are not factually supported, and a narrative that is utterly confusing. Viewed in the most favorable light, the allegations are nothing more than bare legal conclusions which fail to provide sufficient notice of the alleged wrongful conduct.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), at 555, but the non-moving party must show plausible factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. Rule 12(b)(6) requires the Court to accept all factual allegations in a complaint as true and to be taken in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). However, this principle does not apply to

legal conclusions in that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Here, the amended complaint merely regurgitates the applicable federal statutes and recasts them as "factual" allegations. The "factual" allegations are mere conclusions, nothing more. The amended complaint epitomizes the type of pleading deemed insufficient in *Iqbal.* Accordingly, based upon *Twombly* and *Iqbal*, the amended complaint does not meet the Rule 8 pleading requirements, making dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure appropriate.

**WHEREFORE**, Defendant Casey McDonald respectfully requests that this Court grant his Motion to Dismiss, and enter such further relief as it deems just and appropriate.

Dated: August 30, 2016

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: 561.650.7200
Facsimile: 561.655.1509

By: *<u>/s/ Traci H. Rollins</u>*
Traci H. Rollins
Florida Bar No. 769071
Email: traci.rollins@squirepb.com
Jason D. Joffe
Florida Bar No. 0013564
Email: jason.joffe@squirepb.com
Ricardo Marenco
Florida Bar No. 0113008
Email: Ricardo.marenco@squirepb.com
***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on August 30, 2016, through Case Management/Electronic Case Filing ("CM/ECF") which sent notices of electronic filing to all parties indicated on the electronic filing receipt.

*/s/ Traci H. Rollins*_____
Traci H. Rollins
Florida Bar No. 769071

010-8251-0702/3/AMERICAS