**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:16-cv-80618-WJZ**
**Hon. William J. Zloch**

Leo Ford,

Plaintiff,

v.

KPMG LLP; KPMG BVI Limited; KPMG Cayman; James Drury; Russell Crumpler; Belmont Insurance Management; Casey McDonald; Kris Beighton; Andrea Douglas; Greenberg Traurig, P.A.; Greenberg Traurig, LLP; Jerome Hesch; GFAN; ABG; Bancroft Property & Casualty, Ltd. (a/k/a Bancroft Life & Casualty, Ltd., and Bancroft Life & Casualty ICC, Ltd.); Bradley Barros, and Philip Sigel,

Defendants.
_______________________________________/

**DEFENDANTS GREENBERG TRAURIG, LLP, GREENBERG TRAURIG, P.A., AND JEROME HESCH'S MOTION TO DISMISS THE AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

STUART H. SINGER, ESQ.
SASHI C. BACH, ESQ.
**BOIES, SCHILLER & FLEXNER LLP**
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Attorneys for Defendants Greenberg Traurig, LLP, Greenberg Traurig, P.A., and Jerome Hesch*

# TABLE OF CONTENTS

Page


INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ........................................................................................................ 3

I. LEGAL STANDARD........................................................................................................ 3

II. FORD LACKS STANDING TO SUE GT FOR INJURY TO BLA.................................. 4

III. FORD'S CLAIMS AGAINST GT ARE TIME-BARRED. ............................................ 7

A. Ford's State and Federal RICO Claims Are Time-Barred.................................... 7

B. Ford's Conversion and Tortious Interference Claims Are Time-Barred................ 8

C. Ford's Fraud, Breach of Fiduciary Duty, and Breach of Contract Claims Are Time-Barred........................................................................................................ 9

D. There Is No Plausible Basis for Equitable Tolling. ............................................ 11

IV. FORD'S RICO CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM........................................................................................................ 14

V. FORD'S FRAUD CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM........................................................................................................ 15

VI. FORD'S TORTIOUS INTERFERENCE CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ........................................................................ 16

CONCLUSION........................................................................................................ 17

REQUEST FOR HEARING........................................................................................ 18

# TABLE OF AUTHORITIES

Page

**Cases**

*Alario v. Miller*,
354 So. 2d 925 (Fla. 2d DCA 1978) ........ 4, 7

*Altenel, Inc. v. Millennium Partners, L.L.C.*,
947 F. Supp. 2d 1357 (S.D. Fla. 2013) ........ 11, 15, 16

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ........ 3

*Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*,
938 F. Supp. 825 (S.D. Fla. 1996) ........ 14

*Berry v. Coleman*,
172 F. App'x 929 (11th Cir. 2006) ........ 3, 16

*Brooks Tropicals, Inc. v. Acosta*,
959 So. 2d 288 (Fla. 3d DCA 2007) ........ 10

*Butler v. Yusem*,
44 So. 3d 102 (Fla. 2010) ........ 16

*Carrington Capital Mgmt., LLC v. Carr*,
2:15-CV-14191H, 2015 WL 6865750 (S.D. Fla. 2015) ........ 10

*Carroll v. TheStreet.com, Inc., 1*1-CV-81173,
2014 WL 5474061 (S.D. Fla. 2014) ........ 13, 14

*Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Services, Inc.*,
805 So. 2d 941 (Fla. 2d DCA 2001) ........ 6

*Davis v. Monahan*,
832 So. 2d 708 (Fla. 2002) ........ 9, 11

*E & C Copiers Exp. Imp. Corp. v. Arizas Fotocopiadoras S.A.S.*,
15-21693-CIV, 2015 WL 7720604 (S.D. Fla. 2015) ........ 15

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*,
647 So. 2d 812 (Fla. 1994) ........ 16

*Foster v. Savannah, Comm.*,
140 F. App'x 905 (11th Cir. 2005) ........ 7

*Foudy v. City of Port St. Lucie*,
2:14-CV-14318, 2015 WL 5245223 (S.D. Fla. 2015) .......... 4

*Frantz v. Walled*,
513 F. App'x 815 (11th Cir. 2013) .......... 12

*Gilmore v. Berg*,
820 F. Supp. 179 (D.N.J.1993) .......... 15

*Gomez v. BankUnited*,
10-21707-CIV, 2011 WL 114066 (S.D. Fla. 2011) .......... 9

*Gonsalvez v. Celebrity Cruises Inc.*,
750 F.3d 1195 (11th Cir. 2013) .......... 4

*Green v. Bartel*,
365 So. 2d 785 (Fla. 3d DCA 1978) .......... 10

*Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*,
485 F.3d 1233 (11th Cir. 2007) .......... 4

*Hantz v. Belyew*,
194 F. App'x 897 (11th Cir. 2006) .......... 4

*Hargraves v. Capital City Mortgage Corp.*,
140 F. Supp. 2d 7 (D.D.C. 2000), *modified on other grounds*,
147 F. Supp. 2d 1 (D.D.C. 2001) .......... 13

*Howard v. Kerzner Intern. Ltd.*,
12-22184-CIV, 2014 WL 714787 (S.D. Fla. 2014) .......... 3, 10

*In re Vega*,
59 Bankr. Ct. Dec. 169 (Bankr. M.D. Fla. 2014), *reconsideration denied*,
6:10-AP-00299-KSJ, 2014 WL 5017816 (Bankr. M.D. Fla. 2014) .......... 8

*Kammona v. Onteco Corp.*,
962 F. Supp. 2d 1299 (S.D. Fla. 2013), *aff'd*, 587 F. App'x 575 (11th Cir. 2014) .......... 1, 4, 5

*Karten v. Woltin*,
23 So. 3d 839 (Fla. 4th DCA 2009) .......... 6

*Kelly v. Palmer, Reifler, & Associates, P.A.*,
681 F. Supp. 2d 1356 (S.D. Fla. 2010) .......... 14

*Korman v. Iglesias*,
825 F. Supp. 1010 (S.D. Fla. 1993), *aff'd.*, 43 F.3d 678 .......... 11

*Llano Fin. Group, LLC v. Smith*,
15-81020-CIV, 2015 WL 6438523 (S.D. Fla. 2015) ........ 3

*Major League Baseball v. Morsani*,
790 So. 2d 1071 (Fla. 2001) ........ 14

*Mattocks v. Black Entm't Television LLC*,
43 F. Supp. 3d 1311 (S.D. Fla. 2014) ........ 9

*Medkser v. Feingold*,
307 F. App'x 262 (11th Cir. 2008) ........ 6

*Muhammad v. Citimortgage, Inc.*,
598 F. App'x 636 (11th Cir. 2015) ........ 11, 16

*Pac. Harbor Capital, Inc. v. Barnett Bank, N.A.*,
252 F.3d 1246 (11th Cir. 2001) ........ 12

*Pastor v. Union Central Life Ins. Co.*,
184 F. Supp. 2d 1301 (S.D. Fla. 2002) ........ 4

*Rotella v. Wood*,
528 U.S. 549 (2000) ........ 7, 8, 12

*Severe v. Shapiro, Fishman & Gache, LLP*,
14-CIV-80345, 2014 WL 5341886 (S.D. Fla. 2014) ........ 8

*Socas v. Nw. Mut. Life Ins. Co.*,
829 F. Supp. 2d 1262 (S.D. Fla. 2011) ........ 13

*Spadaro v. City of Miramar*,
11-61607-CIV, 2013 WL 495780 (S.D. Fla. 2013) ........ 7

*Spadaro v. City of Miramar*,
855 F. Supp. 2d 1317 (S.D. Fla. 2012) ........ 7

*Stalley v. Orlando Reg'l Healthcare Sys., Inc.*,
524 F.3d 1229 (11th Cir. 2008) ........ 4

*Tambourine Comercio Internacional SA v. Solowsky*,
312 F. App'x 263 (11th Cir. 2009) ........ 10

*U.S. ex rel. Atkins v. McInteer*,
470 F.3d 1350 (11th Cir. 2006) ........ 15

*U.S. ex rel. Clausen v. Lab. Corp. of Am.*,
290 F.3d 1301 (11th Cir. 2002) ........ 15

*Yormak v. Yormak*,
2:14-CV-33-FTM-29CM, 2015 WL 2365772 (M.D. Fla. 2015)............................................ 15

*Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip., Co.*,
793 So. 2d 1127 (Fla. 5th DCA 2001)........................................................................ 9

**Statutes**

18 U.S.C. § 1962.......................................................................................................... 7

Fla. Stat. § 95.031(1)............................................................................................... 9, 10

Fla. Stat. § 95.031(2)................................................................................................... 11

Fla. Stat. § 95.051 ....................................................................................................... 13

Fla. Stat. § 95.11(3)........................................................................................ 8, 10, 11,

Florida Stat. § 95.11(4) ............................................................................................ 9, 10

Fla. Stat. § 772.17 ......................................................................................................... 7

Fla. Stat. § 772.103 ....................................................................................................... 7

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................ 2, 15, 16

Fed. R. Civ. P. 12(b)(1)........................................................................................ 1, 4, 17

Fed. R. Civ. P. 12(b)(6)........................................................................................ 1, 7, 17

Defendants Greenberg Traurig, LLP, Greenberg Traurig, P.A., and former GT Shareholder Jerome Hesch ("Hesch" when referred to individually, and collectively, "GT"), by and through undersigned counsel, hereby move the Court to dismiss the Amended Complaint in this action with prejudice pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This Motion is supported by the incorporated Memorandum of Law.

## INTRODUCTION

This action is an improper effort by Leo Ford, a principal and shareholder of the insurance company, Boston Life and Annuity ("BLA"), to sue for alleged injuries to BLA in his own name and for his own benefit. Ford alleges that BLA was harmed by a conspiracy among the defendants to advance the interests of a competing insurance company, Bancroft Life and Casualty Ltd. ("Bancroft"), over the interests of BLA. The Amended Complaint must be dismissed for numerous independent reasons.

First, Ford's alleged injuries – such as loss of his initial investment in BLA, loss of cash and equity in BLA, and loss of contractual payments BLA owed Ford (Amended Complaint (hereinafter, "AC") ¶¶ 48, 122–Damages Chart) – are wholly derivative. The alleged injuries flow solely out of injuries to BLA. It is black letter law that claims for such injuries may only be pursued by the company itself, not its underlying shareholders or principals. *Kammona v. Onteco Corp.*, 962 F. Supp. 2d 1299, 1302 (S.D. Fla. 2013), *aff'd*, 587 F. App'x 575 (11th Cir. 2014). The entire Amended Complaint should be dismissed with prejudice on this basis alone.

Tellingly, Ford included BLA as a plaintiff in his first complaint in this action. However, Ford dropped BLA as a plaintiff in his Amended Complaint when he realized that he had no authority to bring claims on behalf of BLA, which is in liquidation in the British Virgin Islands. (AC ¶ 56.) However, this amendment does not save his action, because Ford has no right to pursue claims for injuries to BLA in his own name.

Second, the Amended Complaint clearly establishes that all of Ford's claims are time-barred. To say that these claims are stale is an understatement. Ford alleges that his known injuries from the alleged conspiracy date back to 2002, (AC ¶¶ 47-48), *fourteen years* before the case was filed; that he was again injured in 2006, a decade prior to filing this suit, when his earnings from BLA were adversely affected by the alleged conspiracy, (AC ¶ 122–Damages Chart); and that he was again injured in 2008, eight years before filing suit, when BLA was put into liquidation, (AC ¶¶ 52-54). Ford had every reason to know what was causing these injuries.

He does not claim that BLA's competitor, Bancroft, was operating in secret; rather, he alleges that defendants were actively marketing Bancroft throughout the period, (AC ¶¶ 81-82, 124), and making public statements against Ford, (AC ¶ 101). Ford further admits awareness of competition from Bancroft in this period. (AC ¶ 17.) Thus, Ford was clearly on notice and should have investigated and pursued his claims earlier. The longest limitations period applicable to these claims (five years for the state RICO claim) has long since expired, and there are no allegations whatsoever that establish tolling. Indeed, the allegations in the Amended Complaint foreclose the possibility of the claims being tolled.

Third, the disjointed and conclusory allegations in the Amended Complaint do not come close to stating claims for RICO or fraud, which are subject to the heightened pleading standard of Federal Rules of Civil Procedure 9(b). Nor could the Amended Complaint possibly state a claim for tortious interference with contracts or tortious interference with advantageous business relationships when it does not identify a single contract or business relationship of Ford individually that GT affected.

## **BACKGROUND**

The allegations in the Amended Complaint revolve around two competing insurance companies – BLA and Bancroft. The Amended Complaint alleges that Defendant Philip Sigel approached Ford in November 2000 to determine whether BLA's predecessor would consider offering a deductible casualty insurance product. (AC ¶ 20.) Sigel and Ford then developed the product over the next two years and, in 2001, they formed BLA in the British Virgin Islands to issue the policies. (AC ¶¶ 23, 39.) Around 2001, Hesch, a shareholder in GT's Miami office, was retained to provide a tax opinion to BLA. (AC ¶ 21.) Brad Barros allegedly was responsible for marketing the BLA product. (AC ¶ 23.)

According to the Amended Complaint, the defendants collectively engaged in a conspiracy to start a competing company, Bancroft, and destroy BLA's business. The conspiracy is alleged to have begun around 2002 when Sigel and Barros established Bancroft and allegedly diverted $2.7 million in premium payments intended for BLA. (AC ¶¶ 14-18, 34.) Because of this alleged diversion, BLA allegedly failed to pay Ford $675,000 that it owed him pursuant to a 2001 contract. (AC ¶ 48.) Bancroft's insurance products were allegedly "knock-offs" of BLA's products, (AC ¶ 90), and ultimately, Ford claims that BLA was unable to attract new clients due to competition from Bancroft, (AC ¶ 52). In its fifth premium year (2006), BLA

allegedly did not receive a tax opinion letter, and therefore, could not accept premiums from its clients, and the clients obtained an order in the BVI freezing its assets. (AC ¶¶ 114-17.) Ford's earnings from BLA were adversely affected beginning in 2006, (AC ¶ 122–Damages Chart), and BLA was placed in voluntary receivership in 2008, (AC ¶¶ 52-54).

Specifically, as to GT, Ford claims that GT enabled the other defendants' alleged diversion of premiums from BLA in 2002 by providing Bancroft with a tax opinion letter and reviewing Bancroft's marketing materials for compliance. (AC ¶¶ 47, 67, 69.) Ford also claims that GT provided BLA's privileged information to Bancroft, (AC ¶ 107), and that, in 2004, Hesch participated in marketing presentations for Bancroft, (AC ¶¶ 79-82). Ford further alleges that, in 2006, GT declined to provide BLA with its requisite fifth-year tax opinion letter, after promising to do so, (AC ¶¶ 71-75). Finally, Ford alleges that, in 2007, GT improperly redacted information from a 2001 BLA invoice before resending the invoice to BLA, in order to conceal its involvement in the alleged conspiracy, (AC ¶¶ 29-33).

The Amended Complaint also contains extensive allegations about the post-2008 conduct of KPMG, which is serving as liquidator of BLA in the British Virgin Islands. For instance, Ford alleges that KPMG used its position as the liquidator to deprive Ford of his alleged rights to assets owned by BLA, including a certain piece of real estate, the "Dolphin Cove" property. (AC ¶¶ 64, 129.) However, there is not a single allegation of any conduct by GT after 2007, or any allegation of any agreement whatsoever between GT and KPMG with respect to anything involving the liquidation of BLA. In short, Ford does not allege that either GT or Hesch had any involvement whatsoever in the alleged misconduct of the liquidators that occurred after 2008.

## **ARGUMENT**

### I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Llano Fin. Group, LLC v. Smith*, 15-81020-CIV, 2015 WL 6438523, at *3 (S.D. Fla. 2015) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "Although courts must construe and accept as true the factual allegations in a complaint …, courts need not accept internally inconsistent factual claims, conclusory allegations, unwarranted deductions, or mere legal conclusions made by a party." *Howard v. Kerzner Intern. Ltd.*, 12-22184-CIV, 2014 WL 714787, at *5 (S.D. Fla. 2014) (internal citations and quotation marks omitted). *See also Berry v. Coleman*, 172 F. App'x 929,

932 (11th Cir. 2006) ("On a motion to dismiss, [c]onclusory allegations and unwarranted deductions of fact are not admitted as true…. This is particularly true when the conclusory allegations contradict the other facts alleged in the complaint.") (internal citation and quotation marks omitted). Moreover, dismissal of a complaint on statute of limitations ground is appropriate "if it is apparent from the face of the complaint that the claim is time-barred." *Foudy v. City of Port St. Lucie*, 2:14-CV-14318, 2015 WL 5245223, at *1 (S.D. Fla. 2015) (quoting *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013).)

Florida law applies to the claims against GT in this action. The Complaint alleges that BLA was represented by Hesch, who was located in GT's Miami office, (AC ¶ 21), and all of the allegations involving GT and Hesch occurred in Florida. (AC ¶ 21 (stating that Ford met Hesch in GT's Miami offices) and ¶ 23 (stating that materials were sent to Ford at his Boca Raton, Florida offices).) *See Grupo Televisa, S.A. v. Telemundo Communications Group, Inc*., 485 F.3d 1233, 1240 (11th Cir. 2007) (holding that, if the primary purpose of the tort rule involved is to deter or punish misconduct, "the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship"); *Pastor v. Union Central Life Ins. Co*., 184 F. Supp. 2d 1301, 1304-05 (S.D. Fla. 2002) ("[A]bsent a contractual choice of law provision, a contract is governed by the law of the state in which the contract is made.").

## II. FORD LACKS STANDING TO SUE GT FOR INJURY TO BLA

The Complaint should be dismissed in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) because Ford's claims are classic derivative claims, and he lacks standing to pursue them. Ford's lack of standing deprives this Court of subject matter jurisdiction, and thus, should be resolved at an early stage in these proceedings. *See Stalley v. Orlando Reg'l Healthcare Sys., Inc*., 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).").

Under Florida law, shareholder claims are derivative where "the gravamen of the complaint is injury primarily to the corporation or to the shareholders generally." *Kammona*, 962 F. Supp. 2d at 1303; *see also Alario v. Miller*, 354 So. 2d 925, 926 (Fla. 2d DCA 1978) ("[A]ction brought by a stockholder is derivative if the gravamen of the complaint is injury to the corporation"); *Hantz v. Belyew*, 194 F. App'x 897, 900 (11th Cir. 2006) (plaintiff's claim was derivative where the majority of allegations referred to misconduct detrimental to all

shareholders). It is irrelevant that Ford characterizes the claims as personal to him. *See Kammona*, 962 F. Supp. 2d at 1302 ("Whether a claim is direct or derivative . . . is determined from the body of the complaint rather than from the label employed by the parties.") (internal citation omitted).

Here, the gravamen of the Amended Complaint is injury to BLA. The Amended Complaint alleges a conspiracy by the defendants to steal BLA's money and clients and drive it out of business. Although the Amended Complaint conflates Ford and BLA as if they were the same entity, (*see, e.g.*, AC ¶ 52 ("*Ford and BLA* were unable to attract new clients and BLA was placed in voluntary receivership") (emphasis added)), they are not. BLA is a company incorporated under BVI law, (AC ¶ 40), and Ford is an investor/principal in that company, (AC ¶¶ 2, 122–Damages Chart). Ford does not allege that he operated a business that was separate from BLA or that he had clients independent of BLA. Thus, BLA's alleged loss of money and clients, and its eventual liquidation, could only have harmed Ford indirectly by harming the value of his investment in BLA and BLA's ability to perform its contracts with Ford.

Ford's "damages" chart, (AC ¶ 122), which lists seven alleged damages "events" and his resulting losses,[1] confirms that his alleged injuries are derivative of BLA's injuries:

- The first event listed on Ford's damages chart is "diversion of $2.7 million . . . intended for BLA," and premiums that allegedly would have been paid to BLA for the subsequent four years. The alleged loss Ford claims as a result of that event is the percentage of the BLA premiums he claims he was owed *by BLA* based on his contract with BLA. Thus, Ford's injury clearly flows solely from a loss to BLA.

- The second event listed is the loss of Ford's "initial investment in BLA," and "capitalization, legal, accounting, and other fees" paid in 2001. This too is clearly a reference to the loss of Ford's investments in and expenditures for BLA.

[1] GT is tellingly absent from the "People/Organizations Involved" column in Ford's chart. Thus, Ford does not appear to allege that GT is responsible for any of the injuries listed in the chart. Even if this was an oversight by Ford, it is indicative of just how little nexus GT has to this dispute.

- The third event is a "cash and equity loss" which Ford claims is based on the fact that the "standard valuation of insurance company is 10 times general reserves" – again, clearly a reference to a loss of BLA's value as a company.

- The fourth event is based on another contract Ford claims he had with BLA that would be triggered if BLA was liquidated or ceased to do business. This loss also flows from losses to BLA. To the extent BLA did not perform under that contract, Ford's claim is against BLA. Ford does not claim that defendants had any obligations to him personally under that contract, or were even parties to that contract.

- The fifth and sixth events are Ford's loss of "Dolphin Cove" real estate and his "annuity," which he alleges were wrongfully taken from him in the BLA liquidation. (AC ¶¶ 64, 129.) This matter, like his contract claim, is solely between him and BLA or BLA's liquidators. Ford does not allege any involvement by GT in either event.

- The seventh event is Ford's alleged "loss of earnings" from 2006 through 2016, including his "loss of reputation" and "loss of ability to do business." Ford's estimated losses of $11 million are, he claims, based on his previous year's tax returns. However, the only allegations in the Amended Complaint about Ford's loss of earnings or loss of business all relate to Ford's alleged inability to do business through BLA due to competition from Bancroft. There is not a single allegation of any business Ford was prevented from conducting separate from the business he wished to pursue through BLA. Thus, this too is a derivative injury.

These injuries, and the resulting claims, are inescapably derivative of any injuries BLA suffered. *See Medkser v. Feingold*, 307 F. App'x 262, 265 (11th Cir. 2008) (holding that corporate looting claim did not state a direct claim, because the "loss of value" to the plaintiff's investment "is indistinguishable from the loss to all other investors who were similarly harmed when funds were transferred from the corporate account to personal accounts of the defendants")*; Karten v. Woltin*, 23 So. 3d 839, 841 (Fla. 4th DCA 2009) ("[T]he fact that [the shareholder] may have lost the value of his investment because [the corporation] went out of business is, at best, an indirect injury.") (internal citation omitted); *Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Services, Inc.*, 805 So. 2d 941, 944 (Fla. 2d DCA

2001) (sole shareholder in a franchisee corporation could not recover individually under the Florida Franchise Act where the violation of which the shareholder complained caused direct injury to the franchisee corporation but only indirect injury to the shareholder).

There are important policy reasons for preventing a shareholder such as Ford from pursuing derivative corporate claims like these in his own name and for his own benefit. Namely, "the corporation on behalf of which plaintiffs sue must be made a party defendant so that a decree may appropriately give the corporation the fruit of any recovery by the plaintiffs." *Alario v. Miller*, 354 So. 2d at 927 (holding that "in a derivative action the corporation on behalf of which the stockholders sue is an indispensable party, and the court has no jurisdiction to adjudicate the rights of that corporation in its absence as a party"). Otherwise, a shareholder could obtain recoveries rightfully owed to a company's creditors or other shareholders, and defendants would be forced to adjudicate the same issues in multiple different suits in different jurisdictions with various shareholders and creditors of the company.

Accordingly, Ford's claims in the Amended Complaint should be dismissed with prejudice due to Ford's lack of standing.

## III. FORD'S CLAIMS AGAINST GT ARE TIME-BARRED.

Ford's claims against GT should also be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) because they are time-barred by the applicable statutes of limitations. Dismissal based on a statute of limitations defense "may be raised in a motion to dismiss for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6), when failure to comply with the statute of limitations is plain on the face of the complaint." *Foster v. Savannah Comm.*, 140 F. App'x 905, 907 (11th Cir. 2005) (internal citations omitted). Here, the Amended Complaint clearly establishes that the limitations period for each claim has expired.

### A. Ford's State and Federal RICO Claims Are Time-Barred

The Amended Complaint contains three claims based on alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, and the equivalent Florida Statute, § 772.103. The statute of limitations for federal RICO claims is four years. *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1333 (S.D. Fla. 2012) (citing *Rotella v. Wood*, 528 U.S. 549, 553 (2000)). The statute of limitations for Florida RICO claims is five years. *Spadaro v. City of Miramar*, 11-61607-CIV, 2013 WL 495780, at *29 (S.D. Fla. 2013) *aff'd*, 591 F. App'x 906 (11th Cir. 2015) (citing Fla. Stat. § 772.17).

The RICO statute of limitations runs from the date the plaintiff knew s/he was injured, and it is *not delayed* until the plaintiff discovers the pattern of racketeering or other elements of the claim. *See Rotella*, 528 U.S. at 556-57. Therefore, Ford's allegation that he did not learn about the conspiracy until April 12, 2012, is irrelevant to the RICO claims. (AC ¶¶ 13-14.) Here, Ford alleges that he suffered a series of injuries from the alleged conspiracy, spanning from 2002 to 2008. Specifically, Ford alleges that he was first injured in 2002, when BLA failed to pay funds owed to him, because its premiums had been diverted by Bancroft, and was again injured for five consecutive years thereafter when premiums were not paid by its clients, (AC ¶¶ 47-48, 122–Damages Chart); that he continued to suffer millions of dollars in losses of earnings in 2006 and each year thereafter due to a "loss of reputation and loss of ability to do business," (AC ¶ 122–Damages Chart); and that he was further injured, again by millions of dollars, when BLA was "unable to attract new clients and . . . was placed in voluntary receivership" (*i.e.*, liquidation) in the BVI in 2008, (AC ¶¶ 52, 54, 122–Damages Chart). Indeed, Ford admits – as he must given defendants' alleged public marketing of Bancroft and BLA's alleged injuries from Bancroft competition between 2002 and 2008 – that he "may have known before April 21, 2012, that the Barros Defendants[2] were competing against the BLA Group." (AC ¶ 17.) Thus, the Amended Complaint establishes that (1) Ford was aware of his alleged injuries, *at the latest*, by 2008 when BLA was put into liquidation due to competition from Bancroft; (2) the statute of limitations for the federal claims therefore expired four years later, in or before 2012, and (3) the statute of limitations for the state RICO claim therefore expired five years later, in or before 2013. It is irrelevant, for statute of limitations purposes, whether Ford was aware of the identity of all of the parties that allegedly injured him or of the existence of the alleged conspiracy. *See Rotella*, 528 U.S at 558-59.

**B. Ford's Conversion and Tortious Interference Claims Are Time-Barred**

The statute of limitations for Ford's conversion claim and tortious interference claims is four years. Fla. Stat. § 95.11(3); *In re Vega*, 59 Bankr. Ct. Dec. 169 (Bankr. M.D. Fla. 2014) *reconsideration denied*, 6:10-AP-00299-KSJ, 2014 WL 5017816 (Bankr. M.D. Fla. 2014); *Severe v. Shapiro, Fishman & Gache, LLP*, 14-CIV-80345, 2014 WL 5341886, at *5 (S.D. Fla.

---

[2] The Barros Defendants are defined in the Amended Complaint as Defendants Brad Barros, Philip Sigel, and their companies, GFAN, ABG, and Bancroft itself. (AC ¶ 9.)

2014), *appeal dismissed* (Dec. 18, 2014) (citing *Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip., Co.*, 793 So. 2d 1127, 1128 (Fla. 5th DCA 2001)). These claims are not subject to the delayed discovery rule. *See Davis v. Monahan*, 832 So. 2d 708, 710-711 (Fla. 2002); *see also Yusuf*, 793 So. 2d at 1128 (holding that delayed discovery rule only applies to a limited number of cases codified by statute and is inapplicable to claims for tortious interference and unfair and deceptive trade practices). Thus, the conversion and tortious interference claims accrued when "the last element constituting the cause of action" occurred, regardless of when Ford claims to have discovered them. Fla. Stat. § 95.031(1).

For the tortious interference claims, the last element of the claim is damages. *See Mattocks v. Black Entm't Television LLC*, 43 F. Supp. 3d 1311, 1318 (S.D. Fla. 2014). Thus, as with the RICO claims, Ford's tortious interference claims accrued when Ford first sustained damages as a result of his alleged loss of contracts and business relationships. As discussed above, this occurred in 2008, at the latest, when BLA filed for liquidation, and the statute of limitations therefore expired no later than 2012.

For conversion, the last element is the act which "constitutes the exercise of wrongful dominion and control over the property to the detriment of the rights of its actual owner." *Gomez v. BankUnited*, 10-21707-CIV, 2011 WL 114066, at *5 (S.D. Fla. 2011). Ford does not specify what his conversion claim against GT is based on, but applying a liberal pleading standard, it may be premised on: (1) the allegations that defendants misappropriated BLA's proprietary insurance model and information, (AC ¶¶ 93, 107), and (2) allegations that GT enabled the diversion of $2.7 million in premium payments intended for BLA, which indirectly injured Ford who was allegedly entitled to receive a percentage of the premiums from BLA, (AC ¶ 48). The Amended Complaint establishes that these alleged acts of wrongful dominion occurred in 2002. (AC ¶¶ 2, 15, 34, 48, 67, 84.) Thus, any plausible conversion claim against GT accrued in 2002 and the statute of limitations therefore expired in 2006.

### C. Ford's Fraud, Breach of Fiduciary Duty, and Breach of Contract Claims Are Time-Barred

Ford's fraud, breach of fiduciary duty, and breach of contract claims against GT are barred under both the two-year limitations period in Florida Stat. § 95.11(4)(a) applicable to attorney claims, which should apply here, as well as the four-year period for non-attorney claims.

The two-year period in section 95.11(4)(a) applies to claims for breach of fiduciary duty, breach of contract and fraud when they are "brought against a law firm or attorney for actions relating to the attorney-client relationship." *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 280 (11th Cir. 2009). For instance, in *Carrington Capital Mgmt., LLC v. Carr*, 2:15-CV-14191H, 2015 WL 6865750 (S.D. Fla. 2015), the court applied the two-year period for professional malpractice actions to plaintiff's claims, including fraud and breach of contract, because "all of Plaintiff's claims [were]… based on the failure of a professional acting within his professional capacity." *Id*. at *2; *see also Green v. Bartel*, 365 So. 2d 785, 787 (Fla. 3d DCA 1978) (applying two-year limitations period to claims for negligence, breach of fiduciary duty, and breach of contract against plaintiff's former counsel). Ford's claims against GT clearly relate to the attorney-client relationship. Ford alleges that GT breached an oral agreement "to only represent Leo Ford and BLA in this offshore casualty product," (AC ¶ 22); wrongfully redacted invoices showing legal work that GT performed for BLA, (AC ¶¶ 29-33); refused to renew its legal tax opinion for BLA, (AC ¶¶ 71-75); and breached its obligations to BLA as its client under the Florida Rules of Professional Conduct when it represented Bancroft, whose interests were allegedly adverse to BLA's, (AC ¶ 67). Ford's conclusory allegation that he "is not suing Greenberg for merely doing legal work," (AC ¶ 5), cannot contradict the allegations in his Amended Complaint, which all clearly implicate the attorney-client relationship. *See Howard*, 2014 WL 714787, at *5 (on a motion to dismiss, the court is not required to accept internally inconsistent factual claims).

The two-year period accrues when "the cause of action is discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.11(4)(a). Here, Ford claims he learned of the claims against GT in 2012. Thus, under even the most generous possible reading of the Amended Complaint, the limitations period for Ford's fraud, breach of contract, and breach of fiduciary duty claims expired in 2014, well before the Complaint was filed.

Even if this Court were to apply the four-year period applicable to non-attorney claims (though it does not apply), the claims would still be barred. With respect to the breach of fiduciary duty and verbal contract claims, the limitations period is four years from "when the last element constituting the cause of action occurs," *i.e.*, four years from the date of injury. Fla. Stat. §§ 95.031(1); 95.11(3)(k), and (p). *See also Brooks Tropicals, Inc. v. Acosta*, 959 So. 2d

288, 293-95 (Fla. 3d DCA 2007). Accordingly, the period runs from the date of Ford's injury in 2008, at the latest, and these claims had expired by 2012 even if the four-year period applies.

The delayed discovery doctrine does not apply to such claims. *See Davis,* 832 So. 2d at 710-711. Therefore, Ford's assertion that he belatedly discovered the allegedly wrongful conduct underlying his claims is irrelevant. In *Davis*, the plaintiff, an elderly woman, filed suits against various family members for breach of fiduciary duty, conversion, and other claims based on the misappropriation of her assets. *Id.* at 708-09. Although the misappropriations occurred between 1990 and 1992, the plaintiff did not discover them until 1995, and she did not file suit until 1997. *Id*. at 708-09, 712. The Florida Supreme Court held that the delayed discovery doctrine did not apply, and plaintiff's claims were therefore untimely. *Id*. at 710-12.

With respect to non-attorney fraud claims, the limitations period is four years "from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Fla. Stat. §§ 95.031(2); 95.11(3)(j). Under this standard, "the limitations period begins to run when a plaintiff has notice of the possible invasion of his legal rights." *Korman v. Iglesias*, 825 F. Supp. 1010, 1015 (S.D. Fla. 1993), *aff'd*, 43 F.3d 678 (11th Cir. 1994); *see also Altenel, Inc. v. Millennium Partners, L.L.C.*, 947 F. Supp. 2d 1357, 1371 (S.D. Fla. 2013) ("[T]he discovery rule applies an objective standard and turns on when the fraud should have been discovered rather than when Plaintiffs actually discovered it.").

As discussed above in Section III.A, and in more detail below in Section III.D, the Amended Complaint establishes that Ford was aware of the possible invasion of his legal rights by GT prior to 2008, and this knowledge triggered the statute of limitations for fraud. *See Altenel*, 947 F. Supp. 2d at 1371 (statute of limitations period was triggered by plaintiffs' receipt of transaction documents which contradicted prior representations which should have alerted them to the existence of fraud); *see also Muhammad v. Citimortgage, Inc.*, 598 F. App'x 636, 639 (11th Cir. 2015) (affirming dismissal of Florida law fraud claim on statute of limitations grounds, because allegations in complaint showed plaintiff could have discovered facts underpinning fraud claim more than four years before claim was filed). Thus, Ford's fraud claims would also have expired in 2012, at the latest, under the four-year period.

**D. There Is No Plausible Basis for Equitable Tolling.**

Ford alleges, without any factual support, that all applicable statute of limitations have been delayed in their triggering events or suspended by virtue of equitable tolling principles.

(*See* AC ¶ 238.) In fact, the Amended Complaint conclusively establishes that none of the limitations periods were tolled.

Equitable tolling has no application to the RICO claims. *See Rotella*, 528 U.S at 561; *Pac. Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246, 1252 (11th Cir. 2001), *as amended* (July 3, 2001). Equitable tolling applies only "where a pattern remains obscure in the face of a plaintiff's diligence in seeking to identify it." *Rotella*, 528 U.S at 560-61. It is defeated when a plaintiff had sufficient notice to prompt him to investigate and, had he done so diligently, he would have discovered the basis for his claims. *See Pac Harbor Capital*, 252 F.3d at 1252 (holding that equitable tolling did not apply to lender's RICO suit against its disbursing agent despite allegations of concealment, and noting that bringing suit 12 years after the first alleged predicate act is "too long for a RICO suit to hang in the air."); *Frantz v. Walled*, 513 F. App'x 815, 822 (11th Cir. 2013) (equitable tolling did not apply to doctor's RICO claims against co-conspirators in health care fraud; claims accrued at the latest when he was arrested for participating in fraud scheme).

Here, Ford claims he was first injured by the alleged conspiracy in 2002, *fourteen years* before the suit was filed. (AC ¶¶ 52-54.) As the Eleventh Circuit has stated regarding a shorter twelve-year period, that is "too long for a RICO suit to hang in the air." *Pac Harbor Capital*, 252 F.3d at 1252. During this period, Ford clearly had sufficient notice to prompt him to investigate. *Id*. Ford was put on notice in 2002 when he allegedly did not receive a significant payment owed to him by BLA because of the diversion of premiums from BLA to Bancroft. (AC ¶¶ 47-48.) Ford was again put on notice when, in 2006, a decade before Ford filed suit, GT declined to write a tax opinion letter for BLA after (allegedly) committing to do so, and Ford's earnings from BLA were significantly adversely affected (allegedly by millions of dollars per year). (AC ¶ 122–Damages Chart.) Ford was put on notice again in 2006 when a BVI order froze BLA's assets, allegedly with the assistance of defendants, which "crippled BLA and Ford's ability to do business," and the Barros Defendants allegedly then "went to the internet and press claiming Ford and BLA stole money and did not pay attorneys," which further "killed Ford's and BLA's business." (AC ¶¶ 114-17.)

Furthermore, the Amended Complaint establishes that, had Ford investigated diligently in response to the above events, he would have discovered the basis for his claims. *See Pac Harbor Capital*, 252 F.3d at 1252. Bancroft was not being operated in secret. In 2004, there was

allegedly a public "announcement of a joint GT/Bancroft marketing and sales program," publicizing training programs and webinars for Bancroft's product in GT offices, with Hesch as a guest speaker, (AC ¶ 81-82, 124), and defendants "continue to advertise their fraudulent services to clients and the public." (AC ¶ 164.) Furthermore, the pleading that Ford reviewed in 2012, filed by a third party, set forth the "evidence of Bancroft's bad faith acts against Ford," including the alleged diversion of premiums in 2002, and the fact that GT represented Bancroft. (AC ¶¶ 4, 13-14.) Ford does not offer any reason that he could not have uncovered the same evidence himself had he investigated.

In light of these facts, the Court need not accept Ford's conclusory allegation that he could not have discovered the claims until April 21, 2012. *See Hargraves v. Capital City Mortgage Corp*., 140 F. Supp. 2d 7, 16-17 (D.D.C. 2000) ("fraudulent concealment" allegations did not toll statute of limitations applicable to borrowers' RICO claim, although borrowers alleged that they were not aware of mortgage company's alleged racketeering activity, where borrowers did not suggest any particular effort by mortgage company to hide its alleged wrongdoing, and borrowers should have been aware that they were injured by the allegedly illegal and discriminatory loans), *modified on other grounds*, 147 F. Supp. 2d 1 (D.D.C. 2001). Ford's RICO claims were not tolled.

With respect to the common law claims, Florida has codified an exclusive list of conditions that can toll the running of the statute of limitations (such as adjudicated incapacity of the person entitled to sue). Fla. Stat. § 95.051. None apply here. Even if Florida law permitted equitable tolling in certain circumstances outside the codified list (which is debatable), the Amended Complaint does not allege any basis for the application of equitable tolling here.[3] Equitable tolling, when applied, is a narrow doctrine limited to situations where truly

---

[3] Federal courts have disagreed about whether Florida recognizes equitable tolling in civil suits such as this. *Compare Socas v. Nw. Mut. Life Ins. Co.*, 829 F. Supp. 2d 1262, 1275 (S.D. Fla. 2011) ("[I]n Florida, the application of equitable tolling is limited to administrative proceedings"), *and Carroll v. TheStreet.com, Inc.*, 11-CV-81173, 2014 WL 5474061, at *7 (S.D. Fla. 2014) (predicting that Florida would recognize equitable tolling in civil suits in "extraordinary circumstances"). The better position is that Florida would not permit tolling in civil suits outside of the codified list. § 95.051, Fla. Stat. ("A disability or other reason does not toll the running of any statute of limitations except those specified in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law."). However, the Court need not resolve this dispute, because equitable tolling would not apply here even if it was recognized in Florida.

"extraordinary circumstances prevented" the plaintiff from timely suing, *and* the defendant would not be prejudiced by application of the doctrine. *See Carroll v. TheStreet.com, Inc.*, 11-CV-81173, 2014 WL 5474061, at *7 (S.D. Fla. 2014) (applying equitable tolling where plaintiff was prevented from filing his claim by "such an extraordinary progression of rulings, appeals, remands and further rulings" – the likes of which the Court had "never seen" – *and* defendant was not prejudiced because "it was aware that it could be made a party to this case, indeed, actively litigating against that possibility"). In contrast, nothing here prevented Ford from investigating and bringing his claims at an earlier date, and GT, who received no notice of these claims over the last fourteen years, would be severely prejudiced.[4]

## IV. FORD'S RICO CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Ford's RICO claims should be dismissed for the independent reason that they fail to state a claim against GT. In order to bring a federal or state RICO claim against a law firm, a plaintiff must establish that the law firm "participated in the operation or management of the enterprise itself." *Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F. Supp. 2d 1356, 1380 (S.D. Fla. 2010) (emphasis added); *see also Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 827 (S.D. Fla. 1996). It is well accepted that the "provision of traditional legal services" – even if the services were misleading, negligent or otherwise wrongful – does not constitute the "operation or management" of an enterprise for purposes of RICO liability. *See Kelly*, 681 F. Supp. 2d at 1380-81 and *Bailey*, 938 F. Supp. at 827 (and cases cited therein).

Here, Ford's RICO allegations against GT center on GT's provision of legal services. For instance, Ford alleges that GT performed the following "legal work" for BLA: "the preparation of tax opinions, the review of marketing materials, the review of the insurance product itself, the review of the 50 US States insurance regulatory issues, the qualification of the casualty as insurance under US States' guidelines, and the marketing of the product by speaking at a seminar

---

[4] Nor can the doctrine of equitable estoppel save Ford's action. The doctrine of equitable estoppel does not toll the statute of limitations, but rather, in limited circumstances, bars a defendant from asserting the limitations defense. *See Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077 (Fla. 2001). To establish equitable estoppel to bar a limitations defense, a plaintiff must establish that the defendant engaged in wrongful conduct that induced the plaintiff "into forebearing suit within the applicable limitations period." *Id*. at 1079. Ford does not allege equitable estoppel, and the requirements are not present here.

in the Bahamas." (AC ¶ 25.) Ford then alleges that GT performed similar legal work for BLA's competitor (Bancroft), including the provision of tax opinion letters. (AC ¶¶ 67, 69, 79-81.) Ford does not allege that GT participated in the operation or management of the alleged enterprise. Similarly, in *Gilmore v. Berg*, 820 F. Supp. 179, 183–84 (D.N.J.1993), the court held that a lawyer's preparation of an allegedly misleading tax opinion letter constituted the rendition of legal services, not participation in the direction of the affairs of the enterprise. Thus, the RICO claims against GT and Hesch should be dismissed for failure to state a claim.

## V. FORD'S FRAUD CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Ford's fraud claim should be dismissed for the independent reason that it fails to meet the heightened pleading requirements in Fed. R. Civ. P. 9(b) ("Rule 9(b)"). *See Yormak v. Yormak*, 2:14-CV-33-FTM-29CM, 2015 WL 2365772, at *3 (M.D. Fla. 2015). Pursuant to Rule 9(b), a plaintiff asserting fraud must allege "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Particularity means that a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006).

Ford's fraud claim is clearly deficient under this standard. The fraud count merely recites the elements of the claim without specifically connecting the elements to the facts in this case. Because Ford has failed to connect any of his factual allegations to the elements of fraud listed in the fraud count, it is unclear which of the numerous disjointed factual allegations Ford intends to support the fraud claim. Rule 9(b) is not satisfied where a plaintiff's complaint "make[s] it impossible to determine which allegations are relevant to which claims." *Altenel*, 947 F. Supp. at 1366; *see also U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1314 n. 25 (11th Cir. 2002) (fraud claims cannot be based on conclusory allegations); *E & C Copiers Exp. Imp. Corp. v. Arizas Fotocopiadoras S.A.S.*, 15-21693-CIV, 2015 WL 7720604, at *3 (S.D. Fla. 2015) (dismissing fraud claim where "[p]laintiff includes conclusory statements that mirror the elements necessary to state a claim under each count, but fails to provide the detailed facts necessary to properly plead claims for fraud.")

Notably, Ford has alleged only a single instance of reliance, an essential element of a fraud claim, and it is nonsensical. *See Muhammad*, 598 F. App'x at 639; *see also Butler v.*

*Yusem*, 44 So. 3d 102, 105 (Fla. 2010). Ford claims that he relied on the allegedly redacted GT invoices "by continuing to work with Barros and Greenberg." (AC, ¶ 33.) However, Ford alleges that the fraudulently redacted invoice was delivered to BLA in June 2007 – over a year after Hesch, the GT attorney representing BLA, allegedly informed Rick May, another principal at BLA, that he would no longer provide legal services for BLA. (AC ¶ 31 (stating redacted bill was delivered in June 2007), AC ¶ 75 (describing Hesch 2006 email to "BLA/May" stating that GT had decided not to "undertake this proposed engagement" for BLA).) Thus, Ford's allegation that he continued to work with GT after receiving the redacted invoice is contradicted by other allegations in the Amended Complaint and fails to establish reliance. *See Berry*, 172 F. App'x at 932 ("On a motion to dismiss, [c]onclusory allegations and unwarranted deductions of fact are not admitted as true …This is particularly true when the conclusory allegations contradict the other facts alleged in the complaint.") (internal citation and quotation marks omitted). Moreover, while the various defendants are alleged to have had different roles in the conspiracy, none of the claims in the Amended Complaint distinguish among their roles. This method of pleading undermines "the notice function of Rule 9(b)" and "confuse[s] and obfuscate[s] each Defendant's conduct to the point where the particularity requirement of Rule 9(b) is not satisfied." *Altenel*, 947 F. Supp. 2d at 1366.

## VI. FORD'S TORTIOUS INTERFERENCE CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

The Amended Complaint also fails to state a claim for tortious interference with contracts or tortious interference with advantageous business relationships. "[N]o cause of action exists for tortious interference with a business's relationship to the community at large." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). Rather, the relationship must be "evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id.* Ford fails to identify a single contract or business relationship between him personally and any other person or company that was affected by GT's alleged conduct. Ford's allegations regarding *BLA's* relationships with its customers cannot qualify because, as discussed above, Ford has no standing to pursue claims on behalf of BLA. Thus, the tortious interference claims should be dismissed.

## CONCLUSION

For all of the reasons stated above, the Amended Complaint should be dismissed with prejudice. *See* Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), GT respectfully requests a hearing on its Motion to Dismiss. Ford's fifty-two-page Amended Complaint contains nine counts against GT, including three RICO counts under separate sections of the Florida and federal RICO acts, and numerous factual allegations that are at times presented in an incoherent manner. GT submits that oral argument will be useful to the Court in resolving the Motion to Dismiss. GT estimates that one hour will be required for the hearing.

Dated: August 31, 2016

Respectfully submitted,

**BOIES, SCHILLER & FLEXNER LLP**

By: *_/s/ Sashi C. Bach_*
STUART H. SINGER, ESQ.
(Florida Bar No. 377325)
SASHI C. BACH, ESQ.
(Florida Bar No. 398276)
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
ssinger@bsfllp.com
sbach@bsfllp.com
ftleserve@bsfllp.com

*Attorneys for Defendants Greenberg Traurig, LLP, Greenberg Traurig, P.A., and Jerome Hesch*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2016, I electronically filed the foregoing Motion with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notices of Electronic filing generated by CM/ECF.

Paul Platte, Esq.: paul@paulplatte.com

Edward A. Marod, Esq.: emarod@gunster.com

David A. Freedman, Esq.: dfreedman@coffeyburlington.com

Jeffrey Bast, Esq.: jbast@bastamron.com

Jeremy J. Hart, Esq.: jhart@bastamron.com

Jeremy S. Korch, Esq.: jkorch@bastamron.com

Traci H. Rollins, Esq.: traci.rollins@squirepb.com

Jason D. Joffe, Esq.: Jason.joffe@squirepb.com

Ricardo Marenco, Esq.: ricardo.marenco@squirepb.com

*/s/ Sashi C. Bach*
Sashi C. Bach

# SERVICE LIST

| | |
|---|---|
| Paul Platte, Esq.<br>PAUL PLATTE, P.A.<br>611 S. Fort Harrison Avenue, Suite 252<br>Clearwater, FL 33756-5301<br>Telephone: 727.474.1011<br>Email: paul@paulplatte.com<br>***Counsel for Plaintiff***<br><br>Edward A. Marod, Esq.<br>John W. Terwilleger, Esq.<br>GUNSTER YOAKLEY & STEWART, P.A.<br>777 S. Flagler Drive, Suite 500 East<br>West Palm Beach, FL 33401<br>Telephone: 561.655.1980<br>Facsimile: 561.655.5677<br>Email: emarod@gunster.com<br>Email: jterwilleger@gunster.com<br>Email: dpeterson@gunster.com<br>Email: eservice@gunster.com<br>***Counsel for KPMG USA***<br><br>Jeffrey Bast, Esq.<br>Jeremy J. Hart, Esq.<br>Jeremy S. Korch, Esq.<br>BAST AMRON LLP<br>SunTrust International Center<br>One Southeast Third Avenue, Suite 1400<br>Miami, FL 33131<br>Telephone: 305.379.7904<br>Facsimile: 305.379.7905<br>Email: jbast@bastamron.com<br>Email: jhart@bastamron.com<br>Email: jkorch@bastamron.com<br>***Counsel for Belmont Insurance Management Ltd. and Andrea Douglas*** | Traci H. Rollins, Esq.<br>Jason D. Joffe, Esq.<br>Ricardo Marenco, Esq.<br>SQUIRE PATTON BOGGS LLP<br>777 S. Flagler Drive, Suite 1900W<br>West Palm Beach, FL 33401-6144<br>Direct: 561.650.7256<br>Telephone: 561.650.7200<br>Facsimile: 561.655.1509<br>Email: traci.rollins@squirepb.com<br>Email: jason.joffe@squirepb.com<br>Email: ricardo.marenco@squirepb.com<br>Email: linda.parsons@squirepb.com<br>Email: judith.sibulkin@squirepb.com<br>***Counsel for Casey McDonald and Kris Beighton***<br><br>David A. Freedman, Esq.<br>COFFEY BURLINGTON, P.L.<br>2601 South Bayshore Drive, Penthouse<br>Miami, Florida 33133<br>Telephone: 561.858.2900 Ext. 205<br>Facsimile: 561.858.5261<br>Email: dfreedman@coffeyburlington.com<br>Email: mpalmero@coffeyburlington.com<br>Email: service@coffeyburlington.com<br>***Counsel for GFAN, ABG, Bancroft Property & Casualty, Ltd. aka Bancroft Life & Casualty ICC, Ltd., Bradley Barros, and Philip Sigel*** |