**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:16-cv-80618-WJZ**

Leo Ford and Boston Life and Annuity,

Plaintiff,

vs.

KPMG LLP; Belmont Insurance Management; Casey McDonald; Kris Beighton; Andrea Douglas; Greenberg Traurig, P.A.; Greenberg Traurig, LLP; Jerome Hesch; GFAN; ABG; Bancroft Property & Casualty, Ltd., (aka Bancroft Life & Casualty, Ltd., and Bancroft Life & Casualty ICC, Ltd.); Bradley Barros; and Philip Sigel,

Defendants.
_______________________________________/

**DEFENDANTS' BELMONT INSURANCE MANAGEMENT, LTD. AND ANDREA DOUGLAS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Belmont Insurance Management, Ltd. ("Belmont") and Andrea Douglas ("Douglas,") (collectively the "Defendants"), by and through their undersigned counsel and pursuant to Rules 12(b)(1), (2) and (6), Federal Rules of Civil Procedure, move for dismissal of the First Amended Complaint [D.E. 43] (the "Complaint") filed by Plaintiff Leo Ford ("Ford" or "Plaintiff"), for failure to state a claim upon which relief can be granted, lack of subject matter jurisdiction, and lack of personal jurisdiction and as grounds therefor state:

## INTRODUCTION

Plaintiff's Amended Complaint (the "Complaint") attempts to allege claims based on the Racketeer Influenced and Corrupt Organizations Act of 18 USC §1861 et seq. ("RICO"), Florida RICO, Chapter 772, Fla. Stat., and various state common law theories against a large number of defendants based upon alleged conduct which took place between ten and fifteen years ago. The

Complaint is seriously flawed and subject to dismissal on numerous grounds. No basis is alleged sufficient to subject Defendants to the jurisdiction of this Court and the claims are all clearly time barred. The Plaintiff's allegations are incoherent and do not even pass the threshold test of plausibility. Despite filling 53 pages with his rambling allegations Plaintiff fails to allege his claims with the specificity required by Rule 9(b) and certainly does not even get close to alleging a viable RICO claim. Nor has Plaintiff alleged any conduct by Belmont or Douglas that is sufficient to impose liability of any kind. If Plaintiff cannot allege a RICO claim, then this Court lacks subject matter jurisdiction over the State law claims.

It seems from a July 29 correspondence from Plaintiff's counsel, attached hereto as an exhibit, that the sole purpose of this case is to put pressure on Defendant, KPMG, LLP ("KPMG") to pay Ford a part of the consideration received from the sale of a parcel of land in St. Thomas, US Virgin Islands. This is highly improper. Plaintiff has alleged serious claims involving criminal conduct against Defendants without any basis for his accusations. There is no plausible entitlement to relief in this case against Belmont and Douglas. The Complaint should be dismissed with prejudice and Belmont and Douglas awarded the fees and costs they have incurred in defending against the clearly meritless claims asserted against them.

**MOTION[1]**

1. On April 20, 2016, Plaintiff filed its original complaint. Belmont was served on July 11, 2016. Douglas was served on July 26, 2016. Plaintiff filed the First Amended Complaint on August 9, 2016. [D.E. 43].

2. The Complaint attempts to set forth causes of action for: i) Civil RICO under 28 U.S.C. § 1962(c); ii) Civil RICO under 28 U.S.C. § 1962(d); iii) conversion; iv) breach of

[1] Belmont and Douglas join in those motions to dismiss filed by Defendants Bradley Barros, Greenberg Traurig, Jerome Hesch, Esq. and Casey McDonald.

fiduciary duty; v) fraud; vi) breach of contract; vii) tortious interference with contract; viii) tortious interference with advantageous business relationships; ix) Florida Civil RICO; and x) fraudulent transfer.

3. As discussed more fully in the incorporated memorandum, Plaintiff lacks standing to seek damages and the Complaint fails to state a cause of action for RICO or anything else. Since there is no claim for RICO, this Court lacks subject matter jurisdiction over the remainder of the claims. Moreover, all of Plaintiff's causes of action are barred by the statute of limitation, and the Court lacks personal jurisdiction over the Defendants.

4. Pursuant to §772.104(3), Fla, Stat., the Florida RICO statute, "The defendant shall be entitled to recover reasonable attorney's fees and court costs upon a finding the claimant raised a claim that was without substantial fact or legal support."

WHEREFORE, Belmont and Douglas request the Court to enter an Order dismissing the Complaint with prejudice and awarding Defendants the reasonable attorney's fees and costs incurred in the defense of this matter together with such other and further relief as the Court deems appropriate.

## MEMORANDUM OF LAW

### I. STANDARD FOR A MOTION TO DISMISS

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the pleading standard necessary to survive a motion to dismiss. In *Iqbal*, the Supreme Court stated that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court should strip out "threadbare recitals of the elements of a cause of action supported by mere conclusory statements," which the

Court is not bound to accept as true. *Iqbal* at 678. As the Eleventh Circuit stated in *S. Fla. Water Mgmt. Dist v. Montalvo*, 84 F.3d 402, 409, n. 10 (11th Cir. 1996), "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." Thereafter, the Court must determine whether the complaint states a plausible claim for relief. *Iqbal* at 678-79. "…[D]etermining whether a complaint states a plausible claim for relief [is]…a context-specific task that requires the reviewing court to draw on its judicial experience and *common sense." Id.* at 679 (emphasis added). The factual allegations in a complaint must possess enough heft to set forth a plausible entitlement to relief and contain enough either direct or inferential allegations respecting all material elements necessary to sustain a recovery under some viable legal theory. *Twombly*, 550 U.S. at 562. See also, *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Factual allegations must be sufficient to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Twombly*, 550 U.S. at 544. This strict standard is particularly applicable to this case. Many of Plaintiff's allegations are patently implausible. For example, Plaintiff's allegation that he discovered that he had been damaged by reading a memorandum filed in a Western District of Pennsylvania case in April 2012, is simply not credible and is alleged solely as an effort to avoid the fatal effect of the statute of limitation on his claims.

The scheme alleged is equally *implausible*. According to Plaintiff, he was an employee of Boston Life & Annuity ("Boston"), and developed various insurance products for the company. After that, Plaintiff's allegations descend into a seemingly disconnected series of stream of consciousness rants involving redacted and post-dated legal bills, Complaint ¶¶ 28-33; vague allegations of diversions of insurance premiums which occurred fourteen years ago,

Complaint ¶47; and incomprehensible, paranoia tinged allegations of conspiracy and malfeasance between BLA's accounting and legal professionals. The only thing that is clear from this is that the claims, if any, belonged to Boston and Ford lacks the standing to maintain this action. This type of pleading does not meet the *Twombly* and *Iqbal* plausibility standard on its face and warrants dismissal.

Nor has Plaintiff *alleged* any wrongdoing (plausible or not) by Douglas and Belmont. Douglas is specifically named only five times within Plaintiff's 53-page Complaint, and none of those instances implicate her in any wrongdoing whatsoever. Belmont is named more often, usually lumped in with KPMG, but the Complaint fails to set forth any specific illegal conduct by Belmont that would entitle Plaintiff to relief. This Court has no duty to speculate about possible unpled facts that might turn a frivolous claim into something more substantial. *Twombly*, 550 U.S. at 562. Plaintiff's Complaint fails the "*TwIqbal Test"* as to Douglas and Belmont; since it is obvious that Plaintiff cannot set forth a cause of action against them. Consequently, the Complaint should be dismissed with prejudice. *LaCroix v. Western Dist. of Kentucky*, 627 Fed.Appx. 816, 819 n.1 (11th Cir. 2015).

## II. THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS.

### A. Plaintiff Fails to Allege a Basis for Personal Jurisdiction

Plaintiff has not alleged any basis for personal jurisdiction over Belmont and Douglas, presumably relying 18 U.S.C. § 1965, which has been interpreted as giving RICO claims a national scope, rendering it unnecessary to allege a basis for personal jurisdiction in the forum state. Instead, it has been held that it is sufficient to allege that the defendant has minimum contacts with the United States as a whole. *Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d. 935, 947 (11th Cir. 1997); *Clement v. Pehar,* 575 F. Supp. 436,

438 (N.D. Ga. 1983). However, Ford has failed to allege that Douglas and Belmont have any connection or contact, minimum or otherwise, with the United States.

Even if Plaintiff had alleged a U.S. connection with regard to Belmont and Douglas, jurisdiction over Defendants entirely depends upon the Plaintiff properly alleging a viable RICO claim, which the Plaintiff has also failed to do. The Eleventh Circuit has held that a plaintiff may not rely on RICO's nationwide service of process provision if the plaintiff has failed to state a colorable claim. *In re Courboin v. Scott*, 596 Fed.Appx 729, 733 (11th Cir. 2014) (citing *Republic of Panama*, 119 F.3d at 942); *See also Klayman v. Deluca*, 2016 WL 1045851, at *9, Case No. 15-cv-80310-KAM (S.D. Fla. March 16, 2016). As discussed in detail below, the Plaintiff has entirely failed to state a colorable claim for RICO because Plaintiff has not properly alleged the predicate acts, the enterprise, or a pattern of racketeering activity. Plaintiff has also failed to allege mail and wire fraud with the requisite specificity. Because Plaintiff cannot allege a viable RICO claim, this Court does not have personal jurisdiction over Defendants.

**B. <u>Plaintiff Has Failed to Allege Sufficient Minimum Contacts</u>**

Nor has Ford alleged a basis for personal jurisdiction for his State law claims. In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), the Supreme Court found that the Fourteenth Amendment is designed to protect individuals by providing them with fair notice that their activities will render them liable to suit in a particular forum. This "fair warning" requirement is satisfied if the defendant "purposely directed" its activities towards the forum. *Id*. at 477. Once this has been established, a court must still determine whether the assertion of personal jurisdiction over the defendant comports with "notions of fair play and substantial justice." *Id*. at 477. When jurisdiction is attacked, the Court may consider extrinsic evidence such as deposition testimony and affidavits, and is not constrained to view the facts in the light most favorable to

Plaintiff. *Carmichael v. Kellogg, Brown & Root Services, Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

Here, the Defendants did not purposefully avail themselves of the laws and privilege of the State of Florida. Andrea Douglas and Belmont are residents of the British Virgin Islands, and lack minimum contacts with this State. *See* Affidavits of Douglas and Belmont attached hereto as Exhibits 1 and 2. Defendants do not reside in or have an office in Florida, they do not do business in Florida, and do not derive income directly from the State of Florida. The Complaint does not allege that Douglas or Belmont did anything at all in the State of Florida. Although the Complaint vaguely alleges that phone calls and faxes were placed to Florida, it does not specifically plead that Belmont or Douglas made these calls, or participated in them. In any event, the Eleventh Circuit has held that making telephonic and electronic communications into Florida, standing alone, does not constitute doing business in Florida to trigger the state's long-arm jurisdiction. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005). There are simply no allegations that would confer personal jurisdiction over the Defendants in Florida.

### C. Traditional Notions of Fair Play and Substantial Justice

It would be profoundly unfair to require Defendants who reside in the British Virgin Islands, to be dragged across the ocean, over 1,000 miles, to the State of Florida, when the locus of the case appears to be the British Virgin Islands. If this case were to proceed in Florida, Defendants' counsel would likely be required to travel to the British Virgin Islands to conduct almost all discovery.

In addition, Plaintiff's own counsel has virtually admitted that the case is meritless and has been brought in an attempt to coerce KPMG to pay Ford a portion of the sales price for a

parcel of property in St Thomas, U.S. Virgin Islands. As Plaintiff's counsel states in a July 29 email to defendants' counsel: "I have come to an agreement with the actual seller of Dolphin Cove property to pay to Leo Ford a small portion of the investment in Dolphin Cove by Mr. Ford's annuity policy, which, if Mr. Ford receives it, will resolve this litigation. This case could settle tomorrow with none of the RICO Defendants having to pay any settlement money or any attorney fees." This email indicates that Plaintiff filed this case in Florida to harass the Defendants into pressuring KPMG to submit to the Plaintiff's demands. The claims against Defendants are baseless, and under these circumstances, fair play and substantial justice militate in favor of finding a lack of personal jurisdiction over them.

## III. THE COMPLAINT FAILS TO STATE A CLAIM

### A. The Complaint is an Impermissible Shotgun Pleading

In addition to being legally insufficient for the reasons set forth below, the Complaint is a prohibited "shotgun" pleading, where each allegation and count is multifariously incorporated into each successive count. Furthermore, the allegations are so vague and ambiguous that the Defendants cannot reasonably be expected to answer the Complaint. The Eleventh Circuit has repeatedly condemned pleadings that violate the mandates of Rules 8(a) and (d), and 10(b) and incorporate all previous counts into all successive counts. *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296-96 at n. 9, 10 (11th Cir. 2002); *Davis v. Coca-Cola Bottling Co. Consol*., 516 F.3d 955, 981-82 (11th Cir. 2008) *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *LaCroix* 627 Fed. Appx. at 819. Additionally, the Complaint lumps all defendants' conduct together, such that it is impossible to identify which particular defendant engaged in what allegedly wrongful conduct. This also warrants dismissal. *LaCroix, id.*

When Plaintiff's allegations are not simply recitations of legal conclusions, or "kitchen-sink" allegations of group harm, they are an indecipherable rambling in which players appear and vanish from one sentence to the next and half-finished allegations are left hanging. The Complaint refers to poorly described documentation filed in various courts from Pennsylvania to the British Virgin Islands, none of which is attached to the Complaint. Defendants cannot determine what the Complaint is trying to say, and therefore, cannot be expected to answer it. To the extent that the Court is unwilling to dismiss the Complaint outright, Defendants request that the Court order the Plaintiff to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

**B. <u>The RICO Claim is Barred by the Statute of Limitation</u>**

Plaintiff's allegations show that his causes of action are barred by the applicable statute of limitation. When the affirmative defense of statute of limitation is evident from the face of the Complaint, the court may dismiss it. *Miller v. Woodham*, No. 05-12425, 2006 WL 9557498 at *1 (11th Cir. Apr. 12, 2006). While the RICO statute contains no statute of limitation, the Supreme Court has held that the limitation period for RICO claims is four years. *Agency Holding Corp. v. Malley Duff & Assoc., Inc.*, 483 U.S. 143, 107 S.Ct. 2759 (1987). A RICO claim accrues from the date that the Plaintiff knew or should have known of his injury, regardless of when the injury is discovered to be part of a pattern of racketeering. *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013). Thus, a plaintiff cannot use an independent, later predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period. *Id.* at 1331. When an injury is a continuation of an initial injury, it is not new and independent, and relates back to when the original injury occurred. *Id.* Ford knew or should have known that he was injured as early as 2002, when according to his

Complaint; $2.7 million dollars was allegedly diverted from Boston Life and Annuity ("Boston"). Complaint at ¶¶ 2, 15, 47, 48, 102. Therefore, none of the injuries that Ford complains of are "new and independent," rather; they are a continuation of the initial injury which took place in 2002.

But Ford claims that the running of the statute was tolled. Ford alleges on April 21, 2012, a date he apparently remembers with crystal clear precision, he "read a Memorandum in Civil Action No. 10, United States District Court," and subsequently started to investigate the "conspiracy." Complaint at ¶ 4.[2]

As noted above, it is within the Court's power to dismiss a complaint when an allegation upon which it is founded, is totally implausible. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *Wagenknecht v. U.S.*, 533 F.3d 412, 417 (6th Cir. 2008). Plaintiff invites the Court to believe that he was casually thumbing through filings in the Western District of Pennsylvania, when he ran into a memorandum [Case No. 10-cv-7-4-AJS, D.E. 289], causing him to realize that he had sustained damage in 2002. Complaint at ¶ 4, 13, 16-18. Plaintiff's allegations suggest he spent the next three years and 364 days marshalling "evidence" before launching his Complaint exactly one day before the RICO four year statute of limitations allegedly ran.

Ford's attempt to toll the statute of limitations is not only implausible but futile. A RICO plaintiff alleging tolling as a result of fraudulent concealment must act diligently to investigate and uncover that activity. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 196-96 (1997). "A financial fraud victim is not allowed to wait for time, the mother of truth, to make manifest a prohibited

[2] Because Plaintiff is represented by counsel, he should be able to accurately direct the parties to this action and the Court to *Bancroft Life & Casualty ICC, LTD v. Intercontinental Management, Ltd.*, Case No. 10-cv-704-AJS, filed in the Western District of Pennsylvania, which is most assuredly **not** simply called "Civil Action No. 10." The Court may also take notice of this docket and this filing. Fed. R. Evid. 201(c) and (d); *McDowell Bey*, 588 Fed.Appx. at 926-27.

pattern…" *Pacific Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246, 1251 (11th Cir. 2001); ("A RICO plaintiff is expected to promptly get the legal advice necessary to discern the wrong, if wrong there be.") *Pacific Harbor*, 252 F.3d at 1252. Ford's allegations demonstrate that he did not exercise diligence in uncovering his injuries and therefore, is not entitled to equitable tolling of his claims. Equitable tolling is the exception, not the rule, and does not protect the non-diligent RICO plaintiff. *Pacific Harbor* at 1251-52 *quoting Rotella v. Wood*, 528 U.S. 549, 561 and 556-57 (2000).

Additionally, Ford alleges a "smear and intentional disinformation campaign was launched against BLA/Ford" in 2002 [Complaint at ¶¶ 100-101]. Even if Ford had not discovered the damage done by this "smear campaign" in or around 2002, he surely was aware of it by 2006, when he references a lawsuit that was filed against him related to the "smear campaign." Complaint at ¶ 108.[3] Ford actually filed counterclaims in this lawsuit making it obvious that he must have known that he had sustained damage by 2006.

The allegations in paragraphs 39 and 48 of the Complaint also show that Ford must have known about his alleged injury by 2006. Although paragraph 48 alleges Ford was "robbed of $675,000 year one as his contract with BLA called for payment of 25% of casualty product premium…Total loss was $3,915,000 based on the product revenue stream if the clients had entered BLA's program as it was a five year pay in product." Ford allegedly sustained injuries of $675,000 as of December 6, 2002, and had sustained losses of $3,915,000 by December 6, 2006. To the extent Boston's liquidation caused damage to Ford, he must have been aware of that

[3] This suit, filed in the Circuit Court for Miami-Dade County, Florida on May 25, 2006, is captioned *Amber Cape Productions, LLC v. Boston Life & Annuity Co., Ltd*, Case No. 2006-10240-CA-01, and the docket reflects that a summons was issued to Leo Ford on May 25, 2006. On December 20, 2007, Leo Ford dismissed counterclaims that he had within that lawsuit. The Court may take judicial notice of this docket when ruling on a motion to dismiss. Fed. R. Evid. 201(c) and (d); *McDowell Bey v. Vega*, 588 Fed.Appx. 923, 926-27 (11th Cir. 2014).

damage by February 27, 2008, as set forth in paragraph 54 of the Complaint. All of these injuries originated in 2002, and at the latest occurred in 2008. The very latest time for Ford to have brought a RICO claim under these facts would have been 2012.[4]

### C. Plaintiff Fails to State a Claim Under 18 USC § 1962(c)

Even if Plaintiff's extraordinary allegations were remotely plausible, he has failed to state a claim for relief. In Counts I and II, Plaintiff attempts to allege a claim for violation of RICO, 18 U.S.C. §§1962(c) and (d). However, Plaintiff has utterly failed to allege the essential elements of a RICO claim. The basic elements of a RICO claim are: (1) conduct (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006); *Special Purpose Accounts. Receivable . Co-op. Corp. v Prime One Capital Co., LLC*, 202 F. Supp. 2d 1339, 1346 (S.D. Fla. 2002); *Virdris Corp., v. TCA Global Credit Master Fund, LP*, 2015 WL 9688202, 15-cv*61706-UU *5 (S.D. Fla. Dec. 17, 2015).

Under § 1962(c) of RICO, "It shall be unlawful for any person employed by or associated with any enterprise…to **conduct or participate**… **in the conduct** of such enterprise's affairs through a pattern of **racketeering activity**…" (emphasis added). Section 1962(d) or RICO makes it unlawful to conspire to violate (a), (b) or (c). Plaintiff impermissibly attempts to cram all of the RICO claims into a single shotgun approach without alleging how Defendants specifically conducted or participated in the affairs of an enterprise through a pattern of racketeering activity. The Complaint also fails to properly allege a conspiracy to commit one the prohibited acts.

First, Plaintiff fails to properly allege racketeering activity. Racketeering activity includes a broad array of crimes which are defined at 18 U.S.C. § 1961(1). Plaintiff's RICO

---

[4] Ford's State law claims are time barred as well. The limitation period for Florida RICO is five years, *Spadaro v. City of Miramar*, 11-61607-CIV, 2013 WL 495780 (S.D. Fla 2013). The limitation period for the tort claims is four years. §95.11, Fla. Stat.

claims are based on the predicate acts of mail and wire fraud, so his substantive RICO allegations must comply with: i) with Rule 8(a)(2), giving Defendants fair notice of the claim and the grounds on which it rests; ii) *Twombly* and *Iqbal* which require him to avoid implausible and conclusory allegations; and iii) Rule 9(b)'s heightened pleading standard, which requires that in pleading fraud, Plaintiff must state the circumstances with particularity. *Ambrosia Coal & Construction Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007); *Viridis*, 2015 WL 9688202 at *11. To plead mail and wire fraud, Plaintiff must allege:

> (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud…The plaintiff must allege facts with respect to each defendant's participation in the fraud. *American Dental* at 1291.

A RICO plaintiff must also allege that the defendants acted with scienter. *Bill Buck Chevrolet, Inc. v. GTE, Florida, Inc.*, 54 F. Supp. 2d 1127, 1133 (M.D. Fla. 1999). In other words, it must be alleged that defendants had the specific intent to defraud the plaintiff and the circumstances of the fraud must be alleged with particularity. Such allegations cannot be conclusory and must be supported by factual allegations. *Republic of Panama, 119 F.3d at 949* (quoting *O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989).

As in *American Dental*, Plaintiff has not pointed to a single statement or misrepresentation made by Douglas or Belmont, the content or manner in which Belmont or Douglas made any statement, or what Douglas or Belmont specifically gained from the alleged fraud. There are no allegations of how Belmont or Douglas agreed to engage in an illegal scheme to defraud Ford. To be sure, it appears that any time Plaintiff disagrees with a conclusion, or is displeased with something in an email someone sent at some time, Plaintiff

labels that "fraud." Nothing within Plaintiff's allegations sets forth the "who, what, when, where and why" of any alleged wire or mail fraud allegedly committed by Douglas or Belmont.

Second, Plaintiff has entirely failed to allege the existence of an "enterprise" and the Complaint does not define this vital element. The RICO enterprise must also be alleged to be separate from the "persons" conducting its activities through a pattern of racketeering activity. *Cedric Kushner Promotions Ltd., v. King*, 533 U.S. 158, 161 (2001), *Kelly v. Palmer, Reifler & Assoc., P.A.* 161 F. Supp. 2d 1356, 1378 (S.D. Fla 2010). Because Plaintiff has failed to specifically allege each of the defendants' participation in or conduct of the enterprise, lumping all defendants together, it is impossible to determine what the enterprise is, whether any of the defendants to this action are a part of it, or separate from the enterprise, whether they are persons who have conducted the activity of the enterprise, or whether they did so by engaging in racketeering activity.

Third, Plaintiff has also failed to properly and specifically allege the existence of a pattern of racketeering activity, instead alleging disjointed legal conclusions masquerading as a pattern of racketeering activity. Plaintiff's allegations of mail and wire fraud are hyper-conclusory and have no factual content. It is not enough to allege that there were "multiple" criminal acts, the plaintiff must "show that the racketeering predicates are related *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239-43, 109 S. Ct. 2393, 106 L.Ed. 195 (1989); *Prime One Capital Co.*, 202 F. Supp. 1347. Plaintiff does not even attempt to allege this and accordingly, has failed to allege a RICO claim, thus rendering the Complaint subject to dismissal for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### D. Plaintiff Fails to State a Claim for RICO Conspiracy Under 28 U.S.C. 1962(d)

Count II fails to state a claim for RICO conspiracy pursuant to 18 U.S.C. § 1962(d). As Plaintiff's Count I fails to set forth a RICO violation against Defendants, and Count II incorporates Count I within it, Count II necessarily fails to set forth a claim for conspiracy to commit RICO violations.

Count II also fails to state a claim for common law conspiracy. The elements of civil conspiracy are: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to the plaintiff as a result of the acts done under the conspiracy." *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So.2d 1157, 1159-60 (Fla. 3d DCA 2008). In addition, the allegations must set forth "clear, positive and specific allegations of civil conspiracy." *Eagletech Communications, Inc. v. Bryn Mawr Inv. Group, Inc.*, 79 So.3d 855 (Fla. 4th DCA 2012). It is not sufficient to make general allegations of a conspiracy. *World Class Yachts, Inc. v. Murphy*, 731 So.2d 798, 799 (Fla. 4th DCA 1999). Plaintiff entirely fails to connect Belmont and Douglas with the alleged conspiracy.

Count II also fails, because Plaintiff failed to identify the fraud allegedly perpetrated on Plaintiff. Conspiracy requires that an "independent wrong or tort which would constitute a cause of action if the wrong were done by one person." *American Diversified Ins. Services, Inc. v. Union Fidelity Life Ins. Co.*, 439 So.2d 904, 906 (Fla. 2d DCA 1983); *Buckner v. Lower Florida Keys Hospital District*, 403 So.2d 1025, 1028-29 (Fla. 3d DCA 1981). The Complaint does not adequately plead the underlying tort of fraud. Plaintiff also fails to allege how the various

defendants collaborated in a conspiracy for the purpose of defrauding Plaintiff; what "fraud" actually occurred or by whom, when and how it was committed.

**E. Plaintiff's State Law Claims Must Be Dismissed**

All of Plaintiff's claims against Defendants are barred by the applicable statutes of limitation of Fla. Stat. §95.11, as Defendants terminated any relationship they had with Plaintiff in 2006. In addition, as described above, this court lacks personal jurisdiction over Belmont and Douglas with respect to the state law claims. Furthermore, as Ford's federal question claims fail, this Court should decline to exercise supplemental jurisdiction over the state law claims. *Baggett*, 117 F.3d at 1352-53. Nevertheless, in an abundance of caution and without belaboring the point, the state law claims should be dismissed for the following reasons.

Plaintiff's claim for conversion must be dismissed, because Plaintiff has not pled the elements of conversion. *U.S. v. Bailey*, 419 F.3d 1208, 1214 (11th Cir. 2005). Plaintiff has failed to plead the immediate right to possession of any property, and Plaintiff has not specifically identified anything that Defendants converted from Plaintiff, a vital element of conversion.

In Florida the elements of a breach of fiduciary claim are the existence of a duty, the breach of that duty, and damages proximately caused by the breach. *Jaffe v. Bank of America, N.A.*, 667 F. Supp. 2d 1299, 1319-20 (S.D. Fla. 2009). Plaintiff has not specifically pled that the Defendants owed him a fiduciary duty (nor could he, as one cannot create a fiduciary duty out of thin air). Since Plaintiff has not pled any specific fiduciary duty that Defendants owed to him, or in what capacity it was owed, he fails to set forth a cause of action for breach of fiduciary duty.

For the reasons set forth above with respect to the failure to satisfy heightened fraud pleading requirements or specifically allege any mail or wire fraud, Plaintiff's common law fraud claim fails as to Defendants.

Likewise, Plaintiff's breach of contract claim against Defendants fails in light of his failure to specifically allege any contract between Plaintiff and Defendants.

A claim under Florida law for tortious interference with contract requires the existence of a contract, the defendant's knowledge of the contract, the intentional procurement of its breach, the absence of any justification or privilege, and damages. *Treco Intern., S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1288 (S.D. Fla. 2010). Plaintiff has failed to specifically allege any specific contracts, that Belmont of Douglas knew of them, and that Defendants tortuously procured their breach.

A claim for tortious interference with advantageous business relationships requires: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference. *Treco Intern. S.A.*, 706 F.Supp.2d at 1289. Aside from rote recitation of these elements, Plaintiff has failed to specifically allege business relationships, that Defendants knew of them, or how Defendants interfered with them.

Finally, Plaintiff's counsel's email of July 29, 2016, attached to this motion as Exhibit 3 shows all of Plaintiff's claims are wholly without merit against all defendants, and are intended to extort a settlement. The email states in part:

> As I have repeatedly told all Defendants, Mr. Ford is willing to dismiss this case with prejudice as to all Defendants if the KPMG Defendants would simply waive any claim to the sale proceeds…
>
> * * *
>
> Because of that Certification, the KPMG Defendants can agree to not make a claim against the St. Thomas property without worrying about liquidation estate creditors criticizing KPMG.
>
> I have come to an agreement with the actual seller of Dolphin Cove property to pay to Leo Ford a small portion of the investment in

> Dolphin Cove by Mr. Ford's annuity policy, which, if Mr. Ford receives it, will resolve this litigation.
>
> However, lawyers on St. Thomas have informed me this must be resolved in the next 7 days or the St. Thomas resolution is terminated.
>
> If the Dolphin Cove sale is terminated, then the RICO Defendants plus KPMG BVI, Drury, Crumpler, will be left with the RICO case I have filed, plus an amended complaint alleging, inter alia, wire fraud and mail fraud as recently as two weeks ago regarding Mr. Ford's loss of his share of the Dolphin Cove sale.
>
> **This case could settle tomorrow with none of the RICO Defendants having to pay any settlement money or any attorney fees** (emphasis added).

## IV. SUBJECT MATTER JURISDICTION

Federal courts are courts of limited jurisdiction, possessing only the powers granted to them by the Constitution or by statute. *Kokkonen v. Guard. Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The burden of establishing federal subject matter jurisdiction rests on the party asserting jurisdiction, in this case, the Plaintiff. *Id*. Federal courts must scrupulously confine their jurisdiction to the precise limits that the applicable statutes have defined. *Underwriters at Lloyd's London v. Osting-Schwinn*, 613 F.3d 1079, 1086 (11th Cir. 2010); *Indianapolis v. Chase Nat'l Bank of NY*, 314 U.S. 63, 77 (1941). The basis for Federal jurisdiction in this case is supposedly the existence of a federal question under 28 U.S.C. § 1331, because Plaintiff has attempted to allege violations of the Federal RICO Statutes. However, as set forth above, Plaintiff has failed to set forth a RICO cause of action and cannot do so since the RICO claims are barred by the applicable statute of limitations. Thus, there is no Federal Question basis for jurisdiction and the Court should decline to exercise supplemental jurisdiction over the remaining causes of action, because Douglas and Belmont lack minimum contacts with the State of Florida, and the considerations of fairness and convenience to Defendants weigh in favor of

dismissing the remaining claims. *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352-53 (11th Cir. 1997).

## CONCLUSION

The Complaint should be dismissed with prejudice as to Douglas and Belmont because this Court lacks personal jurisdiction over the Defendants; the Complaint fails to set forth any cause of action against Defendants; and if the RICO claim is dismissed, the Court also lacks subject matter jurisdiction. In the alternative, the Court should grant summary judgment in Defendants' favor. If the Court does not dismiss the case or enter summary judgment, it should compel Plaintiff to file a more definite statement.

Dated: August 31, 2016

Respectfully submitted,

BAST AMRON LLP
*Counsel for Defendants*
*Belmont Insurance Management Ltd*
*and Andrea Douglas*
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, Florida 33131
Telephone: 305.379.7904
Facsimile: 305.379.7905
Email: jbast@bastamron.com
Email: jhart@bastamron.com
Email: jkorch@bastamron.com

By: /s/ *Jeremy J. Hart, Esq.*
Jeffrey Bast, Esq. (FBN 996343)
Jeremy J. Hart, Esq. (FBN 510645)
Jeremy S. Korch, Esq. (FBN 14471)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of August, 2016, a true and correct copy of the foregoing has been filed with the Court and served on the parties below via CM/ECF.

- David Allan Freedman dfreedman@coffeyburlington.com, mpalmero@coffeyburlington.com, service@coffeyburlington.com
- Edward Alan Marod emarod@gunster.com, dpeterson@gunster.com, pdavid@gunster.com
- Jeremy James Hart jhart@bastamron.com, mdesvergunat@bastamron.com, njones@bastamron.com
- Jeremy Simons Korch jkorch@bastamron.com
- Paul Martin Platte paul@paulplatte.com, carol@cityattorneys.legal, info@paulplatte.com
- Sashi C. Bach sbach@bsfllp.com, jmalave@bsfllp.com, mcalvin@bsfllp.com, smcelroy@BSFLLP.com
- Traci Hope Rollins traci.rollins@squirepb.com, carol.lesnick@squirepb.com, linda.parsons@squirepb.com, wpb_dckt@squirepb.com

/s/ *Jeremy J. Hart, Esq.*
Jeremy J. Hart, Esq. (FBN 510645)