**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:16-cv-80618-WJZ**

Leo Ford and Boston Life and Annuity,

Plaintiff,

vs.

KPMG LLP; Belmont Insurance Management; Casey McDonald; Kris Beighton; Andrea Douglas; Greenberg Traurig, P.A.; Greenberg Traurig, LLP; Jerome Hesch; GFAN; ABG; Bancroft Property & Casualty, Ltd., (aka Bancroft Life & Casualty, Ltd., and Bancroft Life & Casualty ICC, Ltd.); Bradley Barros; and Philip Sigel,

Defendants.
_______________________________________/

**DEFENDANTS' BELMONT INSURANCE MANAGEMENT, LTD. AND ANDREA DOUGLAS REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants, Belmont Insurance Management, Ltd. ("Belmont") and Andrea Douglas ("Douglas,") (collectively the "Defendants"), by and through their undersigned counsel and pursuant to Rule 7.1(c), Rules of the Southern District, hereby submit their Reply Memorandum in support of their Motion to Dismiss Leo Ford's ("Ford") First Amended Complaint (the "Amended Complaint") and say:

## INTRODUCTION

Ford's Response to Defendants' Motion to Dismiss (D.E. 84) (the "Response"), confirms his entire case is wholly meritless. The Response actually clarifies that Ford has no good faith RICO or state law claims against anybody. The very correspondence attached to Ford's Affidavit in support of the Response (D.E. 84-1; 84-2), show that as of June 2010, at the very latest, Boston's KPMG liquidators had placed him on notice that his annuity had no value and

had made demand for repayment of his debts to Boston. See attachments 8, 10 and 11 to Ford's affidavit (D.E. 84-2). This and the allegations of the Amended Complaint show that Ford knew or should have known of the basis of his RICO and other claims many years ago. Yet, now, long after the expiration of the applicable statutes of limitation, Ford has finally brought defectively alleged RICO and state law claims against Douglas and Belmont, cynically attacking their reputations by accusing them of being racketeers. These are serious allegations and there should be serious consequences. Douglas and Belmont, who are not even subject to the jurisdiction of this Court, have had to waste valuable time and money contesting Ford's scandalous and frivolous allegations. This Court should dismiss Ford's Amended Complaint with prejudice and reserve jurisdiction to award fees and costs to Douglas and Belmont.

## DISCUSSION

### A. Douglas and Belmont are not Subject to the Jurisdiction of this Court.

Douglas and Belmont are not subject to the jurisdiction of this Court. Ford's efforts to justify jurisdiction are disingenuous and rely on documents that date back to the turn of the century and which actually confirm that Belmont and Douglas lack sufficient contacts with Florida. Ford's affidavit in opposition to Defendants' challenge to personal jurisdiction states in part: "Belmont and Douglas were the administrators—and Douglas was an authorized signatory of an entity located in Miami which received payments from a trust in Florida." Ford Affidavit at ¶4 (D.E. 84-1). Almost everything about this statement is false and misleading. Attachments 1, 2 and 3 to Ford's affidavit confirm this. Attachment 1, a print-out memorializing events in 2003, states that Belmont Trust, Ltd., (**not** Defendant, Belmont Insurance Management, Ltd), was the administrator of Carina Investments, LLC ("Carina"), a **Nevis entity** with a "business address" of **Morning Star Holdings, Ltd., P.O. Box 556, Main Street Charlestown, Island of**

**Nevis.** Carina was owned by Boston**.** The Kleinfeld Law Firm of Miami, Boston and Carina's lawyers, was simply listed as a mailing address.

Carina was not an entity "located in Miami" as Ford falsely states. It is a Nevis entity located on that island. Nor was Carina an entity administered by Belmont, but by a separate company with a similar name. Douglas is not listed as an "administrator" of the Nevis entity, as Ford mendaciously attests. According to Attachment 2 to the affidavit, in 2003, Douglas was merely a signatory on Carina's accounts at First Bank, Virgin Islands located in the **British Virgin Islands**. Attachment 2 also shows that Carina had issued a mortgage in Florida and that payments would be made monthly "on to Boston Life" not to Douglas or Belmont. Nothing in or attached to Plaintiff's Affidavit shows that Belmont and Douglas had minimum or any contacts at all with this forum. Ford has failed to overcome the affidavits filed by Douglas and Belmont attesting that they lack minimum contacts with the State of Florida and that this court lacks personal jurisdiction over them.

## B. The Amended Complaint Fails to State Plausible Claims Against Douglas and Belmont

Throughout his Response, Ford refers to Douglas and Belmont as: "the KPMG Defendants including Belmont and Douglas." Presumably this mantra is intended to distract the Court from the fact that the Amended Complaint fails to allege that Belmont and Douglas have actually done anything wrong. Ford ropes Douglas and Belmont into this lawsuit by placing them in his diverse and arbitrarily created group-the "KPMG Defendants." Ford provides no rational explanation why Douglas and Belmont should be characterized as members of the "KPMG Defendants" and charged with all of the alleged bad conduct of this group from 2002 through the alleged wire and mail fraud which occurred "as recently as July 8, 2016." Amended Complaint at ¶ 3. The Amended Complaint alleges at paragraph 7: "KPMG, LLP, KPMG

Cayman and KPMG BVI Limited are accounting firms and management firms that represented Ford and Boston…KPMG established Belmont …to manage Boston…Douglas worked for Belmont." Then, in an astonishing leap, Ford lumps this diverse group of separate entities and individuals from three different jurisdictions together stating: "the Defendants identified in this paragraph will be collectively referred to as KPMG Defendants." Amended Complaint ¶ 7. The Amended Complaint treats the "KPMG Defendants" as a single entity and does not distinguish between the parties such as Belmont who originally provided administrative services, to Boston in the early years of the century, those such as the KPMG entity which provided accounting and actuarial services at that time, and those at KPMG entity which liquidated it years later, identified the debts owed by Ford to Boston and made claims on the annuity.

There is no need to further belabor the question of whether the Amended Complaint states a claim against the "KPMG Defendants including Douglas and Belmont", or anyone else – it does not. These issues have been extensively discussed by all of the Defendants in their various motions to dismiss and memoranda. However, it is important to bear in mind that the RICO claims alleged in the Amended Complaint rest on a foundation of fraud. As the Court stated in *American Dental Ass'n v. Cigna Corp*, 605 F.3d 1283, 1291 (11th Cir. 2010), when pleading a RICO claim for mail and wire fraud, Ford must state with particularity: (1) the precise statements, documents or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud. The plaintiff must allege facts with respect to *each* Defendant's participation in the fraud. *Id.* As in *American Dental,* Plaintiff's failure to set forth these details with respect to the "fraud" means that Ford has failed to adequately plead fraud, and therefore a RICO claim.

Ford has also failed to allege an "enterprise" separate from the persons named as defendants or properly allege a "pattern of racketeering activity". Ford has utterly failed to comply with Rule 9(b), Fed. R. Civ. P.; has not properly alleged a conspiracy of any sort and has not stated any state law claims. Normally a plaintiff who has failed to state a claim would be allowed to amend. However, this case should be dismissed with prejudice because quite aside from these severe pleading problems, Ford's claims are all barred by the applicable statutes of limitation; a fatal defect that he has now admitted through the attachments to his affidavit**.**

### C. <u>All of Ford's Claims are Barred by the Statute of Limitation</u>

Ford's Response focuses on the real issue in this case, his annuity, alleged to be a part owner of Dolphin Cove. Ford asserts that he and his wife, Mary Ford (not named as a party), are owners of the annuity. Ford tries to support his claim to proceeds from the sale of Dolphin Cove by attaching correspondence from Boston's KPMG liquidators. These documents confirm that Ford was on notice of claims concerning the annuity as of June 2010 at the latest. Attachment 10 to Ford's Affidavit is correspondence dated June 9, 2010 in which Casey McDonald of KPMG, a Boston liquidator, informs Ford: "As you know, Boston has asserted a claim over all these assets (the annuity) as security for a loan to you of $500,000."

Attachment 8 to Ford's affidavit is a letter dated July 22, 2010, from KPMG to Leo and Mary Ford, in which Mr. McDonald now tells the Fords that due to Ford's account payable of $751,000 and other debts and offsets, the value of the annuity is estimated to be a negative $439,624.23. This letter illustrates Ford's negative account balance in an easy to read table and concludes by stating: "as can be seen from the table above, even in the most optimistic of circumstances, the total value of your policy appears to be substantially negative." Attached as

Attachment 11 to the affidavit is what appears to be a memorandum from one of the liquidators explaining:

> Leo has only ever expressed a claim against $500,000 of the original investment. This claim has been rejected in full and Leo has chosen not to appeal the decision or take any further steps in that respect, despite being invited to do so on numerous occasions….The risk of Leo trying to assert a claim over a 25% share of Carina is difficult to assess, but I can say that that I don't think he has any legal right to do so, other than to come to the BVI court and appeal our decision which he has had years to do and hasn't done so yet.

Attachments 8, 10 and 11 to his affidavit show that Ford was on notice as of June 2010, almost 6 years before filing his original complaint (April 2016), that KPMG as the liquidator of Boston was asserting a claim to his interest in the annuity, deemed it to be worthless and was demanding payment from him for debts owed to the company.

As noted in Belmont and Douglas's Motion to Dismiss, the statute of limitation for a RICO claim is four years. *Agency Holding Corp. v. Malley Duff & Assoc., Inc.,* 483 U.S. 143, 107 S.Ct. 2759 (1987). Belmont and Douglas argued in their Motion to Dismiss that a RICO claim accrues from the time the Plaintiff knows or should have known that he had been damaged, regardless of when he discovers that the damage was caused by a pattern of racketeering activity. *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013). Since Ford was on notice and has now admitted in his affidavit, that as of mid-2010, KPMG was asserting a claim against him on behalf of Boston, deemed his annuity to be worthless and had no intention of paying him any of the proceeds of the Dolphin Cove lands, he must have known then (if not years before) that the very same predicate acts alleged in the Amended Complaint had taken place. With this knowledge, Ford should have brought his claims no later than July 2014. It does not matter how many times Ford insists that he was oblivious to his claims until reading

"Civil Action No. 10." The documents Ford has now injected into the record show that he was on notice that he suffered damage in 2010 at the latest, and was required to bring any complaint by July 22, 2014.

But Ford's knowledge of damages and the resulting claims goes back much further. The Amended Complaint is full of other express or implicit admissions that show Ford knew or should have known as early as 2002 that he had been damaged by the same alleged conduct that forms the basis of his claims. For example, the Amended Complaint alleges at ¶¶ 47-48 that in 2002, $2.7 million in Boston premiums was diverted by various Defendants. How could Ford, a principal of Boston, not have noticed this?

Ford alleges at ¶113 that Greenberg "refused to write the 5th year opinion letter-fraudulently stating that Ford and Boston did not pay their legal bills." In paragraph 114 Ford asserts that "the Barros Defendants sent wire fraud and mail fraud to 54 BLA clients stating BLA owed the clients money and encouraging the clients to sue BLA." Ford goes on to allege that this resulted in litigation in the Eastern Caribbean Supreme Court in which his and BLA's assets were frozen. Amended Complaint at ¶¶ 115-117. Ford concludes at ¶118, that "the above actions of Defendants ruined Ford's and BLA's reputation and rendered it impossible for Ford to work in the insurance business as he had done for 25 years." Although all of this happened between 2006 and 2008, and is alleged in the Amended Complaint, Ford sticks to his story that he did not notice he had been damaged until April 2012 while reading papers filed in "Civil Action No. 10."

The same is true of the state law claims. Having been placed on notice of damages to his reputation, business and wallet, like those he has alleged, Ford had an obligation to diligently follow up to determine whether he had claims. As §95.031, Fla. Stat. states: "the time within

which an action shall be begun runs from the time the cause of action accrues." Under §95.031(1) "a cause of action accrues when the last element constituting the cause of action occurs." The last element of all of Ford's claims is damages. Florida law allows a delay for discovery in this timetable only for fraud cases, and even there the Plaintiff must have exercised due diligence to discover the fraud. Section 95.031(2)(a), Fla. Stat. states that the period of time to bring a fraud claim runs from: "the time the facts giving rise to the cause of action were discovered or **should have been discovered with the exercise of due diligence**" (emphasis added).

The allegations of the Amended Complaint show that Ford was on notice that he had been damaged as early as 2002, when the premiums were diverted. Ford was on notice of additional claims in 2006 when Greenberg refused to write the opinion letter and the Defendants encouraged Boston's customers to sue. Ford alleges more damages occurred between 2006 and when Boston was liquidated in 2008; Ford's assets were frozen, his reputation ruined and his ability to work in the insurance industry destroyed. Finally, Ford has admitted he was notified in 2010 that his annuity was worthless and KPMG was demanding payment of his debts to Boston. The statute of limitation for RICO is four years. *Agency Holding, supra.* The statute of limitation for the state law tort claims is 4 years, §95.11(3), Fla. Stat. and the statute of limitation for breach of a written contract under Florida law is five years. 95.11(2)(b), Fla. Stat. According to the allegations of the Amended Complaint all of these statutes of limitation ran long before Ford filed this action.

When the affirmative defense of statute of limitation is evident from the face of the Complaint, as it is here, the court may dismiss it. *Miller v. Woodham*, No. 05-12425, 2006 WL 9557498 at *1 (11th Cir. Apr. 12, 2006). Here the statute of limitations issue is not only

apparent from the allegations of the Amended Complaint, but is confirmed by Ford's admissions in his affidavit and its attachments filed with his Response to Belmont and Douglas' Motion to Dismiss.

## **CONCLUSION**

Douglas and Belmont have no contacts with Florida and are not subject to the jurisdiction of this Court. The documents submitted by Ford fail to refute Defendants' affidavits attesting to their lack of minimum contacts with this forum, and actually tend to confirm the lack of such minimum contacts.

Ford's Amended Complaint utterly fails to state a cause of action against Douglas, Belmont or any of the other Defendants. All of Ford's claims are barred by the statutes of limitation. The Court should grant Defendants' Motion to Dismiss, dismiss Ford's Amended Complaint with prejudice and reserve jurisdiction to award Douglas and Belmont the fees and costs they have incurred in defending this action.

Respectfully submitted,

BAST AMRON LLP
*Counsel for Defendants*
*Belmont Insurance Management Ltd*
*and Andrea Douglas*
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, Florida 33131
Telephone: 305.379.7904
Facsimile: 305.379.7905
Email: jbast@bastamron.com
Email: jhart@bastamron.com
Email: jkorch@bastamron.com

By: /s/ *Jeremy J. Hart, Esq.*
Jeffrey Bast, Esq. (FBN 996343)
Jeremy J. Hart, Esq. (FBN 510645)
Jeremy S. Korch, Esq. (FBN 14471)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of October, 2016, a true and correct copy of the foregoing has been filed with the Court and served on the parties below via CM/ECF.

- David Allan Freedman dfreedman@coffeyburlington.com, mpalmero@coffeyburlington.com, service@coffeyburlington.com
- Edward Alan Marod emarod@gunster.com, dpeterson@gunster.com, pdavid@gunster.com
- Jeremy James Hart jhart@bastamron.com, mdesvergunat@bastamron.com, njones@bastamron.com
- Jeremy Simons Korch jkorch@bastamron.com
- Paul Martin Platte paul@paulplatte.com, carol@cityattorneys.legal, info@paulplatte.com
- Sashi C. Bach sbach@bsfllp.com, jmalave@bsfllp.com, mcalvin@bsfllp.com, smcelroy@BSFLLP.com
- Traci Hope Rollins traci.rollins@squirepb.com, carol.lesnick@squirepb.com, linda.parsons@squirepb.com, wpb_dckt@squirepb.com

/s/ *Jeremy J. Hart, Esq.*
Jeremy J. Hart, Esq. (FBN 510645)