**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:16-cv-80618-WJZ**
**Hon. William J. Zloch**

Leo Ford,

Plaintiff,

v.

KPMG LLP; KPMG BVI Limited; KPMG Cayman; James Drury; Russell Crumpler; Belmont Insurance Management; Casey McDonald; Kris Beighton; Andrea Douglas; Greenberg Traurig, P.A.; Greenberg Traurig, LLP; Jerome Hesch; GFAN; ABG; Bancroft Property & Casualty, Ltd. (a/k/a Bancroft Life & Casualty, Ltd., and Bancroft Life & Casualty ICC, Ltd.); Bradley Barros, and Philip Sigel,

Defendants.
_______________________________________/

**DEFENDANTS GREENBERG TRAURIG, LLP, GREENBERG TRAURIG, P.A., AND JEROME HESCH'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

STUART H. SINGER, ESQ.
SASHI C. BACH, ESQ.
SABRIA A. MCELROY, ESQ.
**BOIES, SCHILLER & FLEXNER LLP**
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Attorneys for Defendants Greenberg Traurig, LLP, Greenberg Traurig, P.A., and Jerome Hesch*

# TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. FORD CANNOT RECOVER DAMAGES FROM GT FOR HIS ALLEGED INJURIES. ..... 2

II. ALL OF FORD'S CLAIMS AGAINST GT ARE TIME-BARRED. ..... 4

A. Ford's RICO Claims Accrued, at the Latest, in 2008 and Expired By 2013. ..... 4

B. Ford Concedes That His State Law Claims Against GT Are Professional Malpractice Claims, Which Are Subject to a Two-Year Limitations Period. ..... 5

C. The Continuing Tort Doctrine Has No Application to the Claims Against GT. ..... 6

D. There is No Plausible Basis For Equitable Estoppel or Equitable Tolling. ..... 7

III. FORD'S RICO CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. ..... 8

IV. FORD'S FRAUD AND TORTIOUS INTERFERENCE CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. ..... 10

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

Page

**Cases**

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ... 2, 9

*Black Diamond Properties, Inc. v. Haines*,
69 So. 3d 1090 (Fla. 5th DCA 2011) ... 7

*Bloom v. Alvereze*,
498 F. App'x 867 (11th Cir.2012) ... 6

*Booth v. Carnival Corp.*,
522 F.3d 1148 (11th Cir. 2008) ... 8

*Byrne v. Nezhat*,
261 F.3d 1075 (11th Cir.2001) ... 3

*Carrington Capital Mgmt., LLC v. Carr, 2:15-CV-14191H*,
2015 WL 6865750 (S.D. Fla. 2015) ... 5

*Comcast of S. Florida II, Inc. v. Best Cable Supply, Inc.*,
07-22335-CIV, 2008 WL 190584 (S.D. Fla. 2008) ... 3

*Davis v. Monahan*,
832 So. 2d 708 (Fla. 2002) ... 5

*Design Pallets, Inc. v. Gray Robinson, P.A.*,
No. 6:07-cv-655-Orl-31KRS, 2008 WL 3200275 (M.D. Fla. Aug. 5, 2008) ... 9

*Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner*,
612 So. 2d 1378 (Fla. 1993) ... 3

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*,
647 So. 2d 812 (Fla. 1994) ... 10

*Halpin v. Crist*,
405 Fed. Appx. 403 (11th Cir. 2010) ... 2

*Hemi Group, LLC v. City of New York, N.Y.*,
559 U.S. 1 (2010) ... 2

*Holmes v. Sec. Inv'r Prot. Corp.*,
503 U.S. 258 (1992) ... 1, 2

*Kammona v. Onteco Corp.*,
962 F. Supp. 2d 1299 (S.D. Fla. 2013) *aff'd*, 587 F. App'x 575 (11th Cir. 2014) ... 3

*Kelly v. Palmer, Reifler, & Associates, P.A.*,
681 F. Supp. 2d 1356 (S.D. Fla. 2010) ........................................................................ 9

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997)........................................................................................... 1, 4, 8

*Koch v. Christie's Int'l PLC*,
785 F. Supp. 2d 105 (S.D.N.Y. 2011), *aff'd sub nom. Koch v. Christie's Intern. PLC*,
699 F.3d 141 (2d Cir. 2012)........................................................................................ 7

*Korman v. Iglesias*,
825 F. Supp. 1010 (S.D. Fla. 1993) ............................................................................ 6

*Pedraza v. United Guar. Corp.*,
114 F. Supp. 2d 1347 (S.D. Ga. 2000)......................................................................... 8

*Rotella v. Wood*,
528 U.S. 549 (2000)..................................................................................................... 4

*Spadaro v. City of Miramar*,
11-61607-CIV, 2013 WL 495780 (S.D. Fla. 2013) *aff'd*, 591 F. App'x 906
(11th Cir. 2015)........................................................................................................... 4

*Spadaro v. City of Miramar*,
855 F. Supp. 2d 1317 (S.D. Fla. 2012) ........................................................................ 4

*Suarez v. City of Tampa*,
987 So. 2d 681 (Fla. 2d DCA 2008) ........................................................................... 6

*U.S. ex rel. Atkins v. McInteer*,
470 F.3d 1350 (11th Cir. 2006) ................................................................................. 10

**<u>Statutes</u>**

Fla. Stat. § 95.031(2)........................................................................................................ 6

Fla. Stat. § 95.11(3)(j)....................................................................................................... 6

Fla. Stat. § 95.11(4)(a) ................................................................................................ 1, 5

Fla. Stat. § 772.17 ............................................................................................................ 4

**<u>Rules</u>**

Fed. R. Civ. P. 9(b) ............................................................................................. 7, 8, 10

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ...................................................................... 1, 10

Defendants Greenberg Traurig, LLP, Greenberg Traurig, P.A., and former GT Shareholder Jerome Hesch ("Hesch" when referred to individually, and collectively, "GT"), by and through undersigned counsel, hereby file this Reply Memorandum in further support of their Motion to Dismiss the First Amended Complaint with prejudice pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (D.E. 71) and in opposition to Plaintiff's Response thereto ("Plaintiff's Response") (D.E. 85).

**INTRODUCTION**

This action is an improper effort by Leo Ford, a former "principal" of Boston Life and Annuity ("BLA"), to sue for alleged injuries to BLA in his own name which occurred as many as fourteen years ago. As discussed in GT's Motion to Dismiss the Complaint and Incorporated Memorandum of Law ("GT's Motion to Dismiss") (D.E. 71), Ford's claims against GT must be dismissed for three independent reasons.

First, Ford's claims should be dismissed because his alleged injuries flow solely from injuries to BLA. As such, Ford's injuries are classic derivative injuries that he lacks standing to pursue. In an effort to avoid the derivative nature of his claims, Ford now claims that he is not even a shareholder of BLA and instead focuses on just three of the injuries alleged in the Amended Complaint which he asserts are "personal." These injuries, however, like all of the other injuries allegedly suffered by Ford, flow from harm to BLA, and Ford lacks standing to recover for them. Moreover, Ford's arguments cannot save his claims against GT because he fails to allege that any of the acts taken by GT were the proximate cause of the remaining damages. *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 263 (1992).

Second, the Amended Complaint clearly establishes that all of Ford's claims against GT are time-barred. Plaintiff's Response further underscores the stale nature of his claims. The Supreme Court has explicitly rejected the "last predicate act" accrual rule on which Ford relies to argue that his RICO claims are timely, *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997), and Ford concedes that all of his state law claims against GT are professional malpractice claims. Under Florida law, professional malpractice claims are subject to a two-year statute of limitations which accrues when "the cause of action is discovered or should have been discovered with the exercise of due diligence." Fla. Stat. 95.11(4)(a). Ford claims that he discovered the claims against GT in 2012. Thus, even under the most generous reading of the Amended Complaint, these claims expired in 2014, two years before this action was filed.

Finally, Ford's RICO, fraud, and tortious interference claims should also be dismissed for failure to state a claim. Plaintiff's Response to GT's Motion to Dismiss largely repeats the disjointed and conclusory allegations in the Amended Complaint with respect to these claims and utterly fails to address their numerous deficiencies.

## ARGUMENT

## I. FORD CANNOT RECOVER DAMAGES FROM GT FOR HIS ALLEGED INJURIES.

The gravamen of the Amended Complaint is injury to BLA, which makes Ford's claims classic derivative claims that he lacks standing to pursue. (*See* D.E. 71 at 4-6 and cases cited therein.) While implicitly conceding that most of the injuries listed in his "damages" chart, (AC ¶ 122), are injuries to BLA, Plaintiff's Response limits Ford's alleged injuries to the following: (1) "Ford personal loss re Dolphin Cove real estate on St. Thomas"; (2) "Annuity personal to Ford"; and (3) "Loss of earnings including Ford's loss of reputation and loss of the ability to do business 2006-2016 based on Ford's previous year's returns." (D.E. 85 at 4.)

The Amended Complaint alleges that the first two categories of injuries – Ford's loss of the "Dolphin Cove" real estate and his annuity –were wrongfully taken from him in the BLA liquidation. (AC ¶¶ 64, 129.) Ford cannot recover from GT for these injuries because the Amended Complaint fails to allege any involvement by GT in either event and thus fails to adequately allege that any acts taken by GT were the proximate cause of these damages. In *Holmes*, 503 U.S. at 263, the Supreme Court found that under RICO, it is not enough to allege that a defendant's acts were the "but for" cause of plaintiff's injuries. Rather, in order to state a valid RICO claim, the plaintiff must also allege that the defendant proximately caused their injuries. *Id*. In the RICO context, as well as in the common law context, proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (internal citation omitted). "A link that is too remote, purely contingent, or indirec[t] is insufficient." *Id*. *See also Halpin v. Crist*, 405 Fed. Appx. 403, 405–06 (11th Cir. 2010) ("Considering the issue of proximate causation, the Supreme Court has reiterated the 'directness requirement' of private actions under RICO, noting with particularity the difficulty that can arise when a court is forced to ascertain the amount of damages attributable to a defendant's indirect conduct.") (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006)).

The predicate acts allegedly committed by GT include the following: wire and mail fraud stating that GT was performing work for Ford when GT was also using Ford's products to perform work for Barros; GT's wire and mail fraud to Ford containing the redacted bill; and GT's emails and letters to Ford stating that Ford's insurance product complied with federal law. (AC ¶ 163). Ford has failed to allege *any* causal connection between these predicate acts and Ford's alleged loss of the Dolphin Cove real estate or his annuity during the BLA liquidation, much less a "direct" causal connection. Accordingly, Ford lacks standing to sue GT for these injuries. *Comcast of S. Florida II, Inc. v. Best Cable Supply, Inc.*, 07-22335-CIV, 2008 WL 190584, at *3 (S.D. Fla. 2008) ("[A] RICO plaintiff must plead proximate cause and under the Eleventh Circuit's 'restrictive view of the proximate cause requirement,' a RICO plaintiff 'has standing to sue only if his injury flowed directly from the commission of the predicate acts.'") (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1110 (11th Cir.2001)).

The third category of remaining damages – Ford's alleged loss of earnings from 2006 to 2016 – is derivative of injuries allegedly suffered by BLA. The only specific allegations in the Amended Complaint about Ford's loss of earnings or loss of business all relate to Ford's alleged inability to do business through BLA due to competition from Bancroft. Ford's passing reference to "real estate ventures" and "other business endeavors" which allegedly "fell apart" as a result of the "conspiracy" does not alter the derivative nature of his injury because the gravamen of this alleged loss is injury to BLA. *Kammona v. Onteco Corp.*, 962 F. Supp. 2d 1299, 1302 (S.D. Fla. 2013), *aff'd*, 587 F. App'x 575 (11th Cir. 2014). Furthermore, this third category of damages suffers from the same defect as the first two – Ford has failed to allege that this injury flowed directly from the acts allegedly committed by GT.

In response to the obvious derivative nature of his claims, Ford also claims that he is not even a shareholder of BLA. (D.E. 85 at 5.) Given Ford's claim that he is not a BLA shareholder, it is not clear what Ford's relationship to BLA is. It is clear, however, that Ford lacks standing to recover for alleged damages stemming from actions that GT allegedly took which harmed its former client, BLA, particularly when Ford does not even claim to hold an ownership interest in BLA. *See Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner*, 612 So. 2d 1378, 1379 (Fla. 1993) ("An attorney's liability for negligence in the performance of his or her professional duties is limited to clients with whom the attorney shares privity of contract.") While Ford asserts in a conclusory fashion that both he and BLA were GT's clients,

the Amended Complaint alleges that GT wrote tax opinions and performed other legal work for BLA – not Ford. (AC ¶ 25.) In his response, Ford failed to point to any insurance businesses or clients that he operated independently of BLA, further underscoring the Amended Complaint's failure to allege an attorney-client relationship between GT and Ford.

## II. ALL OF FORD'S CLAIMS AGAINST GT ARE TIME-BARRED.

The Amended Complaint clearly establishes that the limitations period for all of Ford's claims has expired.

### A. Ford's RICO Claims Accrued, at the Latest, in 2008 and Expired By 2013.

The statute of limitations for Ford's federal RICO claims is four years and the statute of limitations for Ford's state law RICO claims is five years. *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1333 (S.D. Fla. 2012) (citing *Rotella v. Wood*, 528 U.S. 549, 553 (2000)); *Spadaro v. City of Miramar*, 11-61607-CIV, 2013 WL 495780, at *29 (S.D. Fla. 2013) *aff'd*, 591 F. App'x 906 (11th Cir. 2015) (citing Fla. Stat. § 772.17). The RICO statute of limitations runs from the date the plaintiff knew s/he was injured, and it is *not delayed* until the plaintiff discovers the pattern of racketeering or other elements of the claim. *See Rotella*, 528 U.S. at 556-57. As discussed in GT's Motion to Dismiss, the Amended Complaint establishes that (1) Ford was aware of his alleged injuries, at the latest, by 2008 when BLA was put into liquidation due to competition from Bancroft; (2) the statute of limitations for the federal claims therefore expired four years later, in or before 2012, and (3) the statute of limitations for the state RICO claim therefore expired five years later, in or before 2013. (*See* D.E. 71 at 7-8.)

In contravention of clear Supreme Court precedent, Ford asserts that "in RICO cases involving continuing violations, such as multiple predicate acts committed over a period of years, each predicate act in furtherance of the RICO violation starts the limitation period running again." (D.E. 85 at 6.) In *Klehr*, 521 U.S. 179, the Supreme Court explicitly rejected this position for two reasons. First, it held that "the last predicate act rule creates a limitations period that is longer than Congress could have contemplated." *Id*. at 187. Second, it stated that this rule "is inconsistent with the ordinary Clayton Act rule, applicable in private antitrust treble damages actions, under which a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Id*. at 188 (internal citations omitted).

The Amended Complaint alleges numerous predicate acts which occurred prior to 2008. (AC ¶ 163.) Ford's conclusory allegations that the "predicate acts are ongoing" has no bearing on the statute of limitations, which accrued, at the latest, in 2008. (D.E. 85 at 13.)

### B. Ford Concedes That His State Law Claims Against GT Are Professional Malpractice Claims, Which Are Subject to a Two-Year Limitations Period.

Ford concedes that *all* of his state law claims against GT are "claims of professional malpractice." (D.E. 85 at 7.) Ford takes this position recognizing that, with the exception of the fraud claim, the delayed discovery doctrine would not otherwise apply. However, under Florida law, all claims "based on the failure of a professional acting within his professional capacity" are subject to the two-year limitations period for professional malpractice claims pursuant to Fla. Stat. 95.11(4)(a). *Carrington Capital Mgmt., LLC v. Carr*, 2:15-CV-14191H, 2015 WL 6865750, at *2 (S.D. Fla. 2015). The Amended Complaint alleges that Ford discovered that "GT represented Barros and Bancroft" on April 21, 2012. (AC ¶ 16.) Thus, even assuming the delayed discovery rule applies to Ford's claims, all of the state law claims are unequivocally barred. The statute of limitations accrued on April 21, 2012, at the latest, and expired two years later, in 2014.[1]

Although Ford acknowledges that all of the state law claims are professional malpractice claims, Ford nonetheless appears to argue that the limitations period for his state law claims is longer than two years because "Ford has sued Greenberg for much more than mere legal work." (D.E. 85 at 8.)[2] However, if the two-year limitations period for professional malpractice claims does not apply, then the delayed discovery rule does not apply to any of Ford's state law claims, except the fraud claim. *See Davis v. Monahan*, 832 So. 2d 708, 710-711 (Fla. 2002). Those claims not subject to the delayed discovery rule accrued when Ford's injuries occurred – which

---

[1] In Plaintiff's Response, Ford appears to suggest that he learned of GT's involvement in the alleged conspiracy sometime after April 21, 2012. However, this claim is contradicted by the allegations in the Amended Complaint, which alleges that Ford learned that GT represented Bancroft on April 21, 2012, and that Plaintiff "did not first have reason to know of the conspiracy between the Barros Defendants, the KPMG Defendants, and Greenberg Traurig…until April 21, 2012." (AC ¶¶ 16-17.)

[2] As discussed in GT's Motion to Dismiss, Ford's conclusory allegation that he "is not suing Greenberg for merely doing legal work," cannot contradict the allegations in his Amended Complaint, which all clearly implicate the attorney-client relationship. (*See* D.E. 71 at 10.)

the Amended Complaint establishes occurred no later 2008 – and expired by 2012. (*See* D.E. 71 at 8-11.) Ford cannot have it both ways – either the delayed discovery rule applies and the claims are barred by the two-year limitations period for professional malpractice claims, or the delayed discovery rule does not apply and the claims are barred because they accrued at the latest in 2008.

With respect to non-attorney fraud claims, the limitations period is four years, which "begins to run when a plaintiff has notice of the possible invasion of his legal rights." *Korman v. Iglesias*, 825 F. Supp. 1010, 1015 (S.D. Fla. 1993), *aff'd*, 43 F.3d 678 (11th Cir. 1994); Fla. Stat. §§ 95.031(2); 95.11(3)(j). The Amended Complaint establishes that prior to 2008, Ford was aware of misconduct allegedly committed by GT, including GT's refusal to renew the tax opinion letter for BLA in 2006, (AC ¶¶ 71-75), and GT's alleged redaction of the 2001 invoice in 2007, (AC ¶¶ 29-33). Ford argues that he was prevented "from learning what was going on with BLA" because the KPMG Defendants controlled BLA during the liquidation and concealed information from Ford, and that unspecified defendants told Ford that he could submit a claim in a litigation that occurred in Miami. (D.E. 85 at 8.) However, these acts are wholly unrelated to the misconduct allegedly committed by GT and do not change the fact that, based on the allegations in the Amended Complaint, Ford was aware of GT' s possible invasion of his legal rights prior to 2008.

**C. The Continuing Tort Doctrine Has No Application to the Claims Against GT.**

Ford's contention that the statute of limitations applicable to his state law claims has been tolled by the continuing tort doctrine has no merit. "A continuing tort is established by continual tortious *acts*, not by continual harmful effects from an original, completed act." *Suarez v. City of Tampa*, 987 So. 2d 681, 686 (Fla. 2d DCA 2008) (internal citations omitted) (emphasis in original). "When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort." *Id*. *See also Bloom v. Alvereze*, 498 F. App'x 867, 876 (11th Cir.2012) (rejecting plaintiffs' argument that their claim for conversion was continuing because the property had not been returned and noting that such failure to return property was a "continuing *inaction*, not a series of continuing acts").

The Amended Complaint does not allege a single instance of tortious conduct committed by GT that occurred after 2008. GT's allegedly damage-causing acts were completed by that

date, and there is no legal basis for Ford's attempt to apply the continuing tort doctrine to his claims against GT based on tortious conduct occurring after 2008 committed by other defendants. Accordingly, the continuing torts doctrine has no application to the claims against GT.

**D. There is No Plausible Basis For Equitable Estoppel or Equitable Tolling.**

Ford invokes the doctrine of equitable estoppel as another basis for tolling the statute of limitations. That doctrine "*presupposes that the plaintiff knows of the facts underlying the cause of action* but delayed filing suit because of the defendant's conduct." *Black Diamond Properties, Inc. v. Haines*, 69 So. 3d 1090, 1093 (Fla. 5th DCA 2011) (internal citations omitted) (emphasis in the original). Here, Ford alleges that he was unaware of the misconduct underlying his claims until 2012. Thus, the doctrine of equitable estoppel is inapposite. *See id.* at 1094 ("The doctrine of equitable estoppel is inapposite given that Plaintiffs do not allege that they knew they had a cause of action, but failed to comply with the statute of limitations because they relied on fraudulent representations made by Defendants that led them to delay filing suit.")

Similarly, Ford has not established any plausible basis for equitable tolling. In Plaintiff's Response, Ford does not dispute that under Florida law, equitable tolling is inapplicable to his state law claims. (*See* D.E. 71 at 13-14.) With respect to the RICO claims, Ford maintains that equitable tolling applies because defendants fraudulently concealed their misconduct. (D.E. 85 at 9.) However, equitable tolling based on fraudulent concealment applies in federal court only where the plaintiff establishes that:

> (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled.

*Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 116 (S.D.N.Y. 2011), *aff'd sub nom. Koch v. Christie's Intern. PLC*, 699 F.3d 141 (2d Cir. 2012) (internal citations omitted). Moreover, "a plaintiff attempting to apply fraudulent concealment must plead each of these elements with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure." *Id.*

The conclusory allegations in the Amended Complaint stating that defendants concealed their misconduct do not satisfy the particularity requirements of Rule 9(b) because Ford has

failed to "set forth the time, place and manner" in which the fraudulent acts occurred. *Pedraza v. United Guar. Corp.*, 114 F. Supp. 2d 1347, 1356 (S.D. Ga. 2000) ("A plaintiff's generalized and conclusory allegations of fraudulent concealment do not satisfy the requirements of Rule 9(b).") Moreover, Ford has not alleged any specific actions demonstrating that he exercised due diligence during the period that he seeks to have tolled. Ford's claim that even "non-diligent" plaintiffs are protected if there is a "veil of fraudulent concealment" is an incorrect statement of the law for RICO claims. *Klehr,* 521 U.S. at 194 ("In [the RICO] context, we conclude that 'reasonable diligence' does matter, and a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'")

Additionally, the allegations in the Amended Complaint clearly establish that Ford had sufficient notice of his claims to prompt him to investigate. Ford was put on notice in 2002 when he allegedly did not receive a significant payment owed to him by BLA because of the diversion of premiums from BLA to Bancroft. (AC ¶¶ 47-48.) Ford was again put on notice when, in 2006, a decade before Ford filed suit, GT declined to write a tax opinion letter for BLA after (allegedly) committing to do so, and Ford's earnings from BLA were significantly adversely affected (allegedly by millions of dollars per year). (AC ¶ 122–Damages Chart.) Ford was put on notice again in 2006 when a BVI order froze BLA's assets, allegedly with the assistance of defendants, which "crippled BLA and Ford's ability to do business," and the Barros Defendants allegedly then "went to the internet and press claiming Ford and BLA stole money and did not pay attorneys," which further "killed Ford's and BLA's business." (AC ¶¶ 114-17.) Ford argues that these allegations "do not state Mr. Ford knew about those actions then; the FAC alleges those actions occurred." (D.E. 85 at 10.) This contention ignores the fact that it is Plaintiff who bears the burden of showing that equitable tolling is warranted. *Booth v. Carnival Corp.*, 522 F.3d 1148, 1150 (11th Cir. 2008). Ford has failed to allege any facts which establish that he was unaware that GT refused to renew the tax opinion in 2006 or that his ability to do business was "crippled" at the time that these actions occurred, and such a position would run counter to common sense.

## III. FORD'S RICO CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Ford's RICO claims should be dismissed for the independent reason that they fail to state a claim against GT. In order to bring a federal or state RICO claim against a law firm, a plaintiff

must establish that the law firm "participated in the operation or management of the enterprise itself." *Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F. Supp. 2d 1356, 1380 (S.D. Fla. 2010).

Plaintiff's Response asserts that GT did "much more in the RICO conspiracy" than prepare tax letters. (D.E. 85 at 10.) However, the allegations in the Amended Complaint fail to establish that GT participated in the operation or management of the enterprise. To the contrary, the Amended Complaint alleges that GT performed legal services first for BLA and then performed similar legal services for Bancroft, which allowed *other* Defendants to steal Ford's products and BLA's clients and assets. (AC ¶ 67 ("After writing tax opinion letters for BLA to support BLA's insurance product, GT/Hesch provided Bancroft with the tax opinion that allowed Sigel, GFAN, ABG, Barros and Bancroft to rob BLA of clients and products and divert the $2.7 million via ABG bank accounts.").) These allegations do not constitute participation in the management of the alleged RICO enterprise. *See, e.g., Design Pallets, Inc. v. Gray Robinson, P.A.*, No. 6:07–cv–655–Orl–31KRS, 2008 WL 3200275, at *5 (M.D. Fla. Aug. 5, 2008) (evidence that law firm drafted strategy memos, board meeting agendas, letters to shareholders, business plans, sales and license agreements, and various other documents, on behalf of an allegedly corrupt organization whose goal was to wrest control of a company from one of its shareholder, was insufficient to show that law firm did anything more than act as legal counsel and did not rise to the level of a RICO violation).

Ford's claim that a federal judge in another matter found that GT participated in "a scheme to defraud the United States from tax revenues" is both misleading and irrelevant to Ford's RICO claims in this matter. Ford refers to a 2013 opinion in *Bancroft Life & Casualty ICC, LTD. v. Cesar Scolari*, Case No. C11-5017RBL (W.D. Wash. 2013), attached to Plaintiff's Response, as support for this contention. However, GT is mentioned only three times in that opinion to note that it provided a 2005 opinion letter describing Bancroft's Premium Lite program, and none of the findings implicate GT or imply that GT engaged in any misconduct. Furthermore, even if another court had previously found that GT engaged in a RICO scheme with Bancroft to defraud the U.S. government, such a finding would have no bearing on this case because Ford was not the victim of the alleged scheme. *See Anza*, 547 U.S. at 458 (finding that RICO violations alleged by plaintiff were not viable because the cause of the asserted harm – the

defendants' lowering of prices – was entirely distinct from the alleged RICO violation of defrauding the State of tax revenues).

## IV. FORD'S FRAUD AND TORTIOUS INTERFERENCE CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Ford's fraud and tortious interference claims should also be dismissed for failure to state a claim. The fraud claim fails to allege "with particularity the circumstances constituting fraud or mistake" and thus fails to meet the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b); *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006). Rather, the fraud count merely recites the elements of the claim without specifically connecting the elements to the facts in this case. Plaintiff's Response does not even attempt to address this deficiency.

In order to state a claim for tortious interference with contracts or tortious interference with advantageous business relationships, the business relationship must be "evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). Ford's tortious interference claims should be dismissed because he has failed to identify a single contract or business relationship between him personally and any other person or company that was affected by GT's alleged conduct. Ford's allegations regarding *BLA's* relationships with its customers cannot serve as the basis for his tortious interference claims because Ford, who does not even claim to have an ownership interest in BLA, has no standing to pursue these claims on behalf of BLA. Ford's allegations concerning "contracts regarding the St. Thomas property" cannot serve as the basis for his tortious interference claims against GT because the Amended Complaint alleges that only the KPMG Defendants interfered with those contracts. (AC ¶ 225.)

## CONCLUSION

For all of the reasons stated above and the reasons stated in GT's Motion to Dismiss the Amended Complaint and Memorandum of Law in Support, the Amended Complaint should be dismissed with prejudice. *See* Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Dated: October 11, 2016

Respectfully submitted,

**BOIES, SCHILLER & FLEXNER LLP**

By: */s/ Stuart H. Singer*
STUART H. SINGER, ESQ.
(Florida Bar No. 377325)
SASHI C. BACH, ESQ.
(Florida Bar No. 398276)
SABRIA A. MCELROY, ESQ.
(Florida Bar No. 95657)
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
ssinger@bsfllp.com
sbach@bsfllp.com
smcelroy@bsfllp.com

*Attorneys for Defendants Greenberg Traurig, LLP, Greenberg Traurig, P.A., and Jerome Hesch*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2016, I electronically filed the foregoing Motion with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list via transmission of Notices of Electronic filing generated by CM/ECF.

*/s/ Stuart H. Singer*
Stuart H. Singer

## SERVICE LIST

Paul Platte, Esq.
PAUL PLATTE, P.A.
611 S. Fort Harrison Avenue, Suite 252
Clearwater, FL 33756-5301
Telephone: 727.474.1011
Email: paul@paulplatte.com

***Counsel for Plaintiff***

Edward A. Marod, Esq.
John W. Terwilleger, Esq.
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561.655.1980
Facsimile: 561.655.5677
Email: emarod@gunster.com
Email: jterwilleger@gunster.com
Email: dpeterson@gunster.com
Email: eservice@gunster.com

***Counsel for KPMG USA***

Jeffrey Bast, Esq.
Jeremy J. Hart, Esq.
Jeremy S. Korch, Esq.
BAST AMRON LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, FL 33131
Telephone: 305.379.7904
Facsimile: 305.379.7905
Email: jbast@bastamron.com
Email: jhart@bastamron.com
Email: jkorch@bastamron.com

***Counsel for Belmont Insurance Management Ltd. and Andrea Douglas***

Traci H. Rollins, Esq.
Jason D. Joffe, Esq.
Ricardo Marenco, Esq.
SQUIRE PATTON BOGGS LLP
777 S. Flagler Drive, Suite 1900W
West Palm Beach, FL 33401-6144
Direct: 561.650.7256
Telephone: 561.650.7200
Facsimile: 561.655.1509
Email: traci.rollins@squirepb.com
Email: jason.joffe@squirepb.com
Email: ricardo.marenco@squirepb.com
Email: linda.parsons@squirepb.com
Email: judith.sibulkin@squirepb.com

***Counsel for Casey McDonald and Kris Beighton***

David A. Freedman, Esq.
COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, Penthouse
Miami, FL 33133
Telephone: 561.858.2900, Ext. 205
Facsimile: 561.858.5261
Email: dfreedman@coffeyburlington.com
Email: mpalmero@coffeyburlington.com
Email: service@coffeyburlington.com

***Counsel for GFAN, ABG, Bancroft Property & Casualty, Ltd. aka Bancroft Life & Casualty ICC, Ltd., Bradley Barros, and Philip Sigel***