**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:16-cv-80618-WJZ**

LEO FORD and BOSTON LIFE AND ANNUITY,

Plaintiffs,

vs.

KPMG LLP; BELMONT INSURANCE MANAGEMENT; CASEY MCDONALD; KRIS BEIGHTON; ANDREA DOUGLAS; GREENBERG TRAURIG, P.A.;GREENBERG TRAURIG, LLP; JEROME HESCH; GFAN; ABG; BANCROFT PROPERTY & CASUALTY, LTD., (AKA BANCROFT LIFE & CASUALTY, LTD., AND BANCROFT LIFE & CASUALTY ICC, LTD.); BRADLEY BARROS; AND PHILIP SIGEL,

Defendants.
________________________________________/

**DEFENDANTS' BELMONT INSURANCE MANAGEMENT, LTD. AND ANDREA DOUGLAS RENEWED MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Belmont Insurance Management, Ltd. ("Belmont") and Andrea Douglas ("Douglas,") (collectively the "Defendants"), by and through their undersigned counsel and pursuant to Rules 12(b)(2) and (6), Federal Rules of Civil Procedure and that Order dated March 17, 2017 (D.E. 117) move for dismissal of Counts I and II of the First Amended Complaint (D.E. 43) (the "Complaint") filed by Plaintiff Leo Ford ("Ford" or "Plaintiff"), for failure to state a claim upon which relief can be granted and lack of personal jurisdiction; or in the alternative for a more definite statement and as grounds therefor state:

## INTRODUCTION

Plaintiff's Amended Complaint (the "Complaint") attempts to allege claims based on the Racketeer Influenced and Corrupt Organizations Act of 18 USC §1861 et seq. ("RICO"), against a large number of defendants alleging conduct, most of which took place between ten and fifteen years ago. The Complaint is seriously flawed and subject to dismissal on numerous grounds. No sufficient basis is alleged to subject Defendants to the jurisdiction of this Court, and the claims are clearly time-barred. The Plaintiff's allegations are vague, incoherent and conclusory and cannot pass the threshold test of plausibility. The Plaintiff lacks standing, fails to allege his claims with the specificity required by Rule 9(b), and certainly does not even get close to alleging a viable RICO claim. The Plaintiff lacks any entitlement to relief against Belmont and Douglas. The Complaint should be dismissed with prejudice.

## MOTION

1. The Plaintiff filed his original complaint (D.E. 1) on April 20, 2016. Belmont was served on July 11, 2016. Douglas was served on July 26, 2016. Service on both Defendants was made in the British Virgin Islands.

2. Plaintiff filed the First Amended Complaint (the "Complaint") on August 9, 2016. (D.E. 43).

3. The Complaint attempts to set forth causes of action for Civil RICO under 28 U.S.C. § 1962(c); and Civil RICO under 28 U.S.C. § 1962(d).[1] It fails to do so.

4. All of Plaintiff's causes of action are barred by the statute of limitation.

---

[1] The counts alleging state law claims for conversion; breach of fiduciary duty; fraud; breach of contract; tortious interference with contract; tortious interference with advantageous business relationships; Florida Civil RICO; and fraudulent transfer, were all dismissed by the Court on March 17, 2017 (D.E. 117).

5. As discussed more fully in the incorporated memorandum, Belmont and Douglas are not subject to the personal jurisdiction of the Court.

6. Finally, the Plaintiff lacks standing to seek damages for the claims alleged and the Complaint fails to state a cause of action for RICO.

WHEREFORE, Belmont and Douglas request the Court to enter an Order dismissing the Complaint with prejudice; or in the alternative granting final summary judgment in favor of Defendants; or requiring Plaintiff to make a more definite statement of his claims, together with such other and further relief as the Court deems appropriate.

## MEMORANDUM OF LAW

### I. STANDARD FOR A MOTION TO DISMISS

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the pleading standard necessary to survive a motion to dismiss. In *Iqbal*, the Supreme Court stated that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court should strip out "threadbare recitals of the elements of a cause of action supported by mere conclusory statements," which the Court is not bound to accept as true. *Iqbal* at 678. As the Eleventh Circuit stated in *S. Fla. Water Mgmt. Dist v. Montalvo*, 84 F.3d 402, 409, n. 10 (11th Cir. 1996), "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." Thereafter, the Court must determine whether the complaint states a plausible claim for relief. *Iqbal* at 678-79. "…[D]etermining whether a complaint states a plausible claim for relief [is]…a context-specific task that requires the reviewing court to draw on its judicial experience and *common sense.*" *Id.* at 679 (emphasis added). The factual allegations in a complaint

must possess enough heft to set forth a plausible entitlement to relief and contain enough either direct or inferential allegations respecting all material elements necessary to sustain a recovery under some viable legal theory. *Twombly,* 550 U.S. at 562. See also, *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Factual allegations must be sufficient to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Twombly*, 550 U.S. at 544. This strict standard is particularly applicable to this case. Many of Plaintiff's allegations are conclusory or patently implausible. For example, Plaintiff's allegation that he discovered that he had been damaged by reading a memorandum filed in a Western District of Pennsylvania case in April 2012, is simply not credible, and is at odds with other allegations which show the Plaintiff was on notice of potential claims many years before. Clearly this is alleged solely as an effort to avoid the fatal effect of the statute of limitation on his claims.

The scheme alleged is equally implausible. According to Plaintiff, he was an employee of Boston Life & Annuity ("Boston"), and developed various insurance products for the company. After that, Plaintiff's allegations descend into a seemingly disconnected series of stream of consciousness rants involving redacted and post-dated legal bills (Complaint at ¶¶ 28-33); vague allegations of diversions of insurance premiums which occurred fourteen years ago (Complaint at ¶ 47); and incomprehensible, paranoia tinged allegations of conspiracy and malfeasance between BLA's accounting and legal professionals. The only thing that is clear from this, is that the claims, if any, belonged to Boston, and Ford lacks the standing to maintain this action. This type of pleading does not meet the *Twombly* and *Iqbal* plausibility standard on its face and warrants dismissal.

Nor has Plaintiff alleged any wrongdoing (plausible or not) by Douglas and Belmont. The Complaint fails to set forth any specific illegal conduct by Belmont that would entitle Plaintiff to relief. Douglas and Belmont are connected to the case by Belmont's long ago role as Boston's BVI insurance manager which ended in 2006. Ford alleges that Belmont, Douglas and the other Defendants embarked on a fifteen year-long conspiracy, to drive Boston into liquidation, smear Ford and deprive him of his annuity. This Court has no duty to speculate about possible unpled facts that might turn a frivolous claim into something more substantial. *Twombly*, 550 U.S. at 562. Plaintiff's Complaint fails the "*TwIqbal Test"* as to Douglas and Belmont; since it is obvious that Plaintiff cannot set forth a cause of action against them. Consequently, the Complaint should be dismissed with prejudice. *LaCroix v. Western Dist. of Kentucky*, 627 Fed.Appx. 816, 819 n.1 (11th Cir. 2015).

## II. THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS.

### A. Plaintiff Fails to Allege a Basis for Personal Jurisdiction

Plaintiff has not alleged any basis for personal jurisdiction over Belmont and Douglas. 18 U.S.C. § 1965, permits a civil RICO action to be commenced in any district in the United States in which a defendant may be found and allows service of process in any district in which the defendant may be found. This statute has been interpreted as giving RICO claims a national scope, rendering it unnecessary to allege a basis for personal jurisdiction in the forum state. Instead, it has been held that it is sufficient to allege that the defendant has minimum contacts with the United States as a whole. *Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d. 935, 947 (11th Cir. 1997); *Clement v. Pehar*, 575 F. Supp. 436, 438 (N.D. Ga. 1983).

Here, Ford has failed to serve Douglas and Belmont within the United States and has failed to allege that they have any connection or contact, minimum or otherwise, with the United

States. Even if Ford had alleged a U.S. connection with regard to Belmont and Douglas, jurisdiction over Defendants entirely depends upon the Plaintiff properly alleging a viable RICO claim, which Ford has also failed to do. The Eleventh Circuit has held that a plaintiff may not rely on RICO's nationwide service of process provision if the plaintiff has failed to state a colorable claim. *In re Courboin v. Scott*, 596 Fed.Appx 729, 733 (11th Cir. 2014) (citing *Republic of Panama*, 119 F.3d at 942); *See also Klayman v. Deluca*, 2016 WL 1045851, at *9, Case No. 15-cv-80310-KAM (S.D. Fla. March 16, 2016). As discussed in detail below, the Plaintiff has entirely failed to state a colorable claim for RICO because Plaintiff has not properly alleged the predicate acts, the enterprise, or a pattern of racketeering activity. Plaintiff has also failed to allege mail and wire fraud with the requisite specificity. Because Plaintiff cannot allege a viable RICO claim, this Court does not have personal jurisdiction over Defendants.

## B. <u>Plaintiff Has Failed to Allege Sufficient Minimum Contacts</u>

Belmont and Douglas did not purposefully avail themselves of the laws and privilege of the State of Florida or any other State within the Union. Douglas is a resident of the British Virgin Islands, while Belmont is a British Virgin Islands corporation. Both Douglas and Belmont lack minimum contacts with this State and the United States as a whole.[2] Defendants do not reside in or have an office in Florida, they do not do business in Florida, and do not derive income directly from the State of Florida. The Complaint does not allege that Douglas or Belmont did anything at all in the State of Florida. Although the Complaint vaguely alleges that phone calls and faxes were placed to Florida, it does not specifically plead that Belmont or Douglas made these calls, or participated in them. In any event, the Eleventh Circuit has held that making telephonic and electronic communications into Florida, standing alone, does not constitute doing

2 The Affidavits of Douglas and Belmont were attached to their original Motion to Dismiss (D.E. 72-1 and 72-2) and are attached hereto for the Court's convenience.

business in Florida. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005). There are simply no allegations that would subject Defendants to personal jurisdiction in this District.

### C. Traditional Notions of Fair Play and Substantial Justice

Even if there were some contact between Belmont and Douglas and this District, it would be profoundly unfair to require Defendants who reside in the British Virgin Islands, to be dragged across the ocean, over 1,000 miles, to Florida, when the locus of the case appears to be the British Virgin Islands. If this case were to proceed in Florida, Defendants' counsel would likely be required to travel to the British Virgin Islands to conduct almost all discovery.

In addition, it is clear from the allegations and the various briefs filed in support of and in opposition to motions to dismiss the Complaint, that this case is meritless and has been brought in an attempt to coerce KPMG to pay Ford a portion of the sales price for a parcel of property in St Thomas, U.S. Virgin Islands. Ford's Memorandum in Opposition to Belmont and Douglas' original Motion to Dismiss (D.E. 84) essentially admits that his claims are meritless. The correspondence attached to Ford's Memorandum in Opposition show that Ford had been placed on notice, at the latest by 2010, that due to debts he owed to Boston, his annuity had been set off and rendered worthless. The claims against Defendants are baseless, and under these circumstances, fair play and substantial justice militate in favor of finding a lack of personal jurisdiction over them.

## III. THE COMPLAINT FAILS TO STATE A CLAIM

### A. The Complaint is an Impermissible Shotgun Pleading

In addition to being legally insufficient for the reasons set forth below, the allegations of the Complaint are so vague and ambiguous that the Defendants cannot reasonably be expected to

answer them. The Eleventh Circuit has repeatedly condemned pleadings that violate the mandates of Rules 8(a) and (d), and 10(b) and incorporate previous counts into successive counts. *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296-96 at n. 9, 10 (11th Cir. 2002); *Davis v. Coca-Cola Bottling Co. Consol*., 516 F.3d 955, 981-82 (11th Cir. 2008) *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Additionally, the Complaint lumps all the defendants' conduct together, such that it is impossible to identify which particular defendant engaged in what allegedly wrongful conduct. This also warrants dismissal.

When Ford's allegations are not simply recitations of legal conclusions, or "kitchen-sink" allegations of group harm, they are an indecipherable rambling in which players appear and vanish from one sentence to the next and half-finished allegations are left hanging. The Complaint refers to poorly described documentation filed in various courts from Pennsylvania to the British Virgin Islands, none of which is attached to the Complaint. Defendants cannot determine what the Complaint is trying to say, and therefore, cannot be expected to answer it. To the extent that the Court is unwilling to dismiss the Complaint outright, Defendants request that the Court order the Plaintiff to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

**B. The RICO Claims are Barred by the Statute of Limitation**

Plaintiff's allegations show that his causes of action are barred by the applicable statute of limitation. When the affirmative defense of statute of limitation is evident from the face of the Complaint, the court may dismiss it. *Miller v. Woodham*, No. 05-12425, 2006 WL 9557498 at *1 (11th Cir. Apr. 12, 2006). While the RICO statute contains no statute of limitation, the Supreme Court has held that the limitation period for RICO claims is four years. *Agency Holding Corp. v. Malley Duff & Assoc., Inc.,* 483 U.S. 143, 107 S.Ct. 2759 (1987). A RICO claim accrues from

the date that the Plaintiff discovered or should have discovered his injury, regardless of when the injury is discovered to be part of a pattern of racketeering. *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013). Thus, a plaintiff cannot use an independent, later predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period. *Id.* at 1331. When an injury is a continuation of an initial injury, it is not new and independent, and relates back to when the original injury occurred. *Id.*

Ford admits through the allegations of the Complaint that he knew or should have known that he was injured, at the earliest as of 2002, when according to his Complaint $2.7 million dollars was allegedly diverted from Boston Life and Annuity ("Boston"). Complaint at ¶¶ 2, 15, 47, 48, 102. Therefore, none of the injuries that Ford complains of are "new and independent," rather; according to Ford's allegations they are a continuation of the initial injury which took place in 2002.

Ford claims that the running of the statute did not begin until he discovered his injuries. Ford alleges on April 21, 2012, a date he apparently remembers with crystal clear precision, he "read a Memorandum in Civil Action No. 10, United States District Court," and realizing that he had been damaged by the Defendants, subsequently started to investigate the "conspiracy." Complaint at ¶ 4.[3]

As noted above, it is within the Court's power to dismiss a complaint when an allegation upon which it is founded, is totally implausible. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *Wagenknecht v. U.S.*, 533 F.3d 412, 417 (6th Cir. 2008). Plaintiff invites the Court to

[3] Because Plaintiff is represented by counsel, he should be able to accurately direct the parties and the Court to *Bancroft Life & Casualty ICC, LTD v. Intercontinental Management, Ltd.*, Case No. 10-cv-704-AJS, filed in the Western District of Pennsylvania, which is most assuredly **not** simply called "Civil Action No. 10." The Court may also take notice of this docket and this filing. Fed. R. Evid. 201(c) and (d); *McDowell Bey*, 588 Fed.Appx. 923, 926-27 (11th Cir. 2014).

believe that he was casually thumbing through filings in the Western District of Pennsylvania, when he ran into a memorandum [Case No. 10-cv-7-4-AJS, D.E. 289], causing him to realize that he had sustained damage in 2002. Complaint at ¶ 4, 13, 16-18. Plaintiff's allegations suggest he spent the next three years and 364 days investigating and marshalling "evidence" before launching his Complaint exactly one day before the RICO four year statute of limitations allegedly ran. This is highly implausible, especially in light of various admissions in Ford's pleadings and in the affidavit filed by Ford in opposition to Belmont and Douglas' original Motion to Dismiss (D.E. 84-1).

Ford's attempt to toll the statute of limitations is not only implausible but futile. A RICO plaintiff alleging tolling as a result of fraudulent concealment must act diligently to investigate and uncover that activity. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 196-96 (1997). "A financial fraud victim is not allowed to wait for time, the mother of truth, to make manifest a prohibited pattern…" *Pacific Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246, 1251 (11th Cir. 2001); ("A RICO plaintiff is expected to promptly get the legal advice necessary to discern the wrong, if wrong there be.") *Pacific Harbor*, 252 F.3d at 1252. Ford's allegations demonstrate that he did not exercise diligence in uncovering his injuries and therefore, is not entitled to equitable tolling of his claims. Equitable tolling is the exception, not the rule, and does not protect the non-diligent RICO plaintiff. *Pacific Harbor* at 1251-52 *quoting Rotella v. Wood*, 528 U.S. 549, 561 and 556-57 (2000).

Additionally, Ford alleges a "smear and intentional disinformation campaign was launched against BLA/Ford" in 2002 [Complaint at ¶¶ 100-101]. Even if Ford had not discovered the damage done by this "smear campaign" in or around 2002, he surely was aware of it by 2006, when he references a lawsuit that was filed against him related to the "smear campaign."

Complaint at ¶ 108.[4] Ford actually filed counterclaims in this lawsuit making it obvious that he must have known that he had sustained damage by 2006.

The allegations in paragraph 48 of the Complaint also show that Ford must have known about his alleged injury by 2006. Paragraph 48 of the Complaint alleges Ford was "robbed of $675,000 year one as his contract with BLA called for payment of 25% of casualty product premium…Total loss was $3,915,000 based on the product revenue stream if the clients had entered BLA's program as it was a five year pay in product." Ford allegedly sustained injuries of $675,000 as of December 6, 2002, and had allegedly sustained losses of $3,915,000 by December 6, 2006. Additionally, to the extent Boston's liquidation caused damage to Ford, he must have been aware of that damage by or shortly after February 27, 2008, the date Ford alleges the liquidation commenced (Complaint¶54). All of these injuries originated in 2002, and at the latest occurred in 2008.

In addition, Ford filed an affidavit in support of his response to Belmont and Douglas' original Motion to Dismiss (D.E. 84-1) which had various documents attached. Among these was a letter dated July 22, 2010 from Casey McDonald, one of the Boston liquidators, in which he informs Ford that his annuity had been set off against debts owed to Boston and therefore, was worth negative $439,624.23. Clearly this admission shows that at the very latest, Ford was on notice of the claims alleged in the Complaint as of 2010, some six years before the Complaint was filed. The very latest time for Ford to have brought a RICO claim under these facts would have been 2014. This action was filed in mid-2016.

[4] This suit, filed in the Circuit Court for Miami-Dade County, Florida on May 25, 2006, is styled *Amber Cape Productions, LLC v. Boston Life & Annuity Co., Ltd*, Case No. 2006-10240-CA-01, and the docket reflects that a summons was issued to Leo Ford on May 25, 2006. On December 20, 2007, Leo Ford dismissed counterclaims that he had asserted in that lawsuit. The Court may take judicial notice of this docket when ruling on a motion to dismiss. Fed. R. Evid. 201(c) and (d); *McDowell Bey v. Vega*, 588 Fed.Appx. at 926-27.

**C. Ford Lacks Standing**

Ford alleges that there was a wide-ranging conspiracy among all of the Defendants, which resulted in Boston being driven out of business and into the arms of the KPMG liquidators, causing damages. In fact Ford alleges that Boston has incurred a whopping $179,837,000.00 in damages as a result. The problem with this is that Ford is not Boston and cannot claim entitlement to damages allegedly suffered by Boston as a result of the Defendants' conduct. Ford's damages, if any are derivative and he cannot use RICO to recover damages actually suffered by Boston. *Mid-State Fertilizer Co. v. Exchange Nat. Bank,* 877 F.2d. 1333 (7th Cir. 1989).

Moreover, Boston was placed in liquidation in December 2007 by the British Virgin Islands High Court which appointed Casey McDonald and Kris Beighton as liquidators. To the extent that Ford has suffered any personal damage, such as the alleged loss of his annuity, this has to be addressed through the British Virgin Islands Court that appointed the liquidators, not this Court. *Best Medical Belgium, Inc., v. The Kingdom of Belgium,* 913 F.Supp. 2d. 230, 241 (E.D. Va. 2012); *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 424 (1964).[5]

**D. Plaintiff Fails to State a Claim Under 18 USC § 1962(c)**

Even if Plaintiff's extraordinary allegations were remotely plausible, he has failed to state a claim for relief. In Counts I and II, Ford attempts to allege a claim for violation of RICO, 18 U.S.C. §§1962(c) and (d). However, Plaintiff has utterly failed to allege the essential elements of a RICO claim which are: (1) conduct (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Williams v. Mohawk Industries, Inc.,* 465 F.3d 1277, 1282 (11th Cir. 2006); *Special Purpose Accounts. Receivable . Co-op. Corp. v Prime One Capital Co., LLC,* 202 F.

[5] Belmont and Douglas join in the original motions to dismiss filed by Defendants McDonald (D.E. 69) and Beighton (D.E. 91) which argue that Ford's claims relating to the liquidation of Boston are barred by the Foreign Sovereign Immunity Act.

Supp. 2d 1339, 1346 (S.D. Fla. 2002); *Virdris Corp., v. TCA Global Credit Master Fund, LP*, 2015 WL 9688202, 15-cv*61706-UU *5 (S.D. Fla. Dec. 17, 2015).

Under § 1962(c), "It shall be unlawful for any person employed by or associated with any **enterprise**…to **conduct or participate**… **in the conduct** of such enterprise's affairs through a pattern of **racketeering activity**…" (emphasis added). Section 1962(d) makes it unlawful to conspire to violate (a), (b) or (c). Plaintiff impermissibly attempts to cram all of the RICO claims into a single shotgun blast without properly alleging how Defendants specifically "conducted or "participated in the affairs" of an "enterprise" through a "pattern of racketeering activity". The Complaint also fails to properly allege a conspiracy to commit the prohibited acts.

First, Plaintiff fails to properly allege racketeering activity. Racketeering activity includes a broad array of crimes which are defined at 18 U.S.C. § 1961(1). Plaintiff's RICO claims are based on the predicate acts of mail and wire fraud, so his substantive RICO allegations must comply with: i) Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief"; ii) *Twombly* and *Iqbal* which require him to avoid implausible and conclusory allegations; and iii) Rule 9(b)'s heightened pleading standard, which requires that in pleading fraud, Plaintiff must state the circumstances with particularity. *Ambrosia Coal & Construction Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007); *Viridis*, 2015 WL 9688202 at *11. As the Eleventh Circuit stated in *American Dental Assoc. v. Cigna Corp*, 605 F.3d. 1283, 1291, to plead mail and wire fraud, Plaintiff must allege:

> (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud…The plaintiff must allege facts with respect to each defendant's participation in the fraud.

A RICO plaintiff must also allege that the defendants acted with scienter. *Bill Buck Chevrolet, Inc. v. GTE, Florida, Inc.*, 54 F. Supp. 2d 1127, 1133 (M.D. Fla. 1999). In other words, it must be alleged that defendants had the specific intent to defraud the plaintiff and the circumstances of the fraud must be alleged with particularity. Such allegations cannot be conclusory and must be supported by factual allegations. *Republic of Panama, 119 F.3d at 949* (quoting *O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989)).

Ford has not pointed to a single statement or misrepresentation made by Douglas or Belmont, the content or manner in which Belmont or Douglas made any statement, or what Douglas or Belmont specifically gained from the alleged fraud. There are no allegations of how Belmont or Douglas agreed or otherwise conspired to engage in an illegal scheme to defraud Ford. To be sure, it appears that any time Plaintiff disagrees with a conclusion, or is displeased with something in an email someone sent at some time, Plaintiff labels that "fraud." Ford also tries to evade the need for particularity by lumping Belmont and Douglas in with his ill-defined KPMG Defendants. But Ford fails to define exactly what Belmont and Douglas did as part of this diverse group. Nothing within Plaintiff's allegations sets forth the "who, what, when, where and why" of any alleged wire or mail fraud or conspiracy allegedly committed by Douglas or Belmont.

Ford also fails to properly allege the existence of an "enterprise" or to properly define this vital element. The RICO enterprise must be alleged to be separate from the "persons" conducting its activities through a pattern of racketeering activity. *Cedric Kushner Promotions Ltd., v. King*, 533 U.S. 158, 161 (2001)*, Kelly v. Palmer, Reifler & Assoc., P.A.* 161 F. Supp. 2d 1356, 1378 (S.D. Fla. 2010). Because Plaintiff has failed to specifically allege each of the Defendants' participation in or conduct of the enterprise, lumping all Defendants together, it is impossible to

determine what the enterprise is, whether any of the Defendants to this action are a part of it, or separate from the enterprise, whether they are persons who have conducted the activity of the enterprise, or whether they did so by engaging in racketeering activity. In fact, Ford actually alleges that the "enterprise" is the same as the Defendants stating: "the names of the individuals, partnerships, corporations and other legal entities that constitute the RICO enterprise are set forth above." Complaint ¶135. The names set forth somewhere above, must be the names of the Defendants. Ford also alleges that the Defendants and their agents and employees are an association in fact "enterprise" but does not define who these persons are or how they can be distinguished from the Defendants. Complaint ¶¶139, 140, 148, 153.[6]

Plaintiff has also failed to properly and specifically allege the existence of a **pattern** of racketeering activity, instead alleging disjointed legal conclusions masquerading as a pattern of racketeering activity. Plaintiff's allegations of mail and wire fraud are hyper-conclusory and have no factual content. It is not enough to allege that there were "multiple" criminal acts, the plaintiff must "show that the racketeering predicates are related *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239-43, 109 S. Ct. 2393, 106 L.Ed. 195 (1989); *Prime One Capital Co.*, 202 F. Supp. 1347. Plaintiff does not even attempt to allege this and accordingly, has failed to allege a RICO claim, thus rendering the Complaint subject to dismissal for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

**E. <u>Plaintiff Fails to State a Claim for RICO Conspiracy Under 28 U.S.C. 1962(d)</u>**

Count II fails to state a claim for RICO conspiracy pursuant to 18 U.S.C. § 1962(d). As Plaintiff's Count I fails to set forth a RICO violation against Defendants, and Count II

[6] Although Ford asserts at paragraph 146 that the "Defendants are not the enterprise itself"", he fails to allege a distinction between the enterprise and the Defendants, and as stated above seems to allege that they are in fact, one and the same.

incorporates Count I within it, Count II necessarily fails to set forth a claim for conspiracy to commit RICO violations.

**CONCLUSION**

The Complaint should be dismissed with prejudice as to Douglas and Belmont because this Court lacks personal jurisdiction over the Defendants; the allegations of the Complaint show that Ford's claims are barred by the statute of limitation; Ford lacks standing to assert the claims alleged; and the Complaint is implausible and fails to set forth any cause of action against Defendants. In the alternative, the Court should grant summary judgment in Defendants' favor. If the Court does not dismiss the case or enter summary judgment, it should compel Plaintiff to file a more definite statement.

Dated: March 31, 2017

Respectfully submitted,

BAST AMRON LLP
*Counsel for Defendants*
*Belmont Insurance Management Ltd*
*and Andrea Douglas*
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, Florida 33131
Telephone: 305.379.7904
Facsimile: 305.379.7905
Email: jbast@bastamron.com
Email: jhart@bastamron.com
Email: jkorch@bastamron.com

By: /s/ *Jeremy J. Hart, Esq.*
Jeffrey Bast, Esq. (FBN 996343)
Jeremy J. Hart, Esq. (FBN 510645)
Jeremy S. Korch, Esq. (FBN 14471)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of March, 2017, a true and correct copy of the foregoing has been filed with the Court and served on the parties below via CM/ECF.

- David Allan Freedman dfreedman@coffeyburlington.com, mpalmero@coffeyburlington.com, service@coffeyburlington.com
- Edward Alan Marod emarod@gunster.com, dpeterson@gunster.com, pdavid@gunster.com
- Jeremy James Hart jhart@bastamron.com, mdesvergunat@bastamron.com, njones@bastamron.com
- Jeremy Simons Korch jkorch@bastamron.com
- Paul Martin Platte paul@paulplatte.com, carol@cityattorneys.legal, info@paulplatte.com
- Sashi C. Bach sbach@bsfllp.com, jmalave@bsfllp.com, mcalvin@bsfllp.com, smcelroy@BSFLLP.com
- Stuart Harold Singer ssinger@bsfllp.com, aandderson@bsfllp.com, mcalvin@bsfllp.com, sperkins@bsfllp.com
- Traci Hope Rollins traci.rollins@squirepb.com, carol.lesnick@squirepb.com, linda.parsons@squirepb.com, wpb_dckt@squirepb.com

/s/ *Jeremy J. Hart, Esq.*
Jeremy J. Hart, Esq. (FBN 510645)