**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:16-cv-80618-WJZ**

Leo Ford,

Plaintiff,

v.

KPMG LLP; KPMG BVI Limited; KPMG Cayman; James Drury; Russell Crumpler; Belmont Insurance Management; Casey McDonald; Kris Beighton; Andrea Douglas; Greenberg Traurig, P.A.; Greenberg Traurig, LLP; Jerome Hesch; GFAN; ABG; Bancroft Property & Casualty, Ltd. (a/k/a Bancroft Life & Casualty, Ltd., and Bancroft Life & Casualty ICC, Ltd.); Bradley Barros, and Philip Sigel,

Defendants.
_______________________________________ /

**DEFENDANT KPMG LLP'S RENEWED AND AMENDED MOTION TO DISMISS FIRST AMENDED COMPLAINT [DE 43] AND MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**COVER PAGE** ..... i

**TABLE OF CONTENTS** ..... ii

**TABLE OF AUTHORITIES** ..... iii
  **Cases** ..... iii
  **Other Authorities** ..... v

**MOTION** ..... 1

**INTRODUCTION** ..... 1

**MEMORANDUM OF LAW** ..... 3

**I. STANDARDS GOVERNING A MOTION TO DISMISS** ..... 3

**II. IT IS PATENT ON THE FACE OF THE AMENDED COMPLAINT THAT THE RICO CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.** ..... 5

**III. FORD'S PLEADINGS ARE WOEFULLY INSUFFICIENT TO STATE A CIVIL RICO CLAIM AGAINST KPMG USA UNDER THE APPLICABLE STANDARDS** ..... 6

**IV. FORD FAILS SUFFICIENTLY TO ALLEGE RICO CLAIMS AGAINST KPMG USA** ..... 10

  A. Ford Fails to Allege the Predicate Acts of Mail and Wire Fraud With Specificity. ..... 11
  B. Ford Fails to Allege KPMG USA Participated in a RICO Conspiracy. ..... 12
  C. Ford Fails to Allege That KPMG USA Participated in a RICO Enterprise. ..... 13
  D. Ford Fails to Allege Continued Criminal Activity or the Threat of Continued Criminal Activity ..... 13

**V. THE AMENDED COMPLAINT IS A "SHOTGUN" PLEADING IN VIOLATION OF FEDERAL RULES OF CIVIL PROCEDURE 8(A) AND 10(B)** ..... 14

**CONCLUSION** ..... 16

**CERTIFICATE OF SERVICE** ..... 17

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.*,
483 U.S. 143 (U.S. 1987)....................5

*AIG Centennial Ins. Co. v. O'Neill*,
782 F.3d 1296 (11th Cir. 2015)....................8

*Ambrosia Coal & Const. Co. v. Pages Morales*,
482 F.3d 1309 (11th Cir. 2007)....................4, 6, 7, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3, 12

*Baiul v. William Morris Agency, Inc*,
2014 WL 1804526 (S.D.N.Y., Opinion filed May 6, 2014)....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................3

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
758 F. Supp. 2d 153 (E.D.N.Y. 2010)....................4

*Dep't of Econ. Dev. v. Arthur Anderson & Co. (U.S.A.)*,
924 F. Supp. 449 (S.D.N.Y 1996)....................13

*Dowbenko v. Google, Inc.*,
582 F. App'x 801 (11th Cir. 2014)....................3

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
48 F.3d 1260 (D.C. Cir. 1995)....................14

*Figueroa Ruiz v. Alegria*,
896 F.2d 645 (1st Cir. 1990)....................4

*Genesis NYC Enterprises, Inc. v. JAI Group, SA*,
2016 WL 1588397 (S.D. Fla. April 20, 2016)....................15

*Gonsalvez v. Celebrity Cruises Inc.*,
750 F.3d 1195 (11th Cir. 2013)....................4

*Hecht v. Commerce Clearing House, Inc.*,
897 F.2d 21 (2d Cir. 1990)....................12

**Cases** **Page(s)**

*Jackson v. BellSouth Telecomms.*,
372 F.3d 1250 (11th Cir. 2004) ....................................................................................14

*Kelly v. Palmer, Reifler & Assoc., P.A.*,
681 F. Supp. 2d 1356 (S.D. Fla. 2010) ........................................................................13

*Maiz v. Virani*,
253 F.3d 641 (11th Cir. 2001) ........................................................................................5

*Menasco, Inc. v. Wasserman*,
886 F.2d 681 (4th Cir. 1989) ........................................................................................14

*Miccosukee Tribe of Indians of Fla. v. Cypress*,
814 F.3d 1202 (11th Cir. 2015) ....................................................................................12

*Murphy v. Campbell*,
964 S.W.2d 265 (Tex. 1997)..........................................................................................14

*Petri v. Gatlin*,
997 F. Supp. 956 (N.D. Ill. 1997) ................................................................................13

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)........................................................................................................13

*Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V.*,
2005 WL 1365772 (D.N.J. June 8, 2005) ..................................................................7, 12

*Rolle v. Houston*,
2014 WL 1329568 (N.D. Ala. March 28, 2014)................................................................4

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
380 F. Supp. 2d 509 (D.N.J. 2005) ..............................................................................7, 8

*Skidmore Energy, Inc. v. KPMG LLP*,
2004 WL 3019097 (N.D. Tex. Dec. 28, 2004) ................................................................7

*Solomon v. Blue Cross & Blue Shield Ass'n*,
574 F. Supp. 2d 1288 (S.D. Fla. 2008) ........................................................................11

*Staehr v. Hartford Financial Services Group, Inc.*,
547 F.3d 406 (2d Cir. 2008)..............................................................................................4

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*,
305 F.3d 1293 (11th Cir. 2002) ................................................................................15, 16

**Cases** **Page(s)**

*White v. Greenpoint Mortgage Funding Inc.*, 14-80452-CIV, 2014 WL 11370418 (S.D. Fla. 2014) *aff'd sub nom. White v. Bank of Am. Nat. Ass'n*, 599 Fed. Appx. 379 (11th Cir. 2015) ....5

**Other Authorities** **Pages**

18 U.S.C. § 1961 *et seq* (Racketeer Influenced Corrupt Organization Act or "RICO") .... *passim*

18 U.S.C. § 1962 ....13

Federal Rule of Civil Procedure 8(a) ....1

Federal Rule of Civil Procedure 8(a)(2) ....15, 16

Federal Rule of Civil Procedure 9(b) ....1, 3, 12

Federal Rule of Civil Procedure 10(b) ....1, 10, 15, 16

Federal Rule of Civil Procedure 12(b)(6) ....1, 3, 5

Federal Rule of Evidence 201 ....8

## MOTION

Defendant, KPMG LLP ("KPMG USA"), in accordance with this Court's sua sponte order of March 17, 2017 [DE 117] dismissing the pendent state law claims in this case, renews and amends its motion [DE 75], for the entry of an order pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 10(b),and 12(b)(6) dismissing with prejudice the claims against KPMG USA asserting claims under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*, in Plaintiff's First Amended Complaint [DE 43] (hereinafter the "Amended Complaint" or "Am. Comp."), and says:

## INTRODUCTION

The attempt by Plaintiff Leo Ford (hereinafter "Ford") to bring himself into federal court by stating a civil RICO claim against KPMG USA is frivolous on a number of grounds. In the first place, it is plainly time-barred. Accepting as true his allegation that he was a Principal of Boston Life & Annuity (hereinafter "BLA"), Am. Comp. ¶2, and the alleged "criminal enterprise" resulted in Ford and BLA losing business and being put in liquidation, *id*. ¶52, Ford's injury, if any, necessarily occurred in December 2007, when BLA was voluntarily put into liquidation. Am. Comp. ¶¶54, 60, 65. His losses allegedly included the loss of $3,375,000 representing 25% of the premiums on a particular insurance policy allegedly diverted from BLA, the loss of his $750,000 initial investment in BLA, the loss of the $115,600,000 value of BLA which he claims he calculates based on a multiple of its stated reserves at the time of the liquidation, the loss of $6,500,000 in payments due to him under a contract with BLA and more. *Id*. Chart following ¶122. Had he been paying attention at all, he would have known he had suffered an injury the moment the liquidation began. Yet, Ford waited until April 20, 2016, to file the RICO claims in this case. Complaint [DE 1]. Because he waited too long, it is apparent

on the face of the Amended Complaint that both of his purported RICO claims are barred by the applicable statute of limitations.

Even if his attempt to bring himself into federal court is not time barred, these claims are frivolous on the merits. It is a matter for judicial notice that KPMG USA is a separate entity from KPMG Cayman, KPMG BVI and all of the other KPMG entities practicing in other countries around the world. https://home.kpmg.com/xx/en/home/misc/legal.html. Ford's various contentions have little to do with the United States, and nothing to do with KPMG USA. The only actions Ford alleges that are unambiguously attributed to KPMG USA are the performance at its Dallas office of professional services in the form of actuarial work for BLA[1], Am. Comp. ¶ 38, making a recommendation that KPMG BVI be used to form BLA in the British Virgin Islands, *id.*, ¶¶ 39, 42, later recommending in 2003 that Ford turn over administration of BLA to KPMG BVI and Belmont Insurance Management, Ltd., *id.*, having numerous meetings, phone calls, e-mails and faxes with him at its Miami offices, and sending a bill for $25,000 to Ford's South Florida office that Ford and BLA paid. *Id.* ¶38. None of those activities in and of itself could form the basis of RICO liability.

The sole allegation of falsehood by KPMG USA is "The invoices [for the actuarial services] were false because KPMG used the work to assist the Barros Defendants, not just the [sic] Ford and BLA." *Id*. It is implausible to premise a civil RICO claim in federal court on an invoice for services rendered. It is beyond implausible, and, indeed, absurd, to think that a bill for actuarial services would contain a statement to the effect that the services billed for were done exclusively for the client, and that the firm would not do similar work for anyone else. It is

[1] BLA was dropped as a plaintiff in the Amended Complaint. Ford says nothing in the Amended Complaint to explain how any work done for BLA could constitute a claim he has standing to pursue.

equally absurd to contend that anyone would believe that an accounting firm with offices throughout the United States and multiple clients in almost every field in almost every office would ever make an agreement not to provide similar services to its other clients. Thus, the allegations against KPMG USA do not meet the high standards applicable to a RICO claim based on fraudulent conduct, or even the general pleading standards.

Because these claims are barred by the applicable RICO statute of limitations and fail to meet the controlling pleading standards after multiple attempts, the Amended Complaint should be dismissed with prejudice.

## **MEMORANDUM OF LAW**

### **I. STANDARDS GOVERNING A MOTION TO DISMISS**

The standards applicable to a motion to dismiss a typical complaint are well-known. "[T]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." *Id.* at 678-79. Plaintiffs must also plead more than "a sheer possibility that a defendant has acted unlawfully." *See id.* at 678. When "however true," the allegations in a complaint "could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

Where, as here, fraudulent conduct is asserted, the allegations must satisfy the plausibility standard in light of the particularity requirements of Federal Rule of Civil Procedure 9(b). *Dowbenko v. Google, Inc.*, 582 F. App'x 801, 805-06 (11th Cir. 2014). Plaintiffs must allege:

(1) the *precise* statements, documents, or misrepresentations made; (2) the *time*, *place*, and *person* responsible for the statement; (3) the *content* and *manner in which these statements misled*; and (4) *what the defendant gained* by the alleged fraud. *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007). And "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* at 1317.

The pleading standards are even more strictly enforced where, as in this case, the claim sought to be alleged is a RICO claim based on fraudulent conduct. Courts are particularly mindful of these standards in the context of a civil RICO claim because "the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants." *Rolle v. Houston*, 2014 WL 1329568, at *7 (N.D. Ala. March 28, 2014). *See Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 167 (E.D.N.Y. 2010) ("A civil RICO lawsuit has vast implications for the defendants because of the specter of treble damages and the possibility of permanent reputational injury to defendants from the allegation that they are racketeers."). Given the powerful effect on potentially innocent defendants who face the threat of treble damages, and the potential for abuse of RICO's potent provisions, it is particularly imperative "to flush out frivolous [civil] RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).

Finally, where, as here, the affirmative defense appears on the face of a RICO complaint, the complaint can be dismissed on a Rule 12 motion. *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013); *Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008).

As explained, *infra*, since Ford has repeatedly failed to meet the minimum standards to plead federal civil RICO claims against KPMG USA, and since the statute of limitations defense

appears on the face of the Amended Complaint, all of his RICO claims should be dismissed with prejudice.

## II. IT IS PATENT ON THE FACE OF THE AMENDED COMPLAINT THAT THE RICO CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

A civil RICO claim has a four-year statute of limitations running from the date the plaintiff first knew or should have known of his injury. *Agency Holding Corp. v. Malley-Duff & Associates, Inc*., 483 U.S. 143 (U.S. 1987). It does not matter when Ford realized that his injury might have been caused by a RICO conspiracy, because a civil RICO claim accrues and the four-year limitations period begins to run "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." *Maiz v. Virani,* 253 F.3d 641, 676 (11th Cir. 2001) (citing *Rotella v. Wood,* 528 U.S. 549, 555, 120 S. Ct. 1075, 1080, 145 L.Ed.2d 1047 (2000)). *See also, White v. Greenpoint Mortgage Funding Inc.*, 14-80452-CIV, 2014 WL 11370418, at *2 (S.D. Fla. 2014) (RICO complaint dismissed on 12(b)(6) motion based on statute of limitations grounds where complaint alleged injury occurring more than four years before complaint filed), *aff'd sub nom. White v. Bank of Am. Nat. Ass'n*, 599 Fed. Appx. 379 (11th Cir. 2015).

Ford alleges "[a]s a result of this continued criminal enterprise, BLA was unable to attract new clients and was placed in voluntary receivership." Am. Comp. ¶ 42. Ford was a "Principal," Am. Comp. ¶2, and investor in BLA, *id*., Chart following ¶122, and Ford seeks to recover substantial damages in this case for his purported loss of his investment in BLA and other injuries caused by that liquidation. *Id*. As noted above, the liquidation began in December 2007. The allegations in the Amended Complaint clearly show that the placing of BLA in liquidation injured Ford and the fact of the injury would have been obvious to him immediately.

Moreover, in view of the cataclysmic amount of damages he allegedly suffered, *id*., Chart following ¶122, any reasonable person would have immediately begun investigating the causes of it. *Cf., Baiul v. William Morris Agency, Inc*, 2014 WL 1804526 (S.D.N.Y., Opinion filed May 6, 2014) (where entertainer alleged over $57 million was stolen from her between 1997 and 2000, but suit was not filed until 2013, claims were barred by statute of limitations and entertainer's failure to exercise due diligence in light of the amounts involved).

Four years after December 2007 is December 2011. This suit was not filed until April 20, 2016. Since Ford knew or should have known of his injury more than four years next before this action was filed his RICO claims are barred. Therefore, the claims against KPMG USA should be dismissed with prejudice.

## III. FORD'S PLEADINGS ARE WOEFULLY INSUFFICIENT TO STATE A CIVIL RICO CLAIM AGAINST KPMG USA UNDER THE APPLICABLE STANDARDS

Ford fails to state a claim against KPMG USA because he fails to say what, if anything, KPMG USA is supposed to have done that was wrongful, much less enough to satisfy each element of a RICO claim. Rather, to the extent the allegations can be understood at all, it appears that his grievances are with KPMG Cayman, KMPG BVI or their personnel. By pleading in this way, Ford repeatedly and continuously violates that RICO/fraudulent conduct pleading rule that every allegation of fraudulent conduct must allege: (1) the *precise* statements, documents, or misrepresentations made; (2) the *time*, *place*, and *person* responsible for the statement; (3) the *content* and *manner in which these statements misled*; and (4) *what the defendant gained* by the alleged fraud. *Ambrosia Coal & Const. Co. v. Pages Morales*, *supra*, 1316-17 (11th Cir. 2007). He also repeatedly violates the rule that in a fraud-based RICO complaint "the complaint should inform each defendant of the nature of his alleged participation

in the fraud." *Id.* at 1317. It is impossible to glean that fundamental information from the allegations of the Amended Complaint here.

Ford's blind conflation of all KPMG entities into a single monolith pervades most of the allegations of the Amended Complaint. For instance, after first specifically alleging that KPMG Cayman was the Joint Liquidator of BLA, Am. Comp., ¶ 54, and that KPMG BVI was the insurance manager and auditor for BLA, *Id.* at ¶ 42, he then broadly and confusingly refers to "KPMG" with no modifier in 44 paragraphs. *See* Am. Comp., ¶¶ 3, 5, 7, 23, 34, 38, 39, 42, 43, 44, 47, 54, 56, 57, 60, 61, 62, 63, 64, 66, 83, 93, 98, 99, 100, 109, 110, 111, 112, 118, 122 (including "Damages" chart), 123 125, 126, 127, 128, 129, 130, 161, 163, 170, 171, 229, 236. Additionally, in 26 paragraphs, Ford confusingly and deceptively refers to "KPMG Defendants," who he defines at Am. Comp. ¶7 as KPMG USA, KPMG Cayman, KPMG BVI, Casey McDonald, Kris Beighton, Russell Crumpler, James Drury *and* Andrea Douglas. *See id.*, at ¶¶ 2, 3, 5, 17, 46, 49, 50, 56, 57, 58, 59, 63, 64, 66, 117, 119, 122, 129, 141, 161, 163, 170, 225, 229, 234, 239. This kind of confusing, imprecise allegation does not meet the requirements of pleading RICO, much less RICO based on fraud, and is, transparently, an improper attempt to implicate KPMG USA in conduct Ford knows it did not do. Like many other courts who have addressed similar issues, this Court should reject Ford's attempt to attribute conduct to KPMG USA based on allegations that relate to other member firms. *In re Royal Dutch/Shell Transp. Sec. Litig.*, *supra*, (relying on statements on www.kpmg.com in rejecting argument that all KPMG entities were part of a single firm); *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V.*, 2005 WL 1365772, at *7 (D.N.J. June 8, 2005) (rejecting a "one firm" theory that the KPMG entities were part of a single, worldwide firm of accountants because "the international KPMG organization is an association of distinct offices/companies."); *Skidmore Energy, Inc. v.*

*KPMG LLP*, 2004 WL 3019097, at *4-5 (N.D. Tex. Dec. 28, 2004) (dismissing RICO claims against KPMG LLP when acts were alleged to have been committed by a KPMG entity in Morocco).

Ford even alleges that KPMG BVI is a "subsidiary" of KPMG USA. Am. Comp. ¶ 39. This allegation is blatantly false and Ford and his attorney must be charged with knowing it. While it is not apparent on the face of the Amended Complaint, the Court can consider the fact that it is common knowledge that an allegation is factually incorrect. Even on a motion to dismiss, this Court can take judicial notice, pursuant to Federal Rule of Evidence 201, of publicly available information to recognize that an allegation like this is untrue. *See, e.g. In re Royal Dutch/Shell Transp. Sec. Litig.*, *supra*

Even if the Court felt compelled to accept the allegation that KPMG BVI is or was a subsidiary of KPMG USA, which it is not, and even if KPMG BVI did something wrong, which it did not, the misconduct of a company cannot be attributed to its shareholders simply because they are shareholders. *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296 (11th Cir. 2015) (citing with approval *Lumax Indus., Inc., v. Aultman*, 543 Pa. 38, 669 A. 2d 893, 895 (1995) for the proposition that "the general rule is that a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person."). There is nothing in the Amended Complaint that would obviate the application of that basic principle.

The only actions Ford alleges that are unambiguously attributed to KPMG USA are:

- The performance at its Dallas office of professional services in the form of actuarial work for BLA[2], Am. Comp. ¶ 38;

[2] BLA was dropped as a plaintiff in the Amended Complaint. Ford says nothing in the Amended Complaint to explain how any work done for BLA could constitute a claim he has standing to pursue.

- Making a recommendation that KPMG BVI be used to form BLA in the British Virgin Islands, *id.*, ¶¶ 39, 42;
- Later recommending in 2003 that Ford turn over administration of BLA to KPMG BVI and Belmont Insurance Management, Ltd., *id.*;
- Having numerous meetings, phone calls, e-mails and faxes with Ford at its Miami offices, *id.* ¶38; and
- Sending a bill for $25,000 to Ford's South Florida office that BLA paid. *id.*

None of those activities in and of itself could form the basis of RICO liability. See discussion *infra* at IV.C.

The sole allegation of falsehood directly attributed to KPMG USA is "[t]he invoices were false because KPMG used the work to assist the Barros Defendants, not just the [sic] Ford and BLA." *Id.* Presumably this refers to the $25,000 in invoices for actuarial services that allegedly were sent to Ford and BLA in South Florida and were paid by BLA. Application of the plausibility standard to that allegation shows that the Amended Complaint against KPMG USA must be dismissed.

This allegation does not meet the requirements for pleading a fraud-based RICO claim. It does not identify the *precise* statement made. It merely says that invoices were sent in the amount of $25,000 and then adds assertion that these invoices were false "because KPMG used this work to assist the Barros Defendant," rather than just Ford and BLA. Stated otherwise, in Ford's view, KPMG USA had a duty never to do the same or similar actuarial work for any of its clients. There is no legal basis for that view, and the allegation elsewhere that "Ford had agreement with KPMG and Belmont would not provide similar services to a competitor for the casualty insurance products that Ford designed," *id* at 39, is both confusing on its face and totally implausible. First, this statement is in a separately numbered paragraph from the allegation that

the invoices were "false."[3] Second, it follows immediately a sentence within the same numbered paragraph discussing the preparation of a "presentation package" by Belmont and "KPMG."[4] Third, the sentence itself refers to "KPMG and Belmont" rather than KPMG USA. And fourth, and most importantly, it is beyond implausibility, to the level of absurdity, to even suggest that a professional organization like KPMG USA, with thousands of professional personnel in offices across the United States serving thousands of clients, including multiple clients in the insurance industry, would EVER agree with one client in the insurance industry not to do similar work, whether it be actuarial work or the preparation of presentation documents, for its other clients in that industry.

Combining the foregoing with the fact that Ford would not plausibly be engaged in obtaining actuarial work or preparation of presentations after BLA entered liquidation, so that this conduct necessarily occurred before December 2007, the claims against KMPG USA must be dismissed.

## IV. **FORD FAILS SUFFICIENTLY TO ALLEGE RICO CLAIMS AGAINST KPMG USA**

In an ill-advised attempt to bring his groundless claims against KPMG USA into this Court, Ford has cobbled together a pleading that purports to state two federal RICO claims within this Court's federal question jurisdiction. However, Ford has failed properly to allege such a claim in either Count I or Count II, thus, both of those claims must be dismissed.

---

[3] Under Fed.R.Civ.P. 10(b), "A party must state its claims . . . in separately numbered paragraphs, each limited as far as practicable to a single set of circumstances." Thus, the inclusion of this allegation in a separately numbered paragraph from the allegation about the invoices teaches that relates to a separate set of circumstances than the invoices.

[4] Conversely, under Fed.R.Civ.P. 10(b), inclusion of this allegation within the same numbered paragraph as the discussion about the preparation of a presentation teaches that it relates to the preparation of the presentation work, rather than the invoices for actuarial work.

### A. Ford Fails to Allege the Predicate Acts of Mail and Wire Fraud With Specificity.

Ford's RICO claims only allege instances of purported mail and wire fraud as predicate acts. *See, e.g.*, Am. Comp., ¶ 163. Mail and wire fraud must be pled with specificity. *See Solomon v. Blue Cross & Blue Shield Ass'n*., 574 F. Supp. 2d 1288, 1293 (S.D. Fla. 2008). That means Ford must say what exactly was said, and by whom, and when and how it misled him. Ford fails to do so. In particular, he never alleges that any of the alleged fraudulent statements were made by KPMG USA or any of its personnel. Instead, he does things like alleging that "KPMG Defendants" committed "wire fraud and mail fraud to [sic] Ford stating work [sic] done for Ford when in fact KPMG was also doing work for Barros." Am. Comp., ¶ 163. However, Ford never explains exactly what statements were wired or mailed, or who, in particular wired or mailed them, or how they misled him. If he is saying only that one of the KPMG entities sent bills to him or BLA, showing that work was being done for one of them, his own allegations prove that this was no fraud, as he alleges that KPMG entities did do work for him or BLA and sent bills. If he is saying that he was deceived by a failure to disclose that the entity that sent the bills was also doing work for other clients in the same or a similar business, the contention is beyond implausible as everyone knows that accountants and accounting firms often do work for multiple clients in the same business. The only other statement attributed to the group of KPMG Defendants is the alleged statement that "Ford's annuity policy belong [sic] to BLA, the BLA liquidation, and KPMG," and that it was repeated on April 27, 2006, July 22, 2010 and July 8, 2016 (two months after this case was filed). Am. Comp., ¶ 163. There is no indication that these statements were made to Ford. If they had been, he clearly would not have been misled. In these allegations, Ford fails to allege any of the four requirements for pleading fraud in this context as

outlined in *Ambrosia Coal*, *supra* at 1316-17. The specificity of such allegations is critically important here. Without knowing who the individual speaker was, there is no way to know which KPMG entity was involved, and that makes a difference. *Rocker Mgmt.*, 2005 WL 1365772, at *8 ("The lumping together of KPMG offices under one 'KPMG' reference offends the particularity requirements embodied in Rule 9(b) and the PSLRA and is insufficient to rescue the deficiencies in the allegations concerning misstatements attributable to KPMG US."). Furthermore, there is no allegation in the Amended Complaint of any gain to KPMG USA from telling Ford that it represented him, nor from telling him that BLA or a receiver or even KPMG (as receiver) owned an annuity policy once owned by Ford.

**B. <u>Ford Fails to Allege KPMG USA Participated in a RICO Conspiracy.</u>**

"Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). As seen from the few allegations that directly relate to KPMG USA, Ford fails to plead the most basic element of a RICO conspiracy—an agreement by KPMG USA to participate in the alleged conspiracy. Instead, Ford states in conclusory terms that "[a] civil conspiracy between the various Defendants is a vital and integral aspect to accomplishing the Defendants' unlawful purposes." Am. Comp., ¶¶ 177, 199. This sort of recitation of a bare legal conclusion, devoid of well-pleaded facts, that is "not entitled to the assumption of truth" under *Iqbal, supra* at 678. For this reason, a vague and conclusory allegation that all 17 Defendants were part of a conspiracy wholly fails to meet the particularity requirement of Rule 9(b). *See Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1212-13 (11th Cir. 2015) (314 page second amended complaint failed to state RICO fraud claims with particularity).

### C. Ford Fails to Allege That KPMG USA Participated in a RICO Enterprise.

The Supreme Court has established that "one is not liable under [18 U.S.C. § 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). Ford, however, has alleged at most that KPMG USA provided actuarial services to Ford or BLA, and that KPMG USA permitted meetings to be held at its offices and recommended KPMG BVI. Merely providing professional services, even to a racketeering enterprise, is not sufficient to state a claim under § 1962(c). *Dep't of Econ. Dev. v. Arthur Anderson & Co. (U.S.A.)*, 924 F. Supp. 449, 466 (S.D.N.Y 1996) ("Many other courts faced with post-*Reves* §1962(c) claims against outside professionals have agreed that providing important services to a racketeering enterprise is not the same as directing the affairs of the enterprise."); *Kelly v. Palmer, Reifler & Assoc., P.A.*, 681 F. Supp. 2d 1356, 1380-81 (S.D. Fla. 2010) ("Courts following *Reves* have generally held that the provision of traditional legal services does not constitute the 'operation or management' of an enterprise for purposes of RICO liability."); *Petri v. Gatlin*, 997 F. Supp. 956, 986 (N.D. Ill. 1997) ("As the Supreme Court made clear in *Reves*, however, the 'management' of an enterprise's accounting matters is not synonymous with the 'operation or management' of that enterprise under RICO."). As a matter of law, these allegations are insufficient to turn Ford's claims into one for participation in a RICO enterprise.

### D. Ford Fails to Allege Continued Criminal Activity or the Threat of Continued Criminal Activity.

Ford does not—and cannot—allege continued criminal activity or the threat of continued criminal activity. Ford alleges only the existence of a discrete event – the collapse of BLA and its purported subsequent looting. The only alleged victim is Ford. The only alleged injury is to Ford. Even taking Ford's allegations as true, they do not suffice to support a RICO claim.

*Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1266-67 (11th Cir. 2004). "Indeed, in cases like this one, where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." *Id.* at 1267. Courts have gone so far as to state that "the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiffs to state a RICO claim." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (dismissing RICO complaint). Congress imposed the continuity requirement precisely to prevent this type of misapplication of RICO's treble damages remedy to ordinary commercial misconduct. *See, e.g.*, *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 685 (4th Cir. 1989) ("If the pattern requirement has any force whatsoever, it is to prevent . . . ordinary commercial fraud from being transformed into a federal RICO claim."). Ford is clearly attempting to misapply RICO's treble damages remedy for his own devices in a situation that amounts to, at worst, breaches of contract or breaches of professional duties for which applicable statutes of limitation would have long since expired. § 95.11(4), Fla. Stat. (statute of limitations for professional malpractice is two years); Tex. Civ. Prac. & Rem. Code § 16.003 (statute of limitations for accounting malpractice is two years); *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) ("The parties agree, and we hold, that a common-law action for accounting malpractice is subject to section 16.003 of the Civil Practice and Remedies Code, which provides that suit must be brought "not later than two years after the day the cause of action accrues.").

## V. THE AMENDED COMPLAINT IS A "SHOTGUN" PLEADING IN VIOLATION OF FEDERAL RULES OF CIVIL PROCEDURE 8(A) AND 10(B).

The Amended Complaint represents a classic example of a "shotgun" complaint. The

Eleventh Circuit described shotgun pleadings like Ford's: "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to the situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). In that case, the court affirmed the district court's dismissal of the second amended complaint and denial of leave to file a third amended complaint. *Id.* at 1294-95. Similarly, courts in this district have explained that "[c]omplaints that violate Rule 8(a)(2) or Rule 10(b) of the Federal Rules of Civil Procedure are often and widely referred to as shotgun pleadings. Courts of this Circuit have consistently found the use of such pleadings an impediment to the efficient administration of the judicial system." *Genesis NYC Enterprises, Inc. v. JAI Group, SA*, 2016 WL 1588397 at *2 (S.D. Fla. April 20, 2016) (internal citations omitted). Again, in *Genesis* the court dismissed the improperly pled complaint. *Id.* at *4-5.

The Amended Complaint is the quintessential shotgun pleading because each count alleges that it "adopts, reiterates, incorporates by reference and re-alleges each and every allegation contained in this Complaint as if each were set forth separately herein." Am. Comp. ¶¶ 183, 197. Ford has gone beyond even the typical shotgun pleading, which only incorporates prior paragraphs, by incorporating every allegation in the entire Amended Complaint into every count including the allegations in eight counts that were dismissed by the Court for lack of subject matter jurisdiction.[5] In doing so, Ford has taken shotgun pleading to a level beyond that anticipated by the Eleventh Circuit, which at least assumed the *first* count would not include all

[5] While the Court dismissed with prejudice Counts III through X, it did NOT strike the allegations in the paragraphs encompassing those counts.

of the later allegations. *Strategic Income Fund*, *supra* at 1295. Thus, Ford's RICO claims include his allegations relating to the already dismissed claims for fraudulent transfer, conversion and everything else. Because the Amended Complaint blatantly violates Rules 8(a)(2) and 10(b), this Court should dismiss the Amended Complaint in its entirety.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Amended Complaint as to KPMG USA with prejudice.

*/s/ Edward A. Marod*
**EDWARD A. MAROD**
Florida Bar No. 238961
Primary: emarod@gunster.com
Secondary: eservice@gunster.com
Secondary: dpeterson@gunster.com
**JOHN W. TERWILLEGER**
Florida Bar No. 107095
Primary: jterwilleger@gunster.com
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401-6194
Telephone: 561-655-1980
Facsimile: 561-655-5677
*Counsel for Defendant KPMG LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2017, I electronically filed the foregoing Motion with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notices of Electronic filing generated by CM/ECF.

Paul Platte, Esq. paul@paulplatte.com

David A. Freedman, Esq. dfreedman@coffeyburlington.com

Jeffrey Bast, Esq. jbast@bastamron.com

Jeremy J. Hart, Esq. jhart@bastamron.com

Jeremy S. Korch, Esq. jkorch@bastamron.com

Stuart H. Singer, Esq. ssinger@bsfllp.com

Sashi C. Bach, Esq. sbach@bsfllp.com

Sabria A. McElroy, Esq. smcelroy@bsfllp.com

Traci H. Rollins, Esq. traci.rollins@squirepb.com

Jason D. Joffe, Esq. jason.joffe@squirepb.com

Ricardo Marenco, Esq. ricardo.marenco@squirepb.com

*/s/ Edward A. Marod*
**Edward A. Marod**

WPB_ACTIVE 7708128.1