**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**

CASE NO.: 9:16-cv-80618

Leo Ford,

Plaintiff,

v.

KPMG LLP, *et al.*,

Defendants.

**DEFENDANTS' CASEY MCDONALD, KRIS BEIGHTON, RUSSELL CRUMPLER, JAMES DRURY, AND KPMG (BVI) LTD. AMENDED MOTION TO DISMISS COUNTS I AND II OF THE FIRST AMENDED COMPLAINT (D.E. 43) AND SUPPORTING MEMORANDUM OF LAW**

Defendants, Casey McDonald, Kris Beighton, Russell Crumpler, James Drury, and KPMG (BVI) Ltd. ("KPMG BVI," and collectively, the "BVI Defendants"), by and through their undersigned attorneys, move for an order dismissing Counts I and II of the First Amended Complaint (D.E. 43) in their entirety, as there is a lack of subject matter jurisdiction, *forum non conveniens*, and a lack of personal jurisdiction over each of the BVI Defendants, and as well because Plaintiff has failed to state a claim in Counts I and II upon which relief can be granted.

## BACKGROUND

1. As previously asserted to this Court, Plaintiff's claims in Counts I and II against the BVI Defendants, notwithstanding being styled as brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et. seq. (hereinafter, "RICO") are, in essence, a challenge to the currently pending British Virgin

Islands ("BVI") liquidation of now-dismissed plaintiff Boston Life & Annuity Company Limited ("BLA").

2. BLA is an insurance company that has been in liquidation in the BVI since late 2007 (the "Liquidation").[1] *See* Declaration of BLA's court-appointed Joint Liquidator, Casey McDonald (hereinafter, "McDonald Declar."), ¶ 7, attached hereto as Exhibit B.

3. On December 20, 2007, Messrs. McDonald and Beighton, individually, were appointed as Joint Provisional Liquidators over BLA, and, as admitted in the First Amended Complaint at ¶ 54, on February 27, 2008, they were appointed Joint Liquidators. *Id*. at ¶¶ 7, 8; Declaration of Kris Beighton (hereinafter, "Beighton Declar."), ¶ 4, attached hereto as Exhibit C.

4. On October 25, 2011, Mr. Crumpler replaced Mr. Beighton and was appointed as Joint Liquidator over BLA, along with Mr. McDonald. *See* Declaration of Russell Crumpler (hereinafter, "Crumpler Declar."), ¶¶ 4, 5, attached hereto as Exhibit D.

5. At no time whatsoever were either Mr. Drury or KPMG BVI the Liquidators of BLA; that is a position that can only be held by individuals, and has been occupied solely by Messrs. McDonald, Beighton and Crumpler. *Id*. at fn1; McDonald Declar., fn1; Beighton Declar., fn1; Declarations of James Drury (hereinafter, "Drury Declar.") and KPMG BVI (hereinafter, "KPMG BVI Declar."), ¶¶ 3 and 9, respectively, attached hereto

[1] The insolvency process in the BVI is a collective process, by which the liquidator, **acting as an officer of the Court**, has a duty to gather assets and distribute them amongst the creditors claiming in the liquidation in accordance with the prescribed order of priority. Sections 184 and 185(1), BVI Insolvency Act, 2003. The statutory scheme requires creditors to submit claims, and for the liquidator to accept or reject such claims, with a right of appeal lying with the BVI court. Rule 59(1) BVI Insolvency Rules, 2005 (emphasis added). Relevant excerpts of the BVI Insolvency Act and the BVI Insolvency Rules are attached hereto as Exhibit A.

as Exhibits E and F, respectively. However, Mr. Drury has taken limited actions in the scope of his employment in the BVI to support the Liquidators.

6. In challenging the Liquidation itself, through his dressed-up RICO claims, Plaintiff, a resident of Panama[2], seeks redress for the actions of the Joint Liquidators taken in the BVI:

> "The Conspirators[3] continue up to and including July 8, 2016, in their ongoing criminal enterprise . . ." (A. Complt., ¶ 51);
>
> "KPMG LLP, KPMG BVI, KPMG Cayman, McDonald, Beighton, Crumpler and Drury had a conflict in representing BLA and then acting as liquidators of BLA.[4]" (A. Complt., ¶ 54);
>
> "Ford was excluded from information and decisions about BLA." (A. Complt., ¶ 55);
>
> "Orders KPMG obtained from the BLA liquidation are unenforcable [sic] as the liquidation estate appointment, liquidation estate operation, and liquidation estate orders were obtained by fraud . . ." (A. Complt., ¶ 56);
>
> "In furtherance of the RICO conspiracy, the Conspirators continue the mail fraud and wire fraud as recently as July 8, 2016,[5] when the KPMG "Defendants sent out fraudulent mail and wires to Ford and his lawyer . . ." (A. Complt. ¶¶ 3, 57);
>
> "[A]s cash comes in the liquidators take as fees all the liquid money . . ." (A. Complt., ¶ 61);
>
> "[T]he liquidators failed in their duties . . ." (A. Complt., ¶ 62);

---

[2] See Plaintiff Ford's Response to McDonald's Motion to Dismiss First Amended Complaint (D.E. 76), pp. 7, 9, 11.

[3] Plaintiff fails to define "Conspirators," but the context implies inclusion of Messrs. McDonald, Beighton, and Crumpler, and also proceeds on the wrong assumption that Mr. Drury and KPMG BVI were co-liquidators.

[4] Neither KPMG LLP, KPMG BVI, KPMG Cayman, nor Mr. Drury were ever liquidators of BLA. *See* Crumpler Declar., fn1, McDonald Declar., fn1, Beighton Declar., fn1.

[5] Plaintiff's allegation of "fraudulent mail" dated July 8, 2016, is a reference to a letter from Russell Crumpler, as Joint Liquidator, sent from the BVI concerning the BLA Liquidation. A copy of such letter (without enclosures) is attached as Exhibit G and is incorporated herein.

> "KPMG, AS LIQUIDATOR, INTENTIONALLY NEGLECTED ITS FIDICIARY [sic] DUTIES" (A. Complt., Heading G, p. 16, and ¶¶ 63-64) (emphasis in original);
>
> "KPMG, McDonald, and Beighton (and now Crumpler and Drury) abused and continue to abuse their power to run rampant and overcharge BLA in fees and participated in self-dealing and fraudulent transactions regarding BLA and its annuity clients for corporate and personal betterment of the Conspirators." (A. Complt., ¶ 66);
>
> "Defendants refused to provide Ford with information about BLA while the KPMG Defendants managed BLA before, during and after the liquidation" (A. Complt., ¶ 119);
>
> "KPMG, McDonald, Beighton, Crumpler, and Drury should never have accepted the position as liquidators" (A. Complt., ¶ 125);
>
> "Although Ford was the major single creditor at liquidation, KPMG, McDonald, Beighton, Crumpler, and Drury refused to allow him on the Creditors' Committee . . ." (A. Complt., ¶ 128); and
>
> "KPMG, McDonald, Beighton, Crumpler, and Drury refuse to pay and claims loans and distributions" (A. Complt., ¶ 130).

7. These allegations are inaccurate as a matter of law and fact, but, moreover, are clearly premised on actions by the BLA Liquidators in the BVI, in furtherance of the BLA Liquidation, pending in the BVI. Labeling Counts I and II as RICO claims does not change that.

8. As more fully set forth below, Plaintiff's allegations and the putative claims they support are most properly brought in the Liquidation itself, currently being heard in The Eastern Caribbean Supreme Court, BVI, Claim Number BVI HCV 2007 10290.

## MEMORANDUM OF LAW

### I. This Action Should be Dismissed With Prejudice For Lack of Subject Matter Jurisdiction.

Subject matter jurisdiction encompasses the scope of sovereign immunity, and the Foreign Sovereign Immunity Act ("FSIA") provides the exclusive basis and means to bring an action against a foreign sovereign in the United States. *See Guevara v. Republic of Peru*, 608 F.3d 1297, 1305 (11th Cir. 2010). Under the FSIA, a foreign state is immune from the jurisdiction of this Court (or any United States court) except as provided in Title 28 §§1605-1607. 28 U.S.C. §1604.

As more fully set forth below, Messrs. McDonald, Beighton, and Crumpler, as BVI Court-appointed Liquidators, are each a foreign state within the meaning of the FSIA, and any actions by Mr. Drury or KPMG BVI were taken in support of these Liquidators. *Best Med. Belg., Inc. v. Kingdom of Belg.,* 913 F. Supp. 2d 230 (E.D. Va. 2012); *see also Fabe v. Aneco Reinsurance Underwriting, Ltd.*, 784 F. Supp. 448, 449-51 (S.D. Ohio 1991) (holding that liquidators appointed by the Bermuda Supreme Court to marshal the assets of defendant Bermudan company and generally wind up the company's affairs were included under the FSIA's definition of foreign state); *Granville Gold Trust-Switzerland v. Commissione Del Fullimento/Inter Change Bank*, 924 F. Supp. 397, 408 (E.D.N.Y. 1996) (holding the same regarding the individual members of a commission appointed by a Swiss court of appeals to supervise a Swiss bank's liquidation); *Refco, Inc. v. Galadari*, 755 F. Supp. 79, 80, 82 (S.D.N.Y. 1991) (holding same regarding committee of receivers appointed by the government of Dubai to liquidate an Emirati company). Plaintiff has not, and cannot, allege the application of

any of the exceptions to the FSIA which would confer jurisdiction on this Court over the BVI Defendants.[6]

**A. The FSIA Precludes the Instant Action.**

The FSIA operates with the presumption that foreign sovereigns are immune from the jurisdiction of the United States courts. *See, Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428 (1989). In *Best Med.*, a suit was brought against, *inter alia*, three individuals appointed by the Belgian court to serve as administrators to conduct day-to-day management of an insolvent company which was the subject of a Belgian court liquidation proceeding. *Id.* at 234-35. The plaintiffs alleged that these administrators conspired to take the company's property. *Id.* at 235. The United States District Court for the Eastern District of Virginia granted the defendants' motion to dismiss because it had no subject matter jurisdiction over the alleged actions of those performing judicial functions for the Belgian court.

*Best Med.* is factually on point. That court determined that the foreign court is considered the foreign state itself due to its core governmental function, and that the administrators acted pursuant to the court's appointment. *Id*. at 241. As such, it held that the FSIA precluded subject matter jurisdiction over the court-appointed administrators. "The prudence with which [the administrators] conducted themselves in their administration of [the foreign company] . . . is beyond the jurisdiction of this [c]ourt." *Id*. at 241. The same can, and should be said of the BVI Defendants.

[6] Plaintiff has previously responded that the BVI Defendants fail to nullify all of the FSIA exceptions. However, once a defendant raises a FSIA defense, the plaintiff bears the burden of presenting some evidence establishing the application of an exception. *Velasco v. Gov't. of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).

Moreover, the limited statutory exceptions to the FSIA have no application here. First, the BLA Liquidators were acting within the scope of authority expressly granted to them by the BVI Court in the BLA Liquidation. *See,* McDonald Declar., Exhibit 1. Second, while 28 U.S.C. §1605(a)(2) provides a "commercial activity" exception for acts carried on in the U.S. by the foreign states, neither the three BLA Liquidators, nor Mr. Drury, nor KPMG BVI, carried on any commercial activity in the U.S., and the actions of the BVI Court-appointed Liquidators are not the "type of actions by which a private party engages in 'trade and traffic or commerce.'" *Rep. of Argentina v. Weltover*, 504 U.S. 607, 614 (1992). The actions of the BLA Liquidators were no different from those of the administrators in *Best Med*, and there, as Plaintiff acknowledges, the court found such actions were not commercial activity. *See*, Plaintiff's Response to McDonald's Motion to Dismiss (D.E. 76); *Id*. at 235. Lastly, consistent with *Best Med.* and the language of the statute, Plaintiff's alleged taking of property does not rise to a violation of international law required to invoke the takings exception of 28 U.S.C. §1605(a)(3), because, as expressly required by the exception, the allegedly taken property (here, the annuity policy issued by BLA) is not and never has been present in the U.S. *in connection with* a commercial activity carried on in the U.S. Faced with the same argument, the *Best Medical* court held that judicial administration and sale of a financially struggling company is not a taking. *Id*. at 239.

Where, as here, a motion to dismiss is based on a claim of foreign sovereign immunity, which provides protection from suit and not merely a defense to liability, the court must engage in sufficient pretrial factual and legal determinations to satisfy itself of

its authority to hear the case. *Velasco* at 398. Such an analysis leads to the inescapable conclusion that there is no subject matter jurisdiction.

**II. The Act of State Doctrine Bars the Claims.**

The act of state doctrine limits the power of the United States courts to examine and impugn the acts of another sovereign. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964). This doctrine "is applicable when `the relief sought or the defense interposed would [require] a court in the United States to declare invalid the official act of a foreign sovereign performed within its boundaries." *World Wide Minerals, LTD. v. Republic of Kaz.*, 296 F.3d 1154, 1164 (D.C. Cir. 2002) (internal brackets omitted) (quoting *W. S. Kirkpatrick & Co. v. Environmental Tectonics Corp. Int'l*, 493 U.S. 400, 405 (1990)). The doctrine is to be interpreted and applied in accordance with the policy interests of "international comity, respect for the sovereignty of foreign nations on their own territory, and the avoidance of embarrassment to the Executive Branch in its conduct of foreign relations." *W. S. Kirkpatrick*, 493 U.S. at 408; *Nemariam v. Fed. Democratic Republic of Eth.*, 491 F.3d 470, 477 n. 7 (D.C. Cir. 2007). At the motion to dismiss stage, determination of the availability of the act of state defense is made on the basis of the pleadings alone, and the facts necessary to give rise to the defense must be contained within the four corners of the complaint. *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 754-55 (S.D.N.Y. 2004). The letters and emails referenced by Plaintiff are not acts that occurred within the U.S., they occurred within the foreign sovereign's boundaries.

The *Best Med.* court considered this doctrine in "doubt[ing] the existence of jurisdiction to pass judgment upon the acts of a foreign state." *Best Med.* at 241. As is

true of the BVI Defendants, the challenged actions in *Best Med.* were those of individuals operating as officers of the Belgian court within the foreign sovereign's boundaries, and the court declined to adjudicate the propriety of the defendants' actions. This Court should do the same as to the BVI Defendants.

**III. This Action Should Be Dismissed For *Forum Non Convenien*s.**

A district court may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject matter and personal jurisdiction, when questions of convenience, fairness, and judicial economy so warrant. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). "Under the federal doctrine of *forum non conveniens*, 'when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case,' even if jurisdiction and proper venue are established." *American Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994); *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009). In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), the United States Supreme Court considered the doctrine of *forum non conveniens* and described two spheres of consideration: the private interest of the litigants, and the public interest. With respect the former, the court stated:

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and

> inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained.

*Gulf Oil Corp*. at 508. In analyzing the factors of public interest that court stated:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws and in law foreign to itself.

*Id.* at 508-09.

In the instant action there is already an adequate alternative forum available which possesses jurisdiction over all claims asserted against the BVI Defendants, and in which an adequate potential remedy is afforded to Plaintiff. That forum is the BVI court presiding over the BLA Liquidation, which action contemplates the same substantive matters as against the BVI Defendants at issue herein. The easiest, most expeditious and inexpensive forum for handling this case is that which has already undertaken adjudication of it: the BVI court. Moreover, Section 175(1)(c) of the BVI Insolvency Act, 2003 clearly and unambiguously provides that Plaintiff's claims are most properly (and exclusively) brought in the BVI Liquidation, where it states:

"… with effect from the commencement of the liquidation of a company:

(c) Unless the Court otherwise orders, <u>no person may</u>:

(i) commence or proceed with any action or proceeding against the company or <u>in relation to its assets</u>, or

> (ii) exercise or enforce, or continue to exercise or enforce, any right or remedy over or against the assets of the company"

(emphasis added). *See also*, *Krys v. Shell Pensioenfonds* [2014] UKPC 41, a decision issued on appeal from the BVI Court to the English Privy Council, which held that a foreigner, like Plaintiff, submits to the exclusive jurisdiction of the BVI court by submitting a claim in the liquidation, as Plaintiff has done in the BLA Liquidation[7]. (emphasis added). The *Krys* Court further noted that "[i]n the United states, the Supreme Court has independently arrived at the same position and recognized the right of the state of an insolvent's domicile to restrain proceedings in another state designed to obtain a more favorable distribution of the assets, notwithstanding the constitutional duty of each state to give full faith and credit to judicial proceedings in every other state: *Cole v. Cunningham* (1890) 133 U.S. 107". *Id.* at ¶ 22.[8]

Legal commentators generally have noted a growing trend in private international law of attempting to file suit in an American court even for alleged injuries or breaches that occurred on foreign soil. *Kinney Sys. v. Continental Ins. Co.*, 674 So. 2d 86 (Fla. 1996). The Florida Supreme Court, in analyzing the state's own doctrine of *forum non conveniens* noted that "[t]here already is evidence the practice is growing to abusive levels in Florida" and further commented that "[n]othing in our law establishes a policy

[7] *See* McDonald Declar., ¶ 10.

[8] *See also*, *Alexander v. Hillman*, 296 U.S. 222, 241-42 (1935) (nonresidents who present claims against receivers subject themselves to all consequences that attach to an appearance); *Enron Corp. v. Citigroup, Inc. (In re Enron Creditors Recovery Corp.)*, 410 B.R. 374, 383 (S.D.N.Y. 2008) ("Once a party submits to the jurisdiction of the bankruptcy court by making a claim, the party submits to the jurisdiction of the Court to establish the respective rights of the parties.").

that Florida must be a courthouse for the world, nor that the taxpayers of the state must pay to resolve disputes utterly unconnected with this state's interests." *Id*. at 88.

These comments are especially relevant in an analysis of the instant action. That is, the alleged damages incurred by Plaintiff (a resident of Panama) arise from actions undertaken in the BVI. The BVI forum is available and adequate and witnesses and documents, in particular, the Joint Liquidators' books and records, and the books and records of BLA, are more readily accessible in the BVI. *See McLane v. Marriott Int'l, Inc.*, 547 Fed. Appx. 950, 955 (11th Cir. 2013) (affirming dismissal for *forum non conveniens* when critical witnesses concerning liability resided in Costa Rica); *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1384 (11th Cir. 2009) (affirming dismissal for *forum non conveniens* in part because evidence can only be obtained from Italian witnesses). Witnesses involved in the Liquidation are invariably in the BVI, and therefore cannot be compelled for live attendance at a trial in the Southern District of Florida. *See Gulf Oil Corp.* at 511 ("Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants."); *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003) ("Perhaps the most important 'private interest' of the litigants is access to evidence."). Lastly, but of equal importance, the public interest favors dismissal as the difficulty of applying BVI law to what is not a "localized controversy" makes trying the case in Florida federal court more burdensome.

In prior responses to this *forum non conveniens* argument, Plaintiff has stated: "The beneficiaries of Ford's annuity policy reside in Palm Beach County, Florida." D.E. 76, p. 7. Notably, Plaintiff resides in Panama, and the policy beneficiaries are not

parties to this action. That makes this Panama resident's dispute with the BVI Defendants "utterly unconnected with this State's interest," and this Court is far from a convenient forum. *See, Kinney* at 88. There is no local interest in having this foreign controversy decided in Florida, and the BVI has already expressed an interest in resolving this matter by virtue of the Liquidation pending there. Accordingly, this Court should decline to exercise jurisdiction over this matter and dismiss it pursuant to the doctrine of *forum non conveniens*.

**IV. There Is No Personal Jurisdiction.**

A Florida federal court must engage in a two-part inquiry to determine whether personal jurisdiction exists over foreign defendants. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). First, the court must determine that the complaint alleges sufficient facts to bring the defendant within the ambit of Florida's long-arm statute. *Id*. If the plaintiff satisfies the long-arm statute the court must then determine whether exercising personal jurisdiction over the foreign defendant satisfies constitutional due process such that "maintenance of the suit [in the State] does not offend 'traditional notions of fair play and substantial justice.'" *Id*. (internal citation omitted).

The burden shifting procedure for determining whether a defendant is subject to Florida's long-arm statute is well-established. The plaintiff must first plead the basis for jurisdiction in the language of Florida's long-arm statute. *Id.* If a defendant contests the application of the long-arm statute by filing declarations supporting his challenge, the burden then shifts to the plaintiff who must prove by sworn statements the basis for jurisdiction. *Id*. at 502-03.

### A. None of the BVI Defendants is Subject to Long-Arm Jurisdiction in Florida.

#### 1. Specific Jurisdiction Is Neither Asserted Nor Supported.

Under the first part of the jurisdictional inquiry, this Court must determine whether Florida's long-arm statute authorizes the exercise of personal jurisdiction over each of the BVI Defendants. Subsection (1) of the long-arm statute sets forth the requirements for the exercise of "specific" personal jurisdiction. That section provides that "[a] person, whether or not a citizen or resident of this state, who personally or through an agent," commits any one of a number of enumerated acts *in this state*, submits himself to the jurisdiction of the courts "for any cause of action *arising from*" such act. *See* Fla. Stat. § 48.193(1)(a) (emphasis added). "Satisfaction of this *arising from* requirement necessitates a 'direct affiliation,' 'nexus,' or 'substantial connection' . . . between the basis for the cause of action and the [action that falls under the long-arm statute]." *Glovegold Shipping, Ltd. v. Sveriges Angfartygs Assurans Forening*, 791 So. 2d 4, 10 (Fla. 1st DCA 2001); *Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 1246, 1269 (S.D. Fla. 2001). Absent satisfaction of this "connexity" requirement, specific jurisdiction does not exist. *Id.* at 1269.

In the First Amended Complaint, Plaintiff merely asserts, incorrectly, and in cursory fashion, that "Defendants conduct business in this District and/or reside in this District." (A. Compl., ¶ 11). None of the BVI Defendants do either.[9] Plaintiff does not (and cannot) assert specific jurisdiction.

[9] *See* Declarations of each of BVI Defendants, respectively.

**2. None of the BVI Defendants Have Sufficient Individual Contacts with Florida to Establish General Jurisdiction.**

Subsection (2) of Florida's long-arm statute, providing for "general" personal jurisdiction, eliminates the connexity requirement. The level of contacts required to establish general jurisdiction "must be especially pervasive and substantial." *Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1294 (S.D. Fla. 2009) (quoting *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1343 (S.D. Fla. 2002)).

Additionally, the Supreme Court of Florida has adopted the corporate shield doctrine which provides that a court cannot consider a defendant's contacts with Florida for purposes of personal jurisdiction if those contacts were made in his capacity as a corporate agent. *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993). That is, the corporate shield doctrine draws a distinction between a corporate officer acting on his own and a corporate officer acting on behalf of his corporation. *See Radcliffe v. Gyves*, 902 So. 2d 968 (Fla. 4th DCA 2005). In order to overcome the corporate shield and consider a defendant's acts committed as an employee or agent, the plaintiff must show that the acts constitute intentional tortious conduct purposefully directed at Florida. *Office of the AG, Dep't of Legal Affairs v. Wyndham Int'l*, 869 So. 2d 592, 597 (Fla. 1st DCA 2004).

**3. None of the Contacts of any of the BVI Defendants Are Substantial, Systematic and Continuous.**

Plaintiff fails to allege any basis on which general jurisdiction is satisfied and for this reason alone, the action should be dismissed. *See Corneal v. CF Hosting, Inc.*, 187 F. Supp. 2d 1372, 1376 (S.D. Fla. 2001) (granting defendants' motion to dismiss

because plaintiffs "failed to plead sufficient material facts to form a basis for personal jurisdiction" over the defendants).

Further, as each of the BVI Defendants declares, they meet none of the factors regularly cited to support the exercise of general jurisdiction. *See* generally, Declarations of each of the BVI Defendants.

**4. Exercising Personal Jurisdiction Would Offend Due Process.**

Exercising personal jurisdiction over any of the BVI Defendants "would transgress traditional notions of fair play and substantial justice." *Cable/Home Comm'n Corp. v. Network Prods, Inc*., 902 F.2d 829, 858 (11th Cir. 1990). In making this determination, the court considers "the burden on the defendant of defending the suit in Florida; Florida's interest in adjudicating the suit; the plaintiff's interest in obtaining effective relief; the interests of the interstate judicial system in using resources efficiently; and the interests of the states in furthering shared substantive policies." *Einmo v. Aecom Gov't Servs.*, 2007 U.S. Dist. LEXIS 63293, *26 (M.D. Fla. Aug. 7, 2007).

Florida has little interest in resolving a dispute over actions by BVI Court-appointed Liquidators as to a BVI company. Not only does jurisdiction for resolving this dispute reside in the BVI, but all of the evidence (the Liquidators' books and records) and the attendant witnesses (including the Liquidators and the majority of those connected to the BLA Liquidation estate) are in the BVI and the Cayman Islands, and each of the BVI Defendants would be forced to incur international travel to defend a lawsuit in Florida that is unrelated to any acts committed in Florida.

Significantly, effective relief is available to Plaintiff in the Liquidation proceeding in the BVI. Thus, the burden here on BVI residents and a BVI company to defend themselves in Florida far outweighs the burden to Plaintiff, who can obtain relief from proceedings already in progress and to whose jurisdiction he has already submitted. For these reasons, exercising personal jurisdiction would be unfair.

In conclusion, none of the BVI Defendants are subject to personal jurisdiction in Florida, and each of the claims asserted against them should be dismissed.

## V. The Amended Complaint Fails to State RICO Claims against the BVI Defendants.

The Amended Complaint fails to state RICO claims against the BVI Defendants because Plaintiff's factual allegations: 1) are insufficient to show that any of the BVI Defendants engaged in actionable unlawful conduct; 2) do not, with the requisite specificity, assert the essential elements of a RICO claim; and 3) demonstrate that the RICO claims asserted against the BVI Defendants are barred by the statute of limitations.

### A. The Amended Complaint Fails to Demonstrate that the BVI Defendants Engaged in Actionable Unlawful Conduct.

Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the court will generally "assume [the] veracity" of well-pleaded factual allegations, those allegations must consist of more than

mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. 662 at 678-79.

Plaintiffs must also plead more than "a sheer possibility that a defendant has acted unlawfully[,]" and instead must show plausibility that a defendant acted unlawfully. *See id*. at 678; *Twombly*, 550 U.S. at 570. A claim has facial plausibility when the pleaded factual content, taken in the light most favorable to the plaintiff, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Twombly*, 550 U.S at 556; *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

Many of the allegations in the Amended Complaint merely regurgitate the applicable federal statutes and recast them as "factual allegations." Such allegations are those that the Supreme Court has stripped of entitlement to an assumption of truth under Rule 12(b)(6). Once these insufficient allegations are disregarded, the remaining allegations (even when taken in a light most favorable to Plaintiff) fail to support a reasonable inference that any of the BVI Defendants acted unlawfully under RICO and, thus, fail to raise a claim of entitlement to relief against each of the BVI Defendants.

For example, multiple allegations group all of the BVI Defendants' conduct together with other named defendants, making it impossible to identify which particular defendant engaged in what allegedly wrongful conduct. *See, Lacroix v. W. Dist. of Ky.*, 627 F. App'x 816, 818 (11th Cir. 2015) ("A [] pleading . . . in which it is virtually impossible to know which allegations of fact are intended to support which claims for relief [] does not comply with the standards of Rule[] 8(a) . . .") (internal quotations omitted). Moreover, in conflating the BVI Defendants with other named defendants,

Plaintiff improperly attributes liability to KPMG BVI based on allegations that relate to other KPMG entities. *See AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296 (11th Cir. 2015) ("[T]he general rule is that a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person.") (internal quotations omitted); *Skidmore Energy, Inc. v. KPMG LLP*, No. 3: 03-CV-2138-B, 2004 U.S. Dist. LEXIS 28396, at *10-14 (N.D. Tex. Dec. 28, 2004) (dismissing RICO claims against KPMG LLP based on the actions of its member firm in Morocco).

Even in a light most favorable to Plaintiff, the remaining allegations that specifically address the BVI Defendants' conduct (however factually inaccurate) do not state facially plausible RICO claims against the BVI Defendants. Rather, they fall well short of permitting the Court to draw the reasonable inferences necessary to find that the BVI Defendants engaged in conduct that violates RICO. Accordingly, based upon *Twombly* and *Iqbal*, the Amended Complaint does not meet the Rule 8 pleading requirements, making dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure appropriate.

**B. The Allegations Do Not Assert, With the Requisite Specificity, the Essential Elements of a RICO Claim.**

RICO authorizes civil remedies against those who engage in a "pattern of racketeering activity" through or involving an "enterprise," *see* 18 U.S.C. § 1962. In pertinent part, RICO prohibits "any person employed by or associated with any enterprise" that affects interstate or foreign commerce from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity," 18 U.S.C. § 1962(c), or conspiring to do so, *see id.* at §

1962(d). "Racketeering activity" under RICO means the commission of any of an extensive list of federal crimes, known as predicate offenses, including mail and wire fraud under 18 U.S.C. §§ 1341 and 1343, respectively. *See* 18 U.S.C. § 1961(1).

Here, Counts I and II of the Amended Complaint seek to state claims against the BVI Defendants for engaging in, and conspiring to engage in, mail and wire fraud in violation of RICO under 18 U.S.C. §§1962(c) and (d), respectively. Plaintiff, however, has failed to include sufficient well-pleaded factual allegations supporting a reasonable inference that: 1) the BVI Defendants' racketeering conduct and Plaintiff's alleged injuries are domestic in nature; and 2) the BVI Defendants violated 18 U.S.C. §1962(c); or 3) the BVI Defendants violated 18 U.S.C. §§1962(d).

**1. Plaintiff's Alleged Conduct And His Injuries Are Not Domestic.**

"A violation of section 1962 may be based on a pattern of racketeering that includes predicate offenses committed abroad, provided that each of those offenses violates a predicate statute that is itself extraterritorial." *Absolute Activist Value Master Fund v. Devine*, No. 2:15-cv-328-FtM-29MRM, 2017 U.S. Dist. LEXIS 17492, at *53-54 (M.D. Fla. Feb. 8, 2017) (quoting *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2103 (2016)). In other words, if a civil RICO plaintiff seeks to recover for racketeering conduct that was committed abroad, "the foreign racketeering activity must violate a predicate statute which itself has extraterritorial application." *Devine*, 2017 U.S. Dist. LEXIS 17492, at *53 (citing *RJR Nabisco, Inc.*, 136 S. Ct. at 2103). Here, neither of the predicate offenses of mail or wire fraud violate predicate statutes, §§ 1341 and 1343, that have extraterritorial application. *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 140-41 (2d Cir. 2014), *rev'd on other grounds by RJR Nabisco, Inc.*, 136

S. Ct. at 290[10]. Moreover, "[I]rrespective of any extraterritorial application of [the act]," however, a "civil RICO plaintiff [must] allege and prove a domestic injury to business or property . . ." in order to recover. *Devine*, 2017 U.S. Dist. LEXIS 17492, at *56-57(citing *RJR Nabisco, Inc.*, 136 S. Ct. at 2108).

Here, even assuming arguendo that the Amended Complaint sufficiently alleges that the BVI Defendants engaged in, or conspired to engage in, mail and wire fraud in violation of RICO, there are no allegations that the predicate offenses were domestic in nature, as required by 18 U.S.C. §§ 1341 and 1343. For example, under a generous (albeit factually inaccurate) reading of the Amended Complaint, the BVI Defendants allegedly devised a scheme to defraud Plaintiff of his property and business interests in BLA (a BVI company) and/or an annuity policy held by BLA, by 1) misrepresenting the exclusive nature of the accounting work done for BLA to obtain proprietary information, 2) using fraudulently obtained proprietary information to establish a separate BVI entity to compete with BLA, and 3) misrepresenting the extent of their power as BVI Court-appointed Liquidators of a BVI company. The Amended Complaint, however, does not contain allegations asserting that such conduct occurred in the United States. *See United States v. Hawit*, No. 15-cr-252 (PKC), 2017 U.S. Dist. LEXIS 23391, at *15 (E.D.N.Y. Feb. 17, 2017) ("[I]n determining whether the wire fraud statute is being applied domestically[,]" a court must "conduct a more holistic assessment of the conduct that constitutes the alleged fraud scheme, including consideration of whether the scheme involves only incidental or minimal use of U.S. wires") (internal quotations omitted). While Plaintiff has alleged that the BVI Defendants used the U.S. mail in

[10] Other circuits have opined on the extraterritorial application of the wire fraud statute, but the Eleventh Circuit has not yet done so. *Devine*, 2017 U.S. Dist. LEXIS 17492, at *55 (internal citations omitted).

furtherance of fraudulent schemes, the allegations of conduct fail to assert a significant nexus to the United States. *See, Sullivan v. Barclays PLC*, No. 13-cv-2811 (PKC), 2017 U.S. Dist. LEXIS 25756, at *100 (S.D.N.Y. Feb. 21, 2017) (considering the nexus of the alleged acts of wire fraud to the U.S).

As well, there are insufficient allegations of domestic injury suffered by Plaintiff. RICO does not allow recovery for foreign injuries, i.e. injuries suffered outside of the United States. *See RJR Nabisco, Inc.*, 136 S. Ct. at 2108, 2111. Plaintiff's injuries occurred, if at all, in Panama, where he resides. Thus, the Amended Complaint fails to state a cause of action under RICO against the BVI Defendants.

**2. The Allegations Do Not Sufficiently Plead That the BVI Defendants Violated 18 U.S.C. §1962(c).**

"The four elements of civil RICO liability are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Abromats v. Abromats*, No. 16-cv-60653-BLOOM/Valle, 2016 U.S. Dist. LEXIS 125614, at *30 (S.D. Fla. Sep. 14, 2016) (citing *Humphrey v. United Parcel Serv.*, 200 F. App'x 950, 952 (11th Cir. 2006)). "Where, as here, the predicate pattern of racketeering activity is based on allegations of mail and wire fraud, a claimant must allege the existence of a scheme to defraud, and that the defendants intentionally participated in a scheme to defraud another of money or property and used the mails or wires in furtherance of that scheme." *Abromats*, 2016 U.S. Dist. LEXIS 125614, at *37 (citing *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290 (11th Cir. 2010)).

In the Eleventh Circuit, "a scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts reasonably

calculated to deceive persons of ordinary prudence." *Abromats*, 2016 U.S. Dist. LEXIS 125614, at *38 (internal quotations omitted). Accordingly, "[a] plaintiff must establish that the defendant had a conscious, knowing intent to defraud and that a reasonably prudent person would have been deceived by [defendant's] misrepresentations[,] which amounts to the same showing of reasonable reliance that is required for establishing common law fraud." *Id.* (internal quotations omitted). As a result, A RICO claim predicated on mail and wire fraud "must satisfy the heightened pleading requirement of [Federal Rule of Civil Procedure] 9(b) and allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled; and (4) what the defendants gained by the alleged fraud." *Id.* at *38-39.

Here, Plaintiff has not pleaded facts sufficient to allege a racketeering activity that satisfies the heightened standard of Rule 9(b). Other than reference to a single letter, there are no allegations that identify statements or misrepresentations made by each of the BVI Defendants with sufficient particularity (i.e. who made them, when, why, and how). Moreover, Plaintiff has also failed to allege what each of the BVI Defendants specifically gained from the alleged fraudulent scheme. Nor are there are allegations regarding each of the BVI Defendants' intent to engage in an illegal scheme to defraud Plaintiff. Finally, the Amended Complaint fails to sufficiently allege exactly what statements misled Plaintiff and how they reasonably misled him.

Additionally, the Amended Complaint completely fails to allege the existence of an "enterprise." The RICO enterprise must be separate from the persons conducting its activities through a pattern of racketeering activity. *Kelly v. Palmer, Reifler & Assoc.,*

*P.A.*, 681 F. Supp. 2d 1356, 1378 (S.D. Fla 2009) (citing *Cedric Kushner Promotions Ltd., v. King*, 533 U.S. 158, 161 (2001)). Plaintiff instead has grouped all defendants together, making it impossible to determine how each of the BVI Defendants are part of (or separate from) the enterprise, whether they are persons who have conducted the activity of the enterprise, or whether they did so by engaging in racketeering activity.

Moreover, Plaintiff has failed to allege how the BVI Defendants participated in a pattern of racketeering activity. A "pattern" of racketeering activity means the commission of at least two acts of racketeering within a certain period of time (generally ten years). *W. Assocs. Ltd. Pshp. v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001). It is insufficient to allege that there were multiple criminal acts, the plaintiff must instead "show that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity." *Special Purpose Accounts Receivable Co-op Corp. v Prime One Capital Co., LLC*, 202 F. Supp. 2d 1339, 1347 (S.D. Fla. 2002) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239-43 (1989)).

Plaintiff's allegations of a pattern of mail and wire fraud in violation of RICO are conclusory and have no factual content. While Plaintiff alleges that the BVI Defendants committed multiple acts to defraud Ford, he does not allege a pattern constituting racketeering. *See Jackson v. BellSouth Telecomms., 372* F.3d 1250, 1266-67 (11th Cir. 2004) ("Indeed, in cases like this one, where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time.")

Plaintiff points to alleged accounting and Liquidation acts allegedly performed by the BVI Defendants. While such conduct may or may not serve as the basis of a

legitimate business dispute, they clearly do not amount to a pattern of mail or wire fraud in violation of RICO. *Talisman Capital Alt. Invs. Fund, Ltd. v. Mouttet (In re Mouttet)*, 493 B.R. 640, 661 (Bankr. S.D. Fla. 2013) ("The pattern requirement . . . thus acts to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value.). Indeed, the appropriate place to litigate Plaintiff's gripes with the BLA Liquidators is in the BVI Liquidation.

Finally, the Amended Complaint also fails to adequately plead injury to Plaintiff as a result of the BVI Defendants' purported mail and wire fraud. "A civil RICO claim requires that plaintiffs plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity . . . was the but-for <u>and</u> proximate cause of the plaintiff['s] injury." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016) (emphasis in original). Plaintiff is unable to "show that [he] w[as] injured by reason of the alleged racketeering activity[,] . . . [and] [u]nable to establish even but-for causation, [] [P]laintiff would be unable to meet the higher burden of showing the racketeering activity proximately caused [] [P]laintiff's injury." *Id.* at 1350. For the foregoing reasons, Plaintiff has failed to allege a RICO claim against the BVI Defendants under 18 U.S.C. §1962(c), thus rendering Count I of the Amended Complaint subject to dismissal for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

**3. The Allegations Do Not Sufficiently Plead That the BVI Defendants Violated 18 U.S.C. §1962(d).**

In order to state a claim for relief under Federal RICO section 1962(d), the plaintiff must allege that 1) a defendant agreed to the overall objective of the conspiracy; or 2) a defendant agreed to commit two predicate acts. *In re Mouttet*, 493 B.R. at 660 (citing *American Dental*, 605 F. 3d at 1293). Any allegations in the Amended Complaint alluding to a conspiracy by and among the BVI Defendants constitute threadbare recitals that are not entitled to the assumption of truth and fail to satisfy the particularity requirement of Rule 9(b).

**C. The Alleged RICO Claims are Barred by the Applicable Statute of Limitations.**

Lastly, a civil RICO claim has a four-year statute of limitations running from the date the plaintiff first knew or should have known of his injury. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987). Plaintiff's allegations suggest that he miraculously discovered his injury on April 21, 2012, exactly 3 years and 364 days before he filed his original complaint and one day before RICO's four year statute of limitations allegedly ran. The allegations in the Amended Complaint, however, demonstrate that Plaintiff should have known of his injury long before 2012. The Amended Complaint alleges that a) the BVI Defendants injured Plaintiff by surreptitiously establishing a competing company and b) BLA's Liquidators intentionally caused time delays and exponentially increased costs in the BLA Liquidation. Under the Amended Complaint, the "competing company" was formed on April 30, 2003 [A. Complt., ¶¶ 43,44], and, the BVI Defendants (specifically Messrs. McDonald and

Crumpler) were appointed as Joint Liquidators on February 27, 2008. [A. Complt., ¶ 54].

Therefore, at the latest, Plaintiff knew or should have known of his injury by February 27, 2012, four years after BLA was placed in liquidation, two years after Planitiff's claim in the Liquidation was rejected, but more than four and six years, respectively, before this action was filed. Plaintiff's own allegations that he has been excluded from information and decisions about BLA since the BVI Defendants were selected as Joint Liquidators, demonstrate that Plaintiff was acutely aware of his injury when BLA was placed into Liquidation. (A. Complt., ¶ 64). Whether or not Plaintiff realized that his injury was the result of a RICO conspiracy is irrelevant, because a civil RICO claim accrues (and the four-year limitations period begins to run) "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." *Maiz v. Virani*, 253 F.3d 641, 676 (11th Cir. 2001) (citing *Rotella v. Wood*, 528 U.S. 549, 555, (2000)); *see also*, *White v. Greenpoint Mortgage Funding Inc.*, No. 14-80452-CIV-ZLOCH, 2014 U.S. Dist. LEXIS 185973, at *12-13 (S.D. Fla. June 25, 2014) (RICO complaint dismissed on 12(b)(6) motion based on statute of limitations grounds where complaint alleged injury occurring more than four years before complaint filed), *aff'd sub nom. White v. Bank of Am. Nat. Ass'n*, 599 Fed. Appx. 379 (11th Cir. 2015). As such, Plaintiff's RICO claims are time-barred.

**WHEREFORE**, Defendants Casey McDonald, Kris Beighton, Russell Crumpler, James Drury, and KPMG (BVI) Ltd. respectfully request that this Court grant their Motion to Dismiss, and enter such further relief as it deems just and appropriate.

Dated: March 31, 2017

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: 561.650.7200
Facsimile: 561.655.1509

By: _/s/ Traci H. Rollins_
Traci H. Rollins
Florida Bar No. 769071
Email: traci.rollins@squirepb.com
Jason D. Joffe
Florida Bar No. 0013564
Email: jason.joffe@squirepb.com
Ricardo Marenco
Florida Bar No. 0113008
Email: Ricardo.marenco@squirepb.com
***Attorneys for Defendants Casey McDonald, Kris Beighton, Russell Crumpler, James Drury, and KPMG (BVI) Ltd.***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on March 31, 2017, through Case Management/Electronic Case Filing ("CM/ECF") which sent notices of electronic filing to all parties indicated on the electronic filing receipt.

_/s/ Traci H. Rollins_
Traci H. Rollins
Florida Bar No. 769071

010-8442-9143/2/AMERICAS