UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-80618-CIV-ZLOCH

LEO FORD,

Plaintiff,

vs.

KPMG LLP, et al.,

Defendants.
_______________________________/

**O R D E R**

THIS MATTER is before the Court upon Defendants Belmont Insurance Management, Ltd., and Andrea Douglas's Renewed Motion To Dismiss First Amended Complaint (DE 121), Defendant KPMG LLP's Renewed And Amended Motion To Dismiss First Amended Complaint (DE 122), Defendants Casey McDonald, Kris Beighton, Russell Crumpler, James Drury, and KPMG (BVI), Ltd.'s, Amended Motion To Dismiss Counts I And II Of The First Amended Complaint (DE 124), Defendants Casey McDonald, Kris Beighton, Russell Crumpler, James Drury, and KPMG (BVI), Ltd.'s Unopposed Motion For Leave To Exceed Page Limit (DE 119), Plaintiff Ford's Amended Unopposed Motion For Leave To Exceed Page Limit (DE 139), and Defendant KPMG LLP's Request For Judicial Notice (DE 123). The Court has carefully reviewed said Motions and Request, the entire court file and is otherwise fully advised in the premises.

By prior Orders (DE Nos. 102 & 103), the Court entered Final Orders Of Dismissal based on Stipulations between Plaintiff Leo Ford (hereinafter "Plaintiff") and some Defendants, one of which was construed as a Notice Of Voluntary Dismissal, with respect to some Defendants. After these Final Orders Of Dismissal (DE Nos.

102 & 103) were entered, the remaining Defendants to the above-styled cause were: KPMG LLP, KPMG BVI Limited, KPMG Cayman, James Drury, Russell Crumpler, Belmont Insurance Management, Casey McDonald, Kris Beighton, and Andrea Douglas.

Also by a prior Order (DE 117), the Court dismissed all state law counts, which leaves remaining only Counts I and II. Count I is a Civil Racketeer Influence and Corrupt Organization Act (hereinafter "RICO") claim pursuant to 18 U.S.C. § 1962(c) and Count II is a RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d).

With respect to the first claim, 18 U.S.C. § 1962(c) states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

And, § 1962(d) makes unlawful a conspiracy to violate the previous sections. The definition of "racketeering activity" includes violations of 18 U.S.C. § 1341, for mail fraud, and § 1343, for wire fraud, the predicate offenses asserted in these claims. See 18 U.S.C. § 1961(1). Mail fraud "consists of (1) an intentional participation in a scheme to defraud a person of money or property, and (2) the use of the mails in furtherance of the scheme." United States v. Downs, 870 F.2d 613, 615 (11th Cir. 1989) (citing United States v. Simon, 839 F.2d 1461, 1465 (11th Cir. 1988)). And, wire fraud has identical elements. Pelletier v. Zweifel, 921 F.2d 1465,

1498 (11th Cir. 1991)(citing Carpenter v. United States, 484 U.S. 19, 25 n.6 (1987)).

The Eleventh Circuit held that Fed. R. Civ. P. 9(b) is applicable to civil RICO claims. See Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F. 3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." (citing Fed. R. Civ. P. 9(b)(further citations omitted)). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." In other words, "under Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008). Or, another often quoted description is that Rule 9(b) is satisfied if the complaint sets forth the following:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Ziemba v. Cascade Intern., Inc., 256 F. 3d 1194, 1202 (11th Cir. 2001) (internal quotations omitted).

This heightened pleading requirement of Rule 9(b) is designed

to notify each defendant of the misconduct he or she is accused of committing. Thus, a plaintiff may not lump multiple defendants together because this constitutes impermissible "group pleading." See e.g., Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F. 3d 1364, 1381 (11th Cir. 1997). Instead, a plaintiff must differentiate its allegations. Id.

The precise amount of detail required to meet Rule 9(b) varies from case to case depending on such factors as the pleader's access to the facts and the complexity of the claim. See e.g., In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F. 3d 198, 216 (3d Cir. 2002). And courts have acknowledged several scenarios in which Rule 9(b)'s standards may be relaxed, such as where the relevant information is within the opposing party's exclusive control or where material facts will not be available until discovery. See e.g., U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F. 3d 220, 226 (1st Cir. 2004); In re Rockefeller Center Properties, supra.

The Amended Complaint (DE 43) is long, but it is decidedly lacking in the detail required to conform with Rule 9(b). Very rarely does Plaintiff indicate particular people who engaged in the allegedly false statements that Plaintiff considers to be part of the mail and wire fraud. The specific content of most, if not all, of these statements, is not included. General content is sometimes summarized. Descriptions of what was hoped to be gained by the fraud are also notably lacking.

By the instant Request For Judicial Notice (DE 123), Defendant

KPMG LLP, also known as KPMG USA, asks the Court to take judicial notice, pursuant to Federal Rule of Evidence 201(b), that it is a separate entity from Defendants KPMG BVI Limited and KPMG Cayman. KPMG directs the Court to its website which states: "KPMG International Cooperative ("KPMG International") is a Swiss entity. Member firms of the KPMG network of independent firms are affiliated with KPMG International." https://home.kpmg.com/us/en/home/misc/legal.html. See Florida Evergreen Foliage v. E.I. Dupont De Nemours and Co., 336 F. Supp. 2d. 1239, 1262 n.21 (S.D. Fla. 2004)(taking judicial notice in a RICO case of a statement on a defendant's website that a particular individual was its former president and CEO). But see Lodge v. Kondaur Capital Corp., 750 F.3d 1263, 1273 (11th Cir. 2014) (explicitly stating that while it was not holding that a court should never take judicial notice of a website that a court should exercise caution in doing so and did not abuse its discretion in not doing so).

But, even without taking judicial notice of the status of these three KPMG Defendants, this Request (DE 123) indicates one of many crucial deficiencies in the current Amended Complaint (DE 43). Defendant KPMG LLP is correct that there are numerous instances throughout the Amended Complaint (DE 43) in which Plaintiff conflates the KPMG Defendants and does not specify which entity took a described action. At times Plaintiff uses the collective term "KPMG Defendants," at other times simply "KPMG," and, on some

occasions, Plaintiff references one of the three Defendant entities specifically.

Additionally, because there is nothing in the court file to indicate that Plaintiff has effected service on Defendant KPMG Cayman, by this Order, the Court will require Plaintiff to show good cause for his failure to effect service of process or otherwise show compliance with Federal Rule of Civil Procedure 4(m), or file a notice of voluntary dismissal of Defendant KPMG Cayman.

All of the instant Motions (DE Nos. 121, 122, & 124) argue numerous bases for dismissal. But, because the Court finds that the Amended Complaint (DE 43) falls woefully short of stating its RICO claims with the specificity required, and because Plaintiff, in at least one of his Responses (DE 137) has asked leave to amend should the Court dismiss his current Amended Complaint (DE 43), the Court will dismiss with leave to amend. In Plaintiff's other two Responses (DE Nos. 138 & 139-2), Plaintiff attempts a different tactic. In order to bolster claims asserted against all of the other Defendants, Plaintiff adds facts from supplementary documents, such as his own Affidavit. The Court here cautions Plaintiff that this type of add-on pleading will not be countenanced. Plaintiff is being given the opportunity to amend, and every fact or allegation which Plaintiff believes support his claims <u>must</u> be included <u>within</u> his Amended Complaint. No Defendant

will be called on to answer or in any way respond to allegations and facts spanning multiple filings and documents.

Dismissal on these grounds does not foreclose any of the other arguments Defendants have suggested in the instant Motions (DE Nos. 121, 122, & 124). Instead, the Court focuses on Plaintiff's failure to correctly plead a RICO claim in order that the Court might evaluate any other arguments for dismissal in light of a complaint which adheres to civil RICO pleading requirements, and in which all Defendants may correctly ascertain which allegations are levied against them, a feat which is completely impossible in regard to the current Amended Complaint (DE 43). To illustrate this difficulty, in responding to Defendants Belmont Insurance Management and Andrea Douglas's Motion To Dismiss (DE 121), Plaintiff attempts to set forth a list of paragraphs which he believes refer to these two Defendants. See DE 137, p. 2. This list includes many paragraphs which do not name either of these two Defendants and instead use one of the two general terms referenced above. But, certainly, Plaintiff does not list here every time one of these two general terms is used as a paragraph stating allegations against these two Defendants. Apparently, the two terms indicate different Defendants at different times, and the knowledge of which applies to which is hidden within the mind of Plaintiff.

Both remaining Counts include initial paragraphs which state:

"Plaintiff adopts, reiterates, incorporates by reference and re-alleges each and every allegation in this Amended Complaint (DE 43) as if each were set forth separately herein." ¶¶ 183, 197. In the above-styled cause, this all-inclusive language also promotes confusion because, as noted above, many state law claims are no longer a part of the case, and all included at least some additional facts and elements which would not be pertinent to the remaining RICO claims. Plaintiff fails to delineate which conduct supports which particular claims. In its description and categorization of the history of shotgun pleadings in this Circuit, the court would categorize this Amended Complaint (DE 43) in its "most common type," "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015) ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.")

Another mystifying aspect of the current Amended Complaint (DE 43) is the absence of former Plaintiff Boston Life and Annuity. The primary reason that the Court comments on this absence is that, based on the facts pled, it is uncertain if as to all the damages

alleged, Plaintiff is actually claiming they are his own individual damages, or if, perhaps, some of these damages actually belong to former Plaintiff Boston Life and Annuity. Plaintiff states: "Ford is not suing to recover BLA's assets or damages. Ford is suing to recover his own damages." DE 43, ¶ 6. But, later descriptions seem to undercut this statement by, at times, describing a particular loss as Plaintiff's own loss, and at other times describing this loss as that of Boston Life and Annuity. See Id., ¶ 17 ("While Ford may have known before April 21, 2012, that the Barros Defendants were competing against the BLA Group, Ford did not first have reason to know of the conspiracy between the Barros Defendants, the KPMG Defendants, and Greenberg Trauring, and Ford did not know of the damages caused to Ford in the $2.7 Million diversion until April 21, 2012.") But see, id., ¶ 48 ("BLA lost gross revenues $2.7 million, corporate market value and market position due to this continued conspiracy. Ford was robbed of $675,000 year one as his contract with BLA called for payment of 25% of casualty produce premium."); ¶ 112 ("KPMG/GT/Barros/Bancroft diverted $2.7M of premiums that were supposed to go to Ford and BLA."). It is unclear whether Plaintiff is claiming the $2.7 million dollar loss is solely his own, or whether only a portion is his own loss and a portion is the loss of Boston Life and Annuity. The Court acknowledges that an individual has standing to bring a RICO claim under 18 U.S.C. § 1964(c) as long as "the party's

injuries be the direct result of the alleged racketeering activity," that is, "a plaintiff has RICO standing only if his injuries were proximately caused by the RICO violation." Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc., 140 F.3d 898, 906 (11th Cir. 1998) (citing Pelletier v. Zweifel, 921 F.2d 1465, 1499 (11th Cir. 1991)). But merely because Plaintiff may have been injured as a result of Boston Life and Annuity's injury and may have standing as a result to bring his claim does not necessarily mean that all of Boston Life and Annuity's damages are his own. Obviously, the Court can take no position on this matter at this time, but instead, merely points out that Plaintiff appears to take more than one position in different paragraphs of the Amended Complaint (DE 43). Plaintiff is described at one point as "the beneficial owner of the shares of BLAV [Boston Life and Annuity Company, LTD of St Vincent] and acted as a product development consultant for BLAV." Id. ¶ 20. Earlier, he was described as: "Ford, a principal of BLA ["Boston Life & Annuity"] (BLA and Ford collectively will be referred to the 'BLA Group.')." Id. at ¶ 2. It remains unclear whether any injury to Boston Life and Annuity would accrue entirely and solely to Plaintiff.

Finally, the Court's ruling should not be read as expressing any opinion on the merits of Plaintiff's causes of action. Further, the Court cautions Plaintiff that if Plaintiff's attempt to amend violates any of the defects specifically outlined in this

Order, the Court will not grant any further leave to amend to remedy these same ills. Plaintiff's allegations must put each of the Defendants on notice as to which actions Plaintiff is asserting against it or him or her, and must not violate any of the other dictates contained herein.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendants Casey McDonald, Kris Beighton, Russell Crumpler, James Drury, and KPMG (BVI), Ltd.'s Unopposed Motion For Leave To Exceed Page Limit (DE 119) and Plaintiff Ford's Amended Unopposed Motion For Leave To Exceed Page Limit (DE 139) be and the same are hereby **GRANTED**, in that the Court accepts these pleadings as filed, in excess of the allowable page limit;

2. Defendant KPMG LLP's Request For Judicial Notice (DE 123) be and the same is hereby **DENIED**;

3. Defendants Belmont Insurance Management, Ltd., and Andrea Douglas's Renewed Motion To Dismiss First Amended Complaint (DE 121), Defendant KPMG LLP's Renewed And Amended Motion To Dismiss First Amended Complaint (DE 122), and Defendants Casey McDonald, Kris Beighton, Russell Crumpler, James Drury, and KPMG (BVI), Ltd.'s, Amended Motion To Dismiss Counts I And II Of The First Amended Complaint (DE 124) be and the same are hereby **GRANTED**, consistent with the terms and conditions of this Order;

4. Plaintiff's First Amended Complaint (DE 43) be and the

same is hereby **DISMISSED**, without prejudice with leave to re-file;

5. By noon on Friday, April 20, 2018, Plaintiff shall file an amended complaint in the above-styled cause consistent with the terms and conditions of this Order. Failure to do so will result in the dismissal of the above-styled cause without prejudice and without further notice or hearing; and

6. By noon on Friday, April 20, 2018, Plaintiff shall file a Memorandum showing good cause for the failure to effect service of process on Defendant KPMG Cayman, or otherwise showing compliance with the Federal Rule of Civil Procedure 4(m), or shall file a notice of voluntary dismissal of the above-styled cause, as to Defendant KPMG Cayman, within the foregoing time period. Failure of Plaintiff to timely abide by the terms and conditions of this Order shall result in dismissal of the above-styled cause as to Defendant KPMG Cayman, without prejudice and without further notice or hearing.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 15th day of March, 2018.

William J. Z

WILLIAM J. ZLOCH
Sr. United States District Judge

Copies furnished:

All Counsel of Record