**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**Case No. 9:16-cv-80618-WJZ**

Leo Ford,

Plaintiff,

v.

KPMG LLP; KPMG BVI Limited; KPMG Cayman; James Drury; Russell Crumpler; Belmont Insurance Management; Casey McDonald; Kris Beighton; Andrea Douglas; Greenberg Traurig, P.A.; Greenberg Traurig, LLP; Jerome Hesch; GFAN; ABG; Bancroft Property & Casualty, Ltd. (a/k/a Bancroft Life & Casualty, Ltd., and Bancroft Life & Casualty ICC, Ltd.); Bradley Barros, and Philip Sigel,

Defendants.
_______________________________________ /

**DEFENDANT KPMG LLP 'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [DE 160] AND MEMORANDUM OF LAW**

# TABLE OF CONTENTS


**Cover Page** ..... i

**Table of Contents** ..... ii

**Table of Authorities** ..... iii

**Cases** ..... iii

**Other Authorities** ..... vi

**MOTION** ..... 1

**INTRODUCTION** ..... 1

**MEMORANDUM OF LAW** ..... 2

**I. Ford fails to meet the standards for alleging any claim against KPMG LLP under *Iqbal*** ..... 5

**II. Ford fails sufficiently to allege RICO claims against KPMG LLP** ..... 11

A. Ford fails to allege the predicate acts of mail fraud and wire fraud with specificity ..... 11

B. Ford fails to allege KPMG LLP caused his harm. ..... 14

C. Ford fails to allege KPMG LLP participated in a RICO conspiracy. ..... 15

D. Ford fails to allege that KPMG LLP participated in a RICO enterprise. ..... 16

E. Ford fails to allege continued criminal activity or the threat of continued criminal activity. ..... 17

**III. The bar of the statute of limitations is patent on the face of the SAC.** ..... 18

**IV. Conclusion** ..... 20

**CERTIFICATE OF SERVICE** ..... 21

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.*,
483 U.S. 143 (U.S. 1987) ........................................ 18

*AIG Centennial Ins. Co. v. O'Neill*,
782 F.3d 1296 (11th Cir. 2015) ........................................ 7

*Ambrosia Coal & Constr. Co. v. Pages Morales*,
482 F. 3d 1309 (11th Cir. 2007) ........................................ 3

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ........................................ 14, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................ 3, 5, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................ 3

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.*,
116 F. 3d 1364 (11th Cir. 1997) ........................................ 4

*Carpenter v. United States*,
484 U.S. 19 (1987) ........................................ 3

*Colliton v. Cravath, Swaine & Moore LLP*,
2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) ........................................ 19

*Dep't of Econ. Dev. v. Arthur Anderson & Co. (U.S.A.)*,
924 F. Supp. 449 (S.D.N.Y 1996) ........................................ 16

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
48 F.3d 1260 (D.C. Cir. 1995) ........................................ 17

*Hecht v. Commerce Clearing House, Inc.*,
897 F.2d 21 (2d Cir. 1990) ........................................ 15

*Hemi Grp., LLC v. City of New York, N.Y.*,
559 U.S. 1 (2010) ........................................ 14

*Hourani v. Mirtchev*,
943 F. Supp. 2d 159 (D.D.C. 2013) ........................................ 18

*Jackson v. BellSouth Telecomms.*,
372 F.3d 1250 (11th Cir. 2004) ....................17

*Kelly v. Palmer, Reifler & Assoc., P.A.*,
681 F. Supp. 2d 1356 (S.D. Fla. 2010) ....................16

*Lumax Indus., Inc., v. Aultman*,
543 Pa. 38, 669 A. 2d 893 (1995) ....................7

*Maiz v. Virani*,
253 F.3d 641 (11th Cir. 2001) ....................19

*Menasco, Inc. v. Wasserman*,
886 F.2d 681 (4th Cir. 1989) ....................17

*Miccosukee Tribe of Indians of Fla. v. Cypress*,
814 F.3d 1202 (11th Cir. 2015) ....................16

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008) ....................3

*Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*,
2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) ....................7, 10

*Pelletier v. Zweifel*,
921 F.2d 1465 (11th Cir. 1991) ....................3

*Petri v. Gatlin*,
997 F. Supp. 956 (N.D. Ill. 1997) ....................17

*Ray v. Spirit Airlines, Inc.*,
126 F. Supp. 3d 1332 (S.D. Fla. 2015), *aff'd,* 836 F.3d 1340 (11th Cir. 2016) ....................7

*Ray v. Spirit Airlines, Inc.*,
836 F.3d 1340 (11th Cir. 2016) .................... 14, 15

*Reves v. Ernst & Young*,
507 U.S. 170 (1993).................... 16, 17

*In re Rockefeller Center Properties, Inc. Securities Litigation*,
311 F. 3d 198 (3d Cir. 2002) ....................4

*Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V.*,
2005 WL 1365772 (D.N.J. June 8, 2005) ....................9

*Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V.*,
2005 WL 3658006 (D.N.J. June 7, 2005) ....................9

*Rotella v. Wood*,
528 U.S. 549 (2000) ....................19

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
351 F. Supp. 2d 334 (D. Md. 2004) ....................7, 10

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
380 F. Supp. 2d 509 (D.N.J. 2005) ....................9

*Rubinstein v. Keshet Inter Vivos Tr.*,
2017 WL 7796306 (S.D. Fla. Nov. 1, 2017) ....................18

*Skidmore Energy, Inc. v. KPMG LLP*,
2004 WL 3019097 (N.D. Tex. Dec. 28, 2004) ....................9

*Solomon v. Blue Cross & Blue Shield Ass'n.*,
574 F. Supp. 2d 1288 (S.D. Fla. 2008) ....................11

*U.S. ex rel. Karvelas v. Melrose- Wakefield Hosp.*,
360 F. 3d 220 (1st Cir. 2004) ....................4

*United States v. Downs*,
870 F.2d 613 (11th Cir. 1989) ....................3

*United States v. Simon*,
839 F.2d 1461 (11th Cir. 1988) ....................3

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
1993 WL 8340 (N.D. Ill. Jan. 8, 1993), *aff'd,* 20 F.3d 771 (7th Cir. 1994) ....................5

*White v. Bank of Am. Nat. Ass'n*,
599 Fed. Appx. 379 (11th Cir. 2015) ....................19

*White v. Greenpoint Mortgage Funding Inc.*,
2014 WL 11370418, at *2 (S.D. Fla. 2014) ....................19

*Ziemba v. Cascade Intern., Inc.*,
256 F. 3d 1194 (11th Cir. 2001) ....................3

## OTHER AUTHORITIES

18 U.S.C. § 1341 .......... 3

18 U.S.C. § 1961(1) .......... 3

18 U.S.C. § 1962(c) .......... 3, 16

§ 95.11(4), Fla. Stat. .......... 18

37 Am. Jur 2d Fraud & Deceit §§ 87, 94 .......... 5

## MOTION

Defendant, KPMG LLP, moves pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 10(b),and 12(b)(6), and this Court's Order [DE 155] entered March 15, 2018 (the "March 15 Order") for the entry of an order dismissing with prejudice the claims against KPMG LLP in Plaintiff's Second Amended Complaint [DE 160] (hereinafter the "SAC"), and says:

## INTRODUCTION

The SAC, like the Amended Complaint, remains a self-contradictory, disjointed amalgamation of allegations that are not in compliance with the requirements set forth in the March 15 Order and fail the most basic requirements of federal pleading. That is particularly true of the efforts by plaintiff Leo Ford ("Ford" or "Plaintiff") to state any timely cognizable Racketeer Influenced and Corrupt Organizations Act ("RICO") claim against KPMG LLP. Despite the sheer volume of allegations, now spanning eighty-nine pages and 431 paragraphs, he says very little at all about KPMG LLP, and never quite gets around to alleging anything that could plausibly be considered to be wrongful that he contends KPMG LLP did. Instead, in violation of the March 15 Order, the SAC, like the Amended Complaint, is replete with conclusory and impermissible "group" allegations. Indeed, the only allegations of fact in the SAC against KPMG LLP, as opposed to a group of most or all of the defendants, in the form of simple declaratory sentences are in the following numbered paragraphs:

> 8 KPMG LLP . . . [is an] accounting and management firm[] that represented Ford, BLA, and the Barros Group (identified in paragraph 10 below).
>
> 12 KPMG LLP . . . conduct[s] business in this District.
>
> 18 Ford and BLA retained KPMG LLP to advise and work for Ford and BLA regarding establishing BLA in the BVI, perform accounting and management work, assist in developing insurance products, and representing Ford and BLA. KPMG LLP agreed to not provide similar services to a competitor for the specific casualty insurance products that Ford designed.

> 19 Ford had numerous meetings, phone calls, faxes, and emails with KPMG LLP at its South Florida office. KPMG LLP performed actuarial work for and gave business advice to Ford and BLA. KPMG LLP sent invoices for $25,000 to Ford's South Florida office. Ford and BLA paid KPMG LLP $25,000 for KPMG LLP's work. The invoices were false because KPMG LLP used the work to assist the Barros Group, not just Ford and BLA.
>
> 20 Meetings were held in KPMG LLP's South Florida office regarding the establishment of and management of BLA . . . . KPMG LLP recommended that its "wholly owned subsidiary", KPMG BVI then Belmont, act as Ford's and BLA's insurance manager. KPMG LLP advised Ford to use KPMG BVI, Belmont, and Douglas in the BVI.
>
> 21 BLA was set up with advice from . . . KPMG LLP. KPMG LLP advised Ford to utilize KPMG BVI . . .
>
> 22 KPMG LLP arranged meetings in Miami between Ford and KPMG BVI.
>
> 25 KPMG LLP only operates in the United States, . . .
>
> 27 KPMG LLP agreed to not provide similar services to a competitor for the specific casualty insurance products that Ford designed. . . .
>
> 28 KPMG LLP routinely advises its clients to use KPMG BVI for the clients' tax matters. KPMG LLP advised Ford to use KPMG BVI, Belmont and Douglas
>
> 34 . . . On the recommendation of KPMG LLP in South Florida to Ford, KPMG BVI, Belmont and Douglas took over administration of BLA from Ford in 2003.

Whatever these allegations amount to, they are do not amount to a federal civil RICO claim against KPMG LLP upon which relief can be granted. Thus, Ford has failed, after repeated attempts, to allege a viable and timely federal claim against KPMG LLP. Having had multiple opportunities to properly plead a claim, and having failed to correct the specific pleading deficiencies identified by this Court in the March 15 Order, the claims against KPMG LLP should be dismissed with prejudice.

## MEMORANDUM OF LAW

The standards applicable to a motion to dismiss a typical complaint are well-known. "[T]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The standards applicable to fraud claims and RICO claims based on fraud are much more strict.

As this Court expressed it in the March 15 Order:

> With respect to the first claim, 18 U.S.C. § 1962(c) states:
>
> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> And, § 1962(d) makes unlawful a conspiracy to violate the previous sections. The definition of "racketeering activity" includes violations of 18 U.S.C. § 1341, for mail fraud, and § 1343, for wire fraud, the predicate offenses asserted in these claims. See 18 U.S.C. § 1961(1). Mail fraud "consists of (1) an intentional participation in a scheme to defraud a person of money or property, and (2) the use of the mails in furtherance of the scheme." United States v. Downs, 870 F.2d 613, 615 (11th Cir. 1989) (citing United States v. Simon, 839 F.2d 1461, 1465 (11th Cir. 1988)). And, wire fraud has identical elements. Pelletier v. Zweifel, 921 F.2d 1465, 1498 (11th Cir. 1991) (citing Carpenter v. United States, 484 U.S. 19, 25 n.6 (1987)).
>
> The Eleventh Circuit held that Fed. R. Civ. P. 9(b) is applicable to civil RICO claims. See Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F. 3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." (citing Fed. R. Civ. P. 9(b) (further citations omitted)). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." In other words, "under Rule 9(b), *it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent.*" Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008). Or, another often quoted description is that Rule 9(b) is satisfied if the complaint sets forth the following:
>
> > *(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.*
>
> Ziemba v. Cascade Intern., Inc., 256 F. 3d 1194, 1202 (11th Cir. 2001) (internal quotations omitted).

> This heightened pleading requirement of *Rule 9(b) is designed to notify each defendant of the misconduct he or she is accused of committing. Thus, a plaintiff may not lump multiple defendants together because this constitutes impermissible "group pleading."* See e.g., Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F. 3d 1364, 1381 (11th Cir. 1997). Instead, a plaintiff must differentiate its allegations. Id.
>
> The precise amount of detail required to meet Rule 9(b) varies from case to case depending on such factors as the pleader's access to the facts and the complexity of the claim. See e.g., In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F. 3d 198, 216 (3d Cir. 2002). And courts have acknowledged several scenarios in which Rule 9(b)'s standards may be relaxed, such as where the relevant information is within the opposing party's exclusive control or where material facts will not be available until discovery. See e.g., U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F. 3d 220, 226 (1st Cir. 2004); In re Rockefeller Center Properties, supra.

March 15 Order, 2-4 (emphasis added).

Applying the Court's analysis of the application of that standard to the Amended Complaint, the Second Amended Complaint (DE 160) "is long, but it is decidedly lacking in the detail required to conform with Rule 9(b). Very rarely does Plaintiff indicate particular people who engaged in the allegedly false statements that Plaintiff considers to be part of the mail and wire fraud. The specific content of most, if not all, of these statements, is not included. General content is sometimes summarized. Descriptions of what was hoped to be gained by the fraud are also notably lacking." Indeed, Ford never identifies any individual from KPMG LLP whom ever did or said anything. The closest he comes is a statement attributed to "KPMG LLP's financial services manager" in 2001. SAC ¶ 85. The first half of the allegedly false statement purportedly made in 2001 was that "Ford must use KPMG BVI to set up BLA" with no indication of how that statement was false.[1] The second half of the allegedly false statement purportedly made in 2001 was that "KPMG LLP would assume liability for KPMG BVI's actions" is beyond implausible, but even assuming such a statement were made, there is no explanation how Ford, an individual experienced in the insurance

[1] Indeed, in light of Ford's repeated argument that KPMG LLP only performed services in the United States, and the fact that BLA was to be formed in the British Virgin Islands, it appears that this statement necessarily was true.

business, would accept such a vague oral statement as his insurance against all future loss related to this new venture.[2] Of course, a promise to do something in the future cannot be the basis of a claim for fraud unless the person who made the promise did so without any present intent to perform or with a positive intent not to perform. 37 Am. Jur 2d Fraud & Deceit §§ 87, 94. There are no such allegations here. Even if there were, the mere breach of a guarantee agreement, even if the party allegedly had no intention of honoring the agreement at the time it was made, does not constitute fraud under RICO. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 1993 WL 8340, at *6 (N.D. Ill. Jan. 8, 1993), *aff'd,* 20 F.3d 771 (7th Cir. 1994) (dismissing a RICO claim because the only allegation of fraud was that the defendant made a guarantee and that the defendant "had no intention of honoring the guarantees it gave").

Since Ford has repeatedly failed to meet the minimum standards to plead federal civil RICO claims against KPMG LLP, and cannot justify his failure to do so, those claims should be dismissed with prejudice.

## I. **Ford fails to meet the standards for alleging any claim against KPMG LLP under *Iqbal***

Ford fails to state a claim against KPMG LLP because he fails to say what, if anything, KPMG LLP is supposed to have done that was actually wrongful. Much like the Amended Complaint, the only allegations of acts that are clearly attributed to KPMG LLP are the performance of professional services, and a recommendation, before the existence of alleged RICO conspiracy, that co-defendant KPMG BVI be used to do some work in the British Virgin Islands. Ford alleges that KPMG LLP either recommended that he use KPMG BVI or instructed him that he "must use" KPMG BVI to establish BLA in the British Virgin Islands. SAC ¶¶ 20, 85. However, Ford does not

[2] There is also no allegation that KPMG BVI did anything wrong *in setting up* BLA which is the only activity of KPMG BVI to which this purported guarantee was attached.

allege that this advice was erroneous in any way. Ford also alleges that KPMG LLP provided "actuarial work for and gave business advice to Ford and BLA."[3] SAC ¶ 19. He then alleges that the bill KPMG LLP sent to "Ford and BLA" was "false because KPMG LLP used the work to assist the Barros Group, not just Ford and BLA." *Id.* However, even within the same paragraph the allegation is inconsistent, because Ford acknowledges that KPMG LLP actually performed work, including giving advice, to Ford and BLA. *Id.* Had KPMG LLP not actually done the work for, and given advice to, Ford, Ford would have been aware of this fact and not paid the invoice.[4] No rational reading of Ford's allegation that KPMG LLP actually performed actuarial work and gave business advice to Ford and BLA is consistent with Ford's allegation that the bill for those very services was false.

Ford later includes a similar allegation with even less specificity. After alleging that KPMG BVI assisted the Barros Group in establishing Bancroft Life and Casualty, Ltd., Ford alleges that KPMG LLP "agreed not to provide similar services to a competitor for the specific casualty insurance products that Ford designed." SAC ¶¶ 26-27. In the next sentence, failing to identify whether he is referring KPMG LLP or KPMG BVI, Ford contradictorally[5] alleges that "[t]hen KPMG sent an invoice to Ford in Florida purportedly for KPMG work for Ford in the United States, which was a fraud because the work was for Ford's competitor Barros." SAC ¶ 27. Given the lack of clarity in the allegations, KPMG LLP is left to guess whether Ford is alleging that KPMG

---

[3] BLA is no longer a plaintiff. Ford says nothing in the SAC to explain how any work done for BLA could constitute a claim he has standing to pursue.

[4] Alternatively, had KPMG LLP not actually performed the actuarial work or given advice to Ford, he would have been aware of this fact at the time and been put on notice of the damages from the RICO conspiracy he claims he first discovered after April 21, 2012.

[5] Ford alleges in later paragraphs that it was KPMG BVI that worked for Barros without mentioning KPMG LLP. *See* SAC ¶¶ 35-36, 46, 50, 54, 98, 133, 163, 165, 172.

BVI sent him a bill for work that was actually for Barros, or KPMG LLP sent the bill for work that Ford specifically alleged included work for Ford and BLA. *See* SAC ¶¶ 19, 27.

Ford tries to bolster his allegations by conflating KPMG LLP with various other KPMG member firms. For instance, he alleges that an unnamed person at KPMG LLP told him that KPMG BVI was KPMG LLP's "wholly owned subsidiary." SAC ¶ 20. Such reckless allegations cannot save his claims. This allegation is blatantly false and Ford and his attorney know it: "It is well recognized that '[m]ember firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name.'" *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 385 n. 41 (D. Md. 2004) (quoting *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP,* 2004 WL 112948, *3 (S.D.N.Y. Jan. 22, 2004)).

Even if KPMG BVI were a subsidiary of KPMG LLP, which it is not, and even if KPMG BVI did something wrong, which it did not, the misconduct of a company cannot be attributed to its shareholders simply because they are shareholders. *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296 (11th Cir. 2015) (citing with approval *Lumax Indus., Inc., v. Aultman*, 543 Pa. 38, 669 A. 2d 893, 895 (1995) for the proposition that "the general rule is that a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person."). There is nothing in the SAC that would obviate the application of that basic principle. Far from establishing that KPMG BVI's actions should be attributed to its alleged shareholder, Ford never even alleges that KPMG BVI's actions are attributable to KPMG LLP (except for the untenable claim that any actions by KPMG BVI that were taken in the United States were actions of KPMG LLP).[6]

[6] If KPMG BVI is KPMG LLP's wholly owned subsidiary, however, then there is no RICO conspiracy because there are no distinct members to form a RICO conspiracy. *Ray v. Spirit Airlines, Inc.*, 126 F. Supp. 3d 1332, 1340 (S.D. Fla. 2015), *aff'd,* 836 F.3d 1340 (11th Cir. 2016) ("One such

Despite this Court's explicit instructions that Ford specify which of the defendants in this case took a described action, Ford once again tries to attribute wrongdoing generally to "KPMG Defendants," which he defined to include KPMG LLP, KPMG BVI, Drury, Crumpler, Belmont, McDonald, Beighton and Douglas. SAC ¶ 2. For instance, Ford alleges that the "KPMG Defendants manage and are liquidators of BLA," but never includes a single allegation that KPMG LLP itself managed or is a liquidator of BLA. SAC ¶ 2. Ford goes on to repeat a similar statement four times throughout the SAC: that "the KPMG Defendants admitted" in writing, emails or letters, that annuity policy assets are separate from the annuity company or the "KPMG Defendants" claim that property from an annuity Ford claims to own is owned by BLA and the liquidation estate. SAC ¶¶ 3, 59, 66, 73, 113, 116, 120, 128, 132, 137, 178. In another example of the inappropriate use of "KPMG Defendants," Ford alleges that KPMG BVI, Belmont, Douglas, McDonald, Beighton, Crumpler and Drury have been overcharging fees to BLA in liquidation "for the personal betterment of all the KPMG Defendants." SAC ¶ 51. However, Ford gives no indication of how other parties overcharging fees was to the "personal betterment" of KPMG LLP.

Indeed, Ford admits in his allegations that "KPMG LLP only operates in the United States, and the other KPMG entities are separate and only operate in the BVI or the Cayman Islands" SAC ¶ 25. Moreover, in his pleading he has separate caption headings for allegations against each of the separate defendants, SAC ¶¶ 18, 23, 27, 28, 30, 32, 35 and 38, thus recognizing their separateness.[7]

---

circumstance is where an alleged "enterprise" is comprised only of subsidiaries, agents, or employees of the corporation, acting in concert for routine business affairs. Ample case law in this circuit, left undisturbed by *Boyle,* supports the narrower view that such entities should be treated as indistinct for the purposes of a civil RICO claim."). The only parties in this case are KPMG LLP and KPMG BVI and its employees. SAC ¶ 8; n. 1.

[7] Paragraphs 87-95 under the heading KPMG LLP using a false syllogism explained, *infra*, at 11, attempt to blur the distinction, but the admission of separateness still stands.

Ford continues his use of "KPMG Defendants" throughout the SAC. *See* SAC ¶¶ 3-5, 12-13, 15-16, 21, 25, 31, 40, 51, 59, 66-67, 73, 79, 82, 84-85, 87, 89, 94, 103-104, 113, 116, 120, 128, 132, 137, 147, 151-155, 157, 160, 162, 168, 171, 177-179, 180-182, 184, 187-191, 194-200, 202-203, 205-211, 214-219, 221, 238, 245, 291, 373, 375-376, 379, 392-393, 400-406, 408, 410, 412, 415-417, 421-423, 425-426. This kind of confusing, imprecise allegation does not meet the requirements of pleading RICO, much less RICO based on fraud, and is, transparently, an improper attempt to implicate KPMG LLP in conduct Ford knows it did not do. This is also exactly the imprecise pleading that this Court instructed Ford to correct in the March 15 Order. March 15 Order at 5-6. Like many other courts who have addressed similar issues, this Court should reject Ford's attempt to attribute conduct to KPMG LLP based on allegations that relate to other member firms. *In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 571 (D.N.J. 2005) (relying on statements on www.kpmg.com in rejecting argument that all KPMG entities were part of a single firm); *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V.*, 2005 WL 1365772, at *7 (D.N.J. June 8, 2005) (rejecting a "one firm" theory that the KPMG entities were part of a single, worldwide firm of accountants because "the international KPMG organization is an association of distinct offices/companies."); *Skidmore Energy, Inc. v. KPMG LLP*, 2004 WL 3019097, at *4-5 (N.D. Tex. Dec. 28, 2004) (dismissing RICO claims against KPMG LLP when acts were alleged to have been committed by a KPMG entity in Morocco).

Ford also suggests the untenable claim that any acts performed by KPMG BVI that touched the United States are automatically acts of KPMG LLP. SAC ¶¶ 23-25, 87-95, 378. It is a legal principle so basic that it rarely needs to be stated: a foreign company may act in the United States, even if that action is wrongful. *See Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V.*, 2005 WL 3658006, at *1 (D.N.J. June 7, 2005) (considering whether a KPMG entity from the United

Kingdom and had sufficient contacts with the United States to establish personal jurisdiction, determining that specific personal jurisdiction existed and not stating that the United Kingdom KPMG's actions in the United States were the actions of KPMG LLP). Further, "[i]t is well recognized that '[m]ember firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name.'" *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 385 n. 41 (D. Md. 2004) (rejecting the argument that Deloitte & Touche LLP in the United States was the same entity as the Deloitte & Touche Accountants in the Netherlands) (quoting *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP,* 2004 WL 112948, *3 (S.D.N.Y. Jan. 22, 2004)).

Interestingly, Ford never actually alleges that all of the actions of KPMG BVI, Beighton, McDonald, Crumpler, Drury, Douglas or Belmont are acts of KPMG LLP. Rather, he quotes a statement from KPMG.com, which states that "Services are provided solely by member firms in their respective geographic areas," and then constructs the false syllogism that "if" KPMG BVI, KPMG Cayman, Belmont, Douglas and McDonald only act within their jurisdictions, then any actions taken in the United States "a fortiori must have been taken by KPMG LLP" by substituting the word "act" for the words "services are provided." SAC ¶¶ 23-25, 87. The only logical interpretation of the statement on the website is that "services are provided" TO CLIENTS in the "member firms . . . respective geographic area." Here, anything KPMG BVI, KPMG Cayman, Belmont, Douglas and McDonald did in the United States was in the course of their providing services to their clients in their respective geographic areas. Those actions do not become the actions of KPMG LLP just because they were done in the United States by the other firms for the other firms' offshore clients. Thus, while Ford *argues* that every action in the United States was an action of KPMG LLP, the argument is nothing more than a hypothesis based on a twisted

interpretation of admitted facts. Absent sufficient factual allegations supporting the conclusion that all actions within the United States are the actions of KPMG LLP, Ford's suggestion is meaningless.

Finally, in a series of bizarre allegations, Ford appears to allege that all of the independent KPMG firms worldwide, associated through the KPMG International Cooperative, are part of a vast RICO conspiracy. SAC ¶¶ 153, 192, 214, 218, 377. This allegation is absurd. Stated more temperately, it is the definition of implausible.

## II. Ford fails sufficiently to allege RICO claims against KPMG LLP

In an ill-advised attempt to bring his hodge-podge of groundless claims into this Court, Ford has cobbled together a pleading that purports to state a federal RICO claim within this Court's federal question jurisdiction. However, Ford has failed properly to allege such a claim in either Count I or Count II, thus, both of those claims must be dismissed.

### A. Ford fails to allege the predicate acts of mail fraud and wire fraud with specificity

Ford's RICO claims only allege instances of purported mail and wire fraud as predicate acts. SAC ¶¶ 82-84. Mail and wire fraud must be pled with specificity. *See Solomon v. Blue Cross & Blue Shield Ass'n.*, 574 F. Supp. 2d 1288, 1293 (S.D. Fla. 2008). In the March 15 Order, this Court explained the deficiencies in Ford's First Amended Complaint:

> Very rarely does Plaintiff indicate particular people who engaged in the allegedly false statements that Plaintiff considers to be part of the mail and wire fraud. The specific content of most, if not all, of these statements, is not included. General content is sometimes summarized. Descriptions of what was hoped to be gained by the fraud are also notably lacking.

March 15 Order at 4. In the SAC, Ford fails to correct the deficiencies as to KPMG LLP.

In his attempt to clarify exactly what each Defendant stated that was fraud, Ford clearly demonstrates the deficiencies in his pleading as to KPMG LLP. Ford only alleges two acts by KPMG LLP: recommending KPMG BVI, and sending a bill for actuarial work and business advice

provided to Ford and BLA. Neither allegation contains the requisite specificity of person, place, time, falsehood and gain required to plead fraud.

Ford alleges that "KPMG LLP's financial services manager," in both Miami, Florida and Deerfield, Florida stated that "Ford must use KPMG BVI to set up BLA but KPMG LLP would assume liability for KPMG BVI's actions." SAC ¶ 85. However, Ford does not allege that this advice was erroneous in any way. Nothing in the SAC, moreover, explains how this advice fit into a RICO enterprise, much less why this amounts to a claim against KPMG LLP. Further, Ford alleges that the advice was given in March 2001, more than 14 years before this case was filed and a full year before Ford alleges the RICO conspiracy was actually formed. *Id.* at ¶¶ 85, 189. Although Ford may have successfully alleged the general substance of a statement and the general time when it was made, he still fails to identify who made the statement, instead alleging a general job title that does little to identify which KPMG LLP representative actually made the statement. Further, Ford alleges two locations where the statement was made, Miami and Deerfield (which is not a city in Florida), although his allegation indicates it was a single statement. Importantly, Ford fails to allege how the *statement* misled Ford. Instead, Ford alleges that he "wanted" an accounting and management firm subject to United States law, but never alleges that he informed KPMG LLP of this desire, or that KPMG LLP's recommendation misled him into thinking KPMG BVI would be subject to United States law. *Id.* Further, in trying to describe how the recommendation of KPMG BVI misled him, Ford returns to his vague and general allegations that "now the KPMG Defendants hid information from Ford in the BVI and dispute jurisdiction, invoices for work done by KPMG LLP that KPMG LLP represented was for Ford when in fact the work was also done for Ford's competitor the Barros Group." *Id.* Rather than identifying how the mere recommendation of (or even instruction to use) KPMG BVI misled him, Ford complains about how the current case is being defended by

various defendants and raises the bill for actuarial services that Ford alleges KPMG LLP performed, which has nothing to do with a recommendation of KPMG BVI. Finally, as explained in Section II.B., *infra*, Ford's damages claim is wholly unconnected with Ford's allegations regarding how damages were caused, which excludes KPMG LLP entirely.

The second allegedly fraudulent statement Ford alleges is contradicted by his own pleading and also fails to meet the pleading requirements for fraud. Ford alleges that, in July 2003 in Deerfield, Florida (which is not a city in Florida), KPMG LLP's "financial services manager in Miami" made a statement, although the actual statement is unclear. Ford alleges that the content of the statement was: "invoices for work done by KPMG LLP that KPMG LLP represented was for Ford when in fact the work was also done for Ford's competitor the Barros Group." SAC ¶ 86. Ford's allegation is unclear as to whether the "statement" was made by the "financial services manager in Miami," or whether the "statement" was the invoice. As with the allegation regarding the recommendation of KPMG BVI, Ford again fails to identify the "financial services manager." Additionally, Ford's own allegation contradicts his claim of fraud: he alleges that the work in the invoice was actually done for Ford and BLA, and that it was also done for the Barros Group. If the work in the invoice was done for Ford and BLA, then the invoice was not fraudulent. Finally, Ford fails to allege how the invoice misled him in a way connected with the alleged RICO conspiracy. Ford alleges that the invoice, for work he alleges was performed for Ford and BLA, caused him to disclose his insurance policy design, which KPMG LLP then gave to a competitor. *Id.* However, this allegation is contradicted by Ford's other allegations, in which he states that KPMG BVI, Belmont and Douglas, not KPMG LLP, worked with the Barros Group to establish a competitor (SAC ¶ 26), and that KPMG BVI, Belmont and Douglas, not KPMG LLP, gave Ford's products and ideas to the Barros Group to set up a competitor (SAC ¶ 35). Finally, as explained in Section II.B., *infra*,

Ford's damages claim is wholly unconnected with Ford's allegations regarding how damages were caused, which excludes KPMG LLP entirely.

**B. Ford fails to allege KPMG LLP caused his harm.**

A plaintiff asserting a RICO claim must allege not just "but-for" causation, but also that the defendant is the proximate cause of the plaintiff's injury. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006). This requires a direct causal relationship between the alleged RICO violation and the harm. *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 2 (2010). When the harm alleged is distinct from the defendant's actions, there is no proximate causation. *Anza*, 547 U.S. at 458 (holding that, when the plaintiff alleged harm to its business because the defendant filed false tax returns that allowed the defendant to undercut the plaintiff's prices, the harm to the plaintiff (lower prices) was distinct from the alleged RICO violation (defrauding the state), and thus, the plaintiff failed to allege causation necessary to maintain a RICO claim). "The connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016).

Rather than alleging that KPMG LLP caused Ford's injuries, Ford alleges that all of the Defendants *except* KPMG LLP caused his injuries. Ford includes a nearly six page section on causation, which fails to discuss KPMG LLP in any way, demonstrating that KPMG LLP did not cause Ford any harm. SAC ¶¶ 161-179. In discussing causation, Ford alleges that KPMG BVI, Belmont and Douglas diverted $2.7 million in premiums away from Ford and BLA, and discusses the BLA liquidation that Ford alleges was performed by KPMG BVI, Belmont, Douglas, McDonald, Beighton, Drury and Crumpler, but not KPMG LLP. SAC ¶¶ 161-170. In paragraph 171, Ford includes a chart listing "Ford's Personal Damages," with a total "Loss to Ford" of $179,837,000, and including a column containing "People/Organizations Involved." SAC ¶ 171.

KPMG LLP is not named in the chart. *Id.* Ford also alleges that KPMG BVI, Belmont, Douglas, McDonald, Beighton, Drury and Crumpler, but not KPMG LLP, refuse to protect assets in an annuity policy Ford alleges he owned, and refuse to give him assets from the annuity policy. SAC ¶¶ 175-178. Thus, Ford's allegations show that KPMG LLP did *not* cause him harm.

The only potential allegation of causation as to KPMG LLP, contradicted by Ford's own causation section, is in Ford's section alleging "Predicate Acts," in which Ford alleges that KPMG LLP caused him $182,416,000 in damages because it recommended KPMG BVI, and sent him an invoice for actuarial services and business advice that Ford alleges was at least, in part, performed for Ford and BLA. SAC ¶¶ 85-86. However, as in *Anza*, the alleged RICO violation – sending an invoice and recommending KPMG BVI – is entirely distinct from the alleged harm: "lost income, lost clients, lost reputation in the insurance business." SAC ¶¶ 85-86. Yet, Ford's claim that KPMG LLP's invoice and recommendation caused damages of $182,416,000 is greater than the total damages he claims in the chart in paragraph 171. KPMG LLP's invoice and recommendation is also entirely distinct from the harm Ford alleges the other Defendants caused him in the causation section: diversion of a $2.7 million insurance premium, loss of investment in BLA, cash and equity loss in BLA, contracts with BLA, loss of an annuity and the property in the annuity, and loss of earnings, reputation and ability to do business. SAC ¶ 171. At best, the harm Ford alleges he suffered is "remote, purely contingent, [and] indirect," from KPMG LLP's actions and is not sufficient to sustain a RICO claim. *Ray*, 836 F.3d at 1349.

**C. <u>Ford fails to allege KPMG LLP participated in a RICO conspiracy.</u>**

"Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). As seen from the few allegations that

directly relate to KPMG LLP, Ford fails to plead the most basic element of a RICO conspiracy—an agreement by KPMG LLP to participate in the alleged conspiracy. All of Ford's allegations regarding the alleged conspiracy include general allegations that the "KPMG Defendants" had a conspiracy. In his few allegations regarding the formation and participation in a RICO conspiracy, Ford states in conclusory terms that "[t]he KKPMG [sic] Defendants are an association-in-fact RICO enterprise and conspiracy in Florida and the United States to ruin Mr. Ford's reputation and steal all his assets and money" and "[t]he KPMG Defendants agreed to the common purpose of the conspiracy and committed predicate acts." SAC ¶¶ 187-188. This sort of recitation of a bare legal conclusion, devoid of well-pleaded facts, that is "not entitled to the assumption of truth" under *Iqbal, supra* at 678. For this reason, a vague and conclusory allegation that all eight defendants collectively identified as the "KPMG Defendants" were part of a conspiracy wholly fails to meet the particularity requirement of Rule 9(b). *See Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1212-13 (11th Cir. 2015) (314 page second amended complaint failed to state RICO fraud claims with particularity).

**D. <u>Ford fails to allege that KPMG LLP participated in a RICO enterprise.</u>**

The Supreme Court has established that "one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). Ford, however, has alleged at most that KPMG LLP provided actuarial services and gave business advice to Ford or BLA, and that KPMG LLP recommended KPMG BVI. Merely providing professional services, even to a racketeering enterprise, is not sufficient to state a claim under § 1962(c). *Dep't of Econ. Dev. v. Arthur Anderson & Co. (U.S.A.)*, 924 F. Supp. 449, 466 (S.D.N.Y 1996) ("Many other courts faced with post-*Reves* §1962(c) claims against outside professionals have agreed that providing important services to a racketeering enterprise is not the same as directing the affairs of the enterprise."); *Kelly v. Palmer, Reifler & Assoc., P.A.*, 681 F. Supp. 2d

1356, 1380-81 (S.D. Fla. 2010) ("Courts following *Reves* have generally held that the provision of traditional legal services does not constitute the 'operation or management' of an enterprise for purposes of RICO liability."); *Petri v. Gatlin*, 997 F. Supp. 956, 986 (N.D. Ill. 1997) ("As the Supreme Court made clear in *Reves*, however, the 'management' of an enterprise's accounting matters is not synonymous with the 'operation or management' of that enterprise under RICO."). As a matter of law, these allegations are insufficient to turn Ford's claims into one for participation in a RICO enterprise.

**E. <u>Ford fails to allege continued criminal activity or the threat of continued criminal activity.</u>**

Ford does not—and cannot—allege continued criminal activity or the threat of continued criminal activity. Ford alleges only the existence of a discrete event – the collapse of BLA and its purported subsequent looting. Even taking Ford's allegations as true, they do not suffice to support a RICO claim. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1266-67 (11th Cir. 2004). "Indeed, in cases like this one, where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." *Id.* at 1267. Courts have gone so far as to state that "the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiffs to state a RICO claim." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (dismissing RICO complaint). Congress imposed the continuity requirement precisely to prevent this type of misapplication of RICO's treble damages remedy to ordinary commercial misconduct. *See, e.g.*, *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 685 (4th Cir. 1989) ("If the pattern requirement has any force whatsoever, it is to prevent . . . ordinary commercial fraud from being transformed into a federal RICO claim.").

Ford's attempts to show continued criminal activity fail. Ford appears to allege that all of the independent KPMG firms worldwide, associated through the KPMG International Cooperative, are part of a vast RICO conspiracy, although he fails to identify how that worldwide conspiracy is in any way connected to his claim that the liquidators of BLA will not give him property he claims is his. SAC ¶¶ 214, 218. Ford also adds extremely vague allegations that "[t]hree BLA policyholders, 10 other U.S. clients including an IRA account, and 3 non-U.S. persons lost their money from the KPMG Defendants' RICO conspiracy," that "[o]ther annuitants lost their money that was supposed to be in segregated accounts," and that the "KPMG Defendants" charged excessive fees to a person named Fred Best. SAC ¶ 215. These allegations are so vague as to be meaningless, but even if accepted, they still involve a single, discrete event: the BLA liquidation.

Ford is clearly attempting to misapply RICO's treble damages remedy for his own devices in a situation that amounts to, at worst, breaches of contract or breaches of professional duties for which applicable statutes of limitation would have long since expired. § 95.11(4), Fla. Stat. (statute of limitations for professional malpractice is two years).

## III. <u>The bar of the statute of limitations is patent on the face of the SAC.</u>

A civil RICO claim has a four-year statute of limitations running from the date the plaintiff first knew or should have known of his injury. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156-57 (U.S. 1987). It was obvious from the face of the Amended Complaint that Ford first suffered injury when BLA was thrown into receivership in 2007 causing him to lose his investment as well as the opportunity of future income from BLA. Amended Complaint, ¶¶ 2, 122. Given the opportunity to replead, Ford has disingenuously left out that specific allegation.[8]

[8] Although an amended pleading generally supersedes and replaces the prior pleading, "'[a] plaintiff ... may not plead facts in their amended complaint that contradict those in their original complaint.'" *Rubinstein v. Keshet Inter Vivos Tr.*, 2017 WL 7796306, at *3 (S.D. Fla. Nov. 1, 2017) (quoting *Hourani*

However, Ford still alleges "McDonald, Beighton (and subsequently Crumpler and Drury) were appointed Joint Liquidators February 27, 2008 . . . KPMG BVI, McDonald, Beighton, Crumpler, and Drury had a conflict in representing Ford and BLA and then acting as liquidator of BLA." SAC ¶ 54. The placing of BLA in receivership clearly would have injured Ford, and he necessarily would have known about any relationships between BLA and the appointed liquidators at the time they were appointed as he claims they provided services to him and BLA before the receivership. SAC ¶¶ 32-34, 54 Thus, Ford knew or should have known of his injury more than four years before this action was filed. Whether or not Ford realized that his injury was the result of a RICO conspiracy is irrelevant as a civil RICO claim accrues and the four-year limitations period begins to run "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." *Maiz v. Virani,* 253 F.3d 641, 676 (11th Cir. 2001) (citing *Rotella v. Wood,* 528 U.S. 549, 555 (2000)). *See also, White v. Greenpoint Mortgage Funding Inc.*, 2014 WL 11370418, at *2 (S.D. Fla. 2014) (RICO complaint dismissed on 12(b)(6) motion based on statute of limitations grounds where complaint alleged injury occurring more than four years before complaint filed), *aff'd sub nom. White v. Bank of Am. Nat. Ass'n*, 599 Fed. Appx. 379 (11th Cir. 2015). This is especially so when the last act of KPMG LLP alleged in the SAC occurred in 2003 when KPMG LLP allegedly recommended that KPMG BVI, Belmont and Douglas "take over administration" of BLA.

---

*v. Mirtchev*, 943 F. Supp. 2d 159, 171 (D.D.C. 2013)). Further,"'[w]here a plaintiff blatantly changes his statement of the facts in order to respond to the defendants['s] motion to dismiss ... [and] directly contradicts the facts set forth in his original complaint a court is authorized to accept the facts described in the original complaint as true." *Id.* (quoting *Colliton v. Cravath, Swaine & Moore LLP,* 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008)).

## IV. CONCLUSION

This Court gave Ford specific instructions on how his pleading must be corrected in the March 15 Order. This Court warned Ford that "the Court will not grant any further leave to amend to remedy these same ills." March 15 Order at 11. Ford failed to remedy his pleading deficiencies, and for that reason and the additional grounds of the bar of the statute of limitations, the absence of sufficient allegations of any continuing criminal conspiracy and the other grounds set forth in this motion, this Court should dismiss Plaintiff's Second Amended Complaint as to KPMG LLP with prejudice.

*/s/ Edward A. Marod*
**EDWARD A. MAROD**
Florida Bar No. 238961
Primary: emarod@gunster.com
Secondary: eservice@gunster.com
Secondary: dpeterson@gunster.com
**JOHN W. TERWILLEGER**
Florida Bar No. 107095
Primary: jterwilleger@gunster.com
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401-6194
Telephone: 561-655-1980
Facsimile: 561-655-5677
*Counsel for Defendant KPMG LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that before 12:00 Noon on May 11, 2018, I electronically filed the foregoing Motion with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notices of Electronic filing generated by CM/ECF.

Paul Platte, Esq. paul@paulplatte.com

David A. Freedman, Esq. dfreedman@coffeyburlington.com

Jeffrey Bast, Esq. jbast@bastamron.com

Jeremy J. Hart, Esq. jhart@bastamron.com

Jeremy S. Korch, Esq. jkorch@bastamron.com

Stuart H. Singer, Esq. ssinger@bsfllp.com

Sashi C. Bach, Esq. sbach@bsfllp.com

Sabria A. McElroy, Esq. smcelroy@bsfllp.com

Traci H. Rollins, Esq. traci.rollins@squirepb.com

Jason D. Joffe, Esq. jason.joffe@squirepb.com

Ricardo Marenco, Esq. ricardo.marenco@squirepb.com

*/s/ Edward A. Marod*
**Edward A. Marod**

WPB_ACTIVE 8485050.5