**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:16-cv-80618-WJZ**

Leo Ford and Boston Life and Annuity,

Plaintiff,

vs.

KPMG LLP; Belmont Insurance Management; Casey McDonald; Kris Beighton; Andrea Douglas; Greenberg Traurig, P.A.; Greenberg Traurig, LLP; Jerome Hesch; GFAN; ABG; Bancroft Property & Casualty, Ltd., (aka Bancroft Life & Casualty, Ltd., and Bancroft Life & Casualty ICC, Ltd.); Bradley Barros; and Philip Sigel,

Defendants.
_______________________________________/

**DEFENDANTS' BELMONT INSURANCE MANAGEMENT, LTD. AND ANDREA DOUGLAS MOTION TO DISMISS LEO FORD'S SECOND AMENDED COMPLAINT**

Defendants, Belmont Insurance Management, Ltd. ("Belmont") and Andrea Douglas ("Douglas,") (collectively the "Defendants"), by and through their undersigned counsel and pursuant to Rules 12(b)(2), 12(b)(6) and 41(b); Fed. R. Civ. P., hereby move to dismiss Plaintiff, Leo Ford's Second Amended Complaint (D.E. 160) (the "Complaint"), with prejudice and as grounds therefor state:

## INTRODUCTION

Ford once again mendaciously accuses Belmont and Douglas of being racketeers, and again fails to state a claim. Ford has ignored the Court's Order granting the Defendants' Motion to Dismiss Ford's Amended Complaint (D.E. 155), which instructed him to comply with Rule 9(b), Fed. R. Civ. P. Ford's Second Amended Complaint (D.E. 160) (the "Complaint") now sprawls across 89 tedious pages. Despite its morbid obesity, the allegations of the current

Complaint are made with even less particularity than Ford's last effort, and it remains a "shotgun pleading." Like a stuck record, Ford stammers out variations of the same handful of vague, self-contradictory and conclusory statements again and again. The allegations of the Complaint remain as impenetrable, implausible and indefinite as ever. Ford's idea of compliance with the Court's Order is to just add Belmont and Douglas' names to paragraphs alleging the wrongdoing of the other Defendants. Thus, Ford continues to lump the Defendants together in a manner which makes it impossible to determine who is supposed to have done what.

Moreover, Ford lacks standing to seek damages for wrongs allegedly committed against his former employer, Boston Life & Annuity ("BLA") and has not alleged that he is authorized to make claims on behalf of his estranged wife, Mary or their minor grandson, Kenneth.

Even assuming Ford had a genuine grievance to assert on his own behalf, the statute of limitation has long since elapsed, barring his claims. Ford has not, and cannot state claims for RICO; Belmont and Douglas are not subject to the personal jurisdiction of this Court; and Ford has failed to make allegations showing that the extraordinary and implausible damages he claims to have suffered were proximately caused by the Defendants' conduct. The Court should grant the Defendants' Motion, and this time, dismiss Ford's claims with prejudice.

## MOTION

1. Ford filed his original complaint (D.E. 1) on April 20, 2016. Belmont was served on July 11, 2016. Douglas was served on July 26, 2016. Service on both Defendants was made in the British Virgin Islands.

2. Plaintiff filed his First Amended Complaint on August 9, 2016. (D.E. 43).

3. The Court dismissed the First Amended Complaint without prejudice on March 15, 2018 (D.E. 155). In its Order, the Court stated that the First Amended Complaint was

"decidedly lacking in the detail required to conform with Rule 9(b)." Order at p.4. The Order also noted that Ford had a tendency to lump the Defendants together into a group without alleging who did what. The Court characterized the Amended Complaint as the "most common type" of shotgun pleading, which fails to give proper notice to the defendants "of the claims against them and the grounds upon which each claim rests." Order at 8. The Court pointed out that the allegations were unclear as to whether the damages alleged in the Amended Complaint belonged to Ford or to BLA, thus, calling Ford's standing into question. Order at pp. 9-10. The Order preserved the Defendants' other arguments, not addressed in the Order, and allowed Ford one more chance to properly allege his claims in a manner that puts "each of the Defendants on notice as to which actions Plaintiff is asserting against it or him or her…". Order at p. 11.

4. The latest Complaint fails to correct these fundamental, threshold problems and has actually aggravated them. The Complaint swerves from one vaguely alleged, implausible event to another, seemingly unrelated and equally implausible event, few of which are anchored to clearly alleged dates or specific documents.[1] These vaguely alleged, long ago episodes are repeated again and again, but with variations in their facts and sequences, which sometimes contradict the previous version, making it impossible to understand what exact wrongs Ford has suffered, if any, how and to what extent he has been damaged, and who among the Defendants, visited these wrongs upon him.

5. The current Complaint violates Rule 8(a), Fed. R. Civ. P., which requires pleadings to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"; and Rule 8(d) which requires each allegation to be "simple, concise and direct." The

---

[1] Despite their vital importance to his claims, Ford fails to attach any of the alleged examples of mail or wire fraud to his Complaint.

Complaint remains a shotgun pleading with its mass of randomly connected, vaguely phrased allegations all indiscriminately incorporated into the two RICO counts.

6. The Complaint is plagued by many other defects, previously identified by Belmont, Douglas and the other Defendants. First, The Complaint fails to properly allege a RICO "enterprise"; the manner in which the each of the Defendants acted with relation to the "enterprise"; and fails to state a claim for violation of either 18 USC §1962(c) or (d). Ford's allegations of the necessary elements of RICO, as well as his allegations of venue and jurisdiction are expressed in meaningless, formulaic words, equivalent to the "threadbare recitals of the elements of a cause of action supported by mere conclusory statements," condemned by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In fact, Ford's allegations are so implausible and conclusory on their face that they fail to state any claim at all. In addition, the allegations of the Complaint admit that the RICO claims are barred by the applicable four year statute of limitation.

7. Belmont and Douglas are not subject to the personal jurisdiction of the Court, and Ford has failed to properly allege any basis for in personam jurisdiction over them.

8. Ford also continues to conflate himself with BLA, undermining his standing to seek damages. Nor has Ford alleged that he is authorized to bring claims on behalf of his estranged wife, Mary allegedly a co-owner of the annuity which formerly owned the Dolphin Cove lands, or his grandson, Kenneth who is alleged to be the beneficiary of the annuity.

WHEREFORE, Belmont and Douglas request the Court to enter an Order dismissing the Complaint with prejudice; or in the alternative granting final summary judgment in favor of Defendants; and if the case is dismissed with prejudice or disposed of on summary judgment, to reserve jurisdiction to determine and award Belmont and Douglas their reasonable attorney's

fees and court costs incurred in their defense of this matter; together with such other and further relief as the Court deems appropriate.

## DISCUSSION

### A. Summary of the Allegations

Despite its prolixity, the Complaint actually alleges only three, possibly four events which allegedly caused Ford damages. First, Ford alleges that in 2002, "KPMG BVI, Belmont and Douglas diverted $2.7 million in premium payments by that were intended for an insurance program offered by Ford and BLA." Complaint ¶48. Ford continues to claim he learned of this and the conspiracy allegedly underlying it, in April 2012 while reading "about a Federal Court case involving the Barros Group." Complaint ¶14.

The next episode is the liquidation of BLA, which Ford alleges commenced in February 2008, when Defendants, McDonald and Beighton were appointed as its liquidators. Complaint ¶54. Ford alleges this was a scheme which damaged him through the loss of "fees, clients, business and reputation in the insurance business." Id.

Ford, then flashes back to the period before the liquidation, alleging that while KPMG BVI, Belmont and Douglas managed BLA, he was excluded from information about BLA and his own assets, did not learn about the conspiracy, "or his injury in fact until he read a Memorandum in Civil Action No. 10 on April 21, 2012." Complaint ¶55. Ford alleges that Belmont, KPMG BVI and Douglas were supposed to be acting on behalf of Ford and BLA, but instead, used "Ford's products and ideas to do work for the Barros Group and set up a company competing with Ford.[2]" Complaint ¶35. Ford alleges: "During this period of time KPMG BVI, Belmont, Douglas, McDonald, Beighton, Drury and Crumpler" launched a "smear and intentional disinformation campaign against Ford, ruining Ford's reputation in the insurance

[2] One of many examples of Ford conflating himself with BLA.

industry and by reason of the KPMG Defendants' actions, Ford is no longer able to work in the insurance industry." Complaint ¶79. Ford does not define the "period of time", describe the nature of the "smear and disinformation campaign", the persons to whom it was directed, who among the "KPMG Defendants" did what to ruin his reputation, or why this caused him to be excluded from the insurance industry. Ford implausibly asserts he did not notice that his reputation had been ruined or that he was excluded from the insurance community for years on end until 2012, when he picked up that Memorandum in "Civil Action No. 10."

The centerpiece of the Complaint is the very convoluted and contrived tale of the events involving Ford's annuity. The annuity allegedly owned an interest in lands known as "Dolphin Cove". The allegations indicate that Ford and his wife Mary purchased an annuity from BLA in 2002. The beneficiary is allegedly Ford's grandson, Kenneth[3]. Complaint ¶104.[4] Ford took out a loan from BLA (but does not allege when or for how much). It seems that the BLA liquidators informed Ford that the proceeds of the annuity would be set-off to pay down Ford's loan. The allegations about the communications concerning the annuity, the loan and the set-off are virtually incomprehensible and are contained in allegations scattered across the Complaint's 431 paragraphs. Ford alleges that on April 27, 2006, Melissa Schreiner an allegedly bookkeeper for Belmont, wrote to Ford to let him know that "AFTER payment of the purported $751,449.23 loan to Ford, his annuity had a cash value of $420,000." Complaint ¶102. Ford continues alleging: "Moreover, the June 30, 2006, printed valuation, sent to Ford in Florida on behalf of

[3] If Kenneth is the beneficiary, then Ford is not entitled to any damages relating to the annuity.

[4] Paragraph 104 and several other paragraphs in the Complaint allege that "quarterly statements from 2002 to 2006 from KPMG BVI, Belmont and Douglas to Leo Ford and Mary Ford…showing the annuity policy's not Boston Life's investment in Dolphin Cove." Since Ford does not allege the actual date he and Mary bought the annuity, the reader is forced to rely on clues like this to assume that the annuity was purchased in 2002.

KPMG BVI, Belmont and Douglas, shows a policy value of $1,122,680.86, AFTER repayment of the purported loan of $751,449.03—all of which KPMG kept." Id. Ford alleges he "relied on that representation that his investment in Dolphin Cove was his and safe." Id. Inconsistently, Ford also alleges that in "April 2006" he received a "false statement" of the "Leo and Mary Ford's annuity" which failed to list all of the assets owned by the annuity and that this false statement caused the Defendants to gain $2 million, and Ford "suffered personally as a result of the fraud $4,160,000." Complaint ¶134.

In March 2008 KPMG BVI, Belmont, Douglas McDonald and Beighton allegedly sent Ford an "accounting document" "showing that Ford's investment in the Dolphin Cove property on St. Thomas is held in Carina." Complaint ¶101. On July 22, 2010, Ford alleges he received a letter from KPMG BVI, Belmont, Douglas, McDonald and Beighton "stating assets in Ford's annuity policy belong to BLA, the BLA liquidation and KPMG."[5] Complaint ¶99. However, in the next paragraph Ford alleges the **exact opposite** stating: "A letter dated July 22, 2010 to Ford in Florida, in which KPMG BVI, Belmont, Douglas, McDonald and Beighton acknowledged that Ford's annuity policy, not BLA invested in the Dolphin Cove property…" Complaint ¶100.[6]

Ford concludes, alleging: "These predicate acts are ongoing, as recently as July 8, 2016…" Complaint ¶140. Evidently, Ford is referring to a letter (also not attached to the Complaint) sent by KPMG BVI, Crumpler and Drury "contending that Ford owes BLA $750,000, and Ford is not entitled to the proceeds of the St. Thomas property." Complaint ¶112.

---

[5] As is so often the case, the Complaint does not allege whether all the named Defendants jointly signed the letter, or how Ford was otherwise able to determine how it was sent by all of them.

[6] The same self-contradictory allegations about the July 22, 2010 letter are also found in paragraphs 135 and 136 of the Complaint. Of course, none of the documents allegedly making representations are attached to the Complaint.

With little further explanation, Ford alleges in paragraph 140 that "these predicate acts are ongoing… occur on a daily basis and will carry on into the future…"

Before turning to a discussion of legal issues, it is worth examining the damages Ford alleges he has suffered as a result of the Defendants' conduct. Like everything else in the Complaint these are bewilderingly varied, inconsistent, illogical and contradictory and scattered across the Complaint's 89 pages with no explanation of their basis or computation. In paragraph 14 Ford alleges the diversion of $2.7 million in BLA premiums.[7] In paragraph 74 Ford alleges that KPMG BVI, Belmont, Douglas, McDonald, Beighton, Drury and Crumpler failed to collect $5,065,000 from third parties on behalf of Ford and BLA, allegedly causing Ford to loose fees, clients and his reputation. In paragraphs 85, 86, 97, 105, 109, 111 Ford alleges that he suffered $182,416,000 in damages as a result of KPMG BVI assisting the Barros Group as well as a result of the "fraud." There is no explanation of how the failure to collect approximately $5 million caused damages of over $180 million or the nature of the "fraud."

In paragraph 134 Ford alleges, without explanation, that he lost $4,160,000 as a result of false statements concerning the value of his annuity, even though Ford later alleges in paragraph 177 the Dolphin Cove investment was only $2 million. In paragraph 125 Ford alleges that he lost $179,837,000 as a result of the "fraud"; but in the very next paragraph alleges he lost relatively modest $6,500,000 as a result of the "fraud". Again, the nature of the fraud is not alleged. In paragraph 133 Ford alleges that as a result of Andrea Douglas' alleged conduct she gained $1.5 million while he lost $157,216,000. Again there is no explanation as to how Ms.

---

[7] It seems from the allegation identifying the funds as "premium payments," that these funds likely belonged to BLA. See also, ¶¶48-49 in which Ford alleges the $2.7 million belonged to "BLA and Ford." The same is true of the $5,065,000 that the Defendants allegedly failed to collect.

Douglas caused over $150 million in damages while only gaining $1.5 million for herself, or what she allegedly did to obtain this sum of money.

Page 47 of the Complaint consists of a table of damages in which this time, Ford (now ignoring the damage allegations described above), asserts his "hard" losses are $136,205,000 which with interest of $43,632,000, totals $179,837,000 in total damages. Little is alleged concerning the basis or calculation of these damages.

### B. Standard for a Motion to Dismiss

The United States Supreme Court has held that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662 (2009)* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court continued stating that in adjudicating a motion to dismiss, a court should strip out "threadbare recitals of the elements of a cause of action supported by mere conclusory statements," which the Court is not bound to accept as true. *Iqbal* at 678. In *S. Fla. Water Mgmt. Dist v. Montalvo*, 84 F.3d 402, 409, n. 10 (11th Cir. 1996), the Eleventh Circuit stated: "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." "…[D]etermining whether a complaint states a plausible claim for relief [is]…a context-specific task that requires the reviewing court to draw on its judicial experience and *common sense." Iqbal.* at 679 (emphasis added). See also, *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Factual allegations must be sufficient to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Twombly*, 550 U.S. at 544. Ford's Complaint is a series of endlessly repeated, incoherent gripes about long ago events. Ford fails to explain or define the roles of the various Defendants, but is still arbitrarily grouping them

together in improbable ways. Ford's hyper-inflated damages make no sense at all and are disconnected from the garbled facts alleged in the Complaint. Ford's allegations that he did not discover the "conspiracy" against him, which allegedly drove him out of the insurance business, almost a decade before he filed this action, are so implausible they do not have to be taken as true under *Twombly* and *Iqbal.*

The Defendants should not have to respond to such muddled and burdensome nonsense. As the Court stated in *Warner Bros. Entertainment, Inc., v Ideal Worlds Direct,* 516 F.Supp.2d 261, 269 (S.D.N.Y. 2007), "to merit dismissal, a complaint must be so long and confusing as to 'overwhelm the defendants' ability to understand or mount a defense'." Quoting *Wynder v. McMahon*, 360 F.3d 278, 311 (2d Cir. 2004). Ford's 89 pages of vague, confusing self-contradictory allegations certainly falls into this category. In addition, Ford's allegations of the elements of his RICO claims, to the extent they make any sense at all, are contrived and consist of the "threadbare recitals of the elements of a cause of action supported by mere conclusory statements," condemned by the Supreme Court at page 678 of its opinion in *Iqbal.*

This is Ford's third attempt to allege colorable claims against the Defendants, with each effort being worse and more violative of basic pleading rules than the last. There are several reasons the Complaint should now be dismissed with prejudice.

## C. The Complaint Continues to Violate Rules 8 and 9, is a Shotgun Pleading and Should be Dismissed with Prejudice Pursuant to Rule 41.

### (1) The Complaint does not Comply with Rules 8 and 9(b):

A review of only the first few pages of the Complaint is sufficient to show that Ford, in violation of Rule 41(b), Fed. R. Civ. P. has failed to comply with the Court's instructions. In its March 15th Order, the Court pointed out that the wire and mail fraud, the basis of the RICO claims, must be alleged with the particularity required by Rule 9(b), Fed. R. Civ. P. Ford's idea

of compliance was to add 35 pages to the Complaint.[8] But this has only aggravated the problem; the allegations of the fraud, conspiracy, damages and other conduct allegedly committed by the Defendants are now more prolix and confusing than ever. Clearly, the Complaint is not the "short and plain statement of the claim showing that the pleader is entitled to relief," required by Rule 8(a)(2), Fed. R. Civ. P. Instead it is even more convoluted, confusing, vague and contradictory than its predecessor. The Complaint lacks the "simple, concise and direct" allegations required by Rule 8(d)(1).

It has been held a rambling and poorly organized complaint such as this, "places an unjustified burden on the court and the party who must respond to it." *Greg Beeche Logistics, LLC v Skanska USA Bldg. Inc.* 2014 WL 4656503 (D. Mass 2014). In *Salahuddin v Cuomo,* 861 F.2d 40, 42 (2d Cir. 1999) the Court stated: "dismissal under Rule 8 is "usually reserved for those cases where the complaint is so confused, ambiguous, vague or otherwise unintelligible, its true substance, if any is well disguised." See also, *Howard v. Koch,* 575 F.Supp. 1299 (E.D. N.Y. 1982) (purpose of Rule 8 is to protect defendants from undefined charges and the courts free of frivolous claims). In *Belanger v. BNY Mellon Asset Management, LLC,* 307 F.R.D. 55 (D. Mass 2015) the Court held that prolixity in a pleading is a burden on the judge and the parties and, if repeated, justifies a dismissal with prejudice. Such a Rule 8 dismissal is more than justified here. *LaCroix v. Western Dist. of Kentucky*, 627 Fed. Appx. 816, 819 n.1 (11th Cir. 2015).

**(2) Ford is Still Group Pleading:**

The March 15th Order also instructed Ford to refrain from "group pleading" where a Plaintiff lumps defendants together creating confusion as to who is alleged to have done what to

---

8 The Complaint's non-compliance with Rule 9(b) is discussed in more detail in section F infra.

whom. Order at 4; *Brooks Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997). Ford still collectively defines all of the Defendants as the "KPMG Defendants"[9] and continues in many instances to use that meaningless term the "KPMG Defendants" to make accusations against all the Defendants together.

The March 15th Order noted the lack of actionable allegations against Belmont and Douglas, other than where they are included as part of the "KPMG Defendants" collective definition.[10] Where he has not used the term "KPMG Defendants," to include them, Ford has simply added Belmont and Douglas' names to many paragraphs of the Complaint, thus including them as actors in a range of alleged and improbable wrongs without any explanation of how they came to be involved. This renders portions of the Complaint ridiculous.[11] For example, Ford alleges that Belmont and Douglas "agreed to not provide similar (insurance services) to a competitor for the…products that Ford designed." Complaint ¶29. Ford concludes therefore, they "had a duty to disclose to Ford **all of the actions complained of here.**" Id. (emphasis added). There is no basis alleged for this sweeping statement, nor is any writing attached which would memorialize this unlikely agreement.

**(3) The Complaint remains a shotgun pleading:**

The Complaint's ponderous mass of confusing and often contradictory allegations are all incorporated into Count I which purports to allege a RICO claim under 18 USC §1962(c). The allegations of Count I (which already include the preceding 398 paragraphs) are then re-alleged

---

[9] Complaint ¶2.

[10] See March 15 Order at p.7.

[11] Ford accuses all of the Defendants of sending him each allegedly fraudulent communication concerning the annuity. Clearly this is absurd, unless all of the Defendants signed each email, letter or statement sent to Ford on this subject. This remains unknown since Ford has not attached the allegedly fraudulent communications.

and incorporated into Count II, which purports to allege a claim for RICO conspiracy pursuant to 18 USC §1962(d). Thus the claim under Count I for conducting an "enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt" is re-alleged in, and confusingly combined with the allegations of Count II which is supposed to be alleging a conspiracy.

In *Navarro v City of Rivera Beach*, 192 F.Supp.3d 1353, 1373, (S.D. Fla 2016) this Court, faced with a complaint like Ford's, observed that a "quintessential shotgun pleading" is one which "incorporates a multitude of colorful facts, of very few of which actually support the elements of the causes of action alleged therein." The Court stated: that "the term also refers to pleadings that are 'replete with factual allegations and rambling legal conclusions.'" Id. Quoting, *Davis v. Coca Cola Bottling, Co.,* 516 F.3d 955, 979-80 (11th Cir. 2008).

**(4) Ford Lacks Standing to Seek Damages:**

The March 15 Order found the Amended Complaint unclear as to whether some or all of the damages alleged were suffered by Ford or by BLA. Once again Ford has failed to clarify this, and other than the confusing and contradictory allegations concerning the Dolphin Cove property, the damages alleged in the Complaint all seem to belong to BLA, not Ford. In the case of the Dolphin Cove damages, Ford fails to allege that he is authorized to seek damages on behalf of Mary and Kenneth, who is alleged to be the beneficiary of the annuity. See *Matos v. U.S. Dept. of Housing and Urban Dev.*, 995 F.Supp 48 (D. Conn 1997).

**(5) The Complaint Violates Rule 41 and Should be Dismissed.**

Under Rule 41(b), Fed. R. Civ. P.:

> If the plaintiff fails to prosecute **or to comply with these rules or a court order,** a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure

> to join a party under Rule 19--operates as an adjudication on the merits(emphasis added).

It has been held that dismissal under Rule 41 is a harsh remedy but one which is assigned to the court's sound discretion. *Ramsay v. Bailey*, 531 F.2d 706 (5th Cir. 1976). In *Goforth v. Owens*, 766 F.2d 1533 (11th Cir. 1985), the Eleventh Circuit affirmed the District Court's dismissal of an action, finding that dismissal for counsel's pattern of delay and failure to follow the Court's orders was not an abuse of discretion. In *Powell v. Harris*, 628 Fed. Appx. 679 (11th Cir. 2015) the Eleventh Circuit affirmed the District Court's dismissal of a pro se plaintiff's complaint pursuant to Rule 41 for failure to obey the court's order requiring compliance with Rules 8 and 10, Fed. R. Civ. P. See also, *Schmidt v. Herrmann*, 614 F.2d 1221 (9th Cir 1980) (under Rule 41 a court may dismiss a complaint with prejudice for repeated failure to plead in compliance with Rules 8 and 9).

This case has been pending for some two years. The Plaintiff has made two previous efforts to allege claims against the Defendants and has failed on each occasion to do so. In the March 15th Order, the Court identified specific defects in Ford's pleading and instructed him in crystal clear terms to correct them in compliance with the applicable Rules of Civil Procedure. Ford has ignored the Court's Order and submitted a Second Amended Complaint which is even more muddled, contradictory and violative of the Rules of Procedure than his previous efforts.

### D. The Statute of Limitation Has Expired[12]

The statute of limitation for a RICO claim is four years. *Agency Holding Corp. v. Malley Duff & Assoc., Inc.*, 483 U.S. 143, 107 S.Ct. 2759 (1987). A RICO claim accrues from the time the Plaintiff knows **or should have known** that he had been damaged, regardless of when he

[12] Belmont and Douglas adopt and incorporate the arguments they made on this topic and regarding the court's lack of in personam jurisdiction in their previous Motions to Dismiss Ford's Amended Complaint.

discovers that the damage was caused by a pattern of racketeering activity. *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013). Ford has admitted in his pleadings that he was on notice by mid-2010 at the latest, that he had been damaged by one of the so-called RICO predicate acts- the allegedly fraudulent communications about and the set-off of his annuity. *See* Complaint ¶99. With this knowledge, Ford should have brought his claims no later than July 2014. Ford insists that he was oblivious of his claims until reading "Civil Action No. 10."[13] Civil Action No. 10 involved the Barros Group's appropriation of BLA's insurance product and has no relationship to the annuity. Ford has admitted that he received notice of the liquidators' claims against the proceeds of the annuity by 2010 at the latest, and therefore, was required to bring any complaint on that subject by July 22, 2014.

The allegations of the Amended Complaint itself show that Ford's knowledge of all of the claims actually goes back much further.[14] Ford alleges that the Defendants overcharged Boston and engaged in "self-dealing and fraudulent transactions regarding Ford and BLA…" which resulted in BLA being placed into "voluntary liquidation." McDonald and Beighton were appointed liquidators "**on February 27, 2008**." Ford's allegations admit knowledge of the liquidation and therefore, claims based on that should have been brought no later than February 2012. Complaint ¶50-54. When the affirmative defense of statute of limitation is evident from the face of the Complaint, as it is here, the court may dismiss it. *Miller v. Woodham*, No. 05-12425, 2006 WL 9557498 at *1 (11th Cir. Apr. 12, 2006).

---

[13] This is not alleged to apply to Ford's claims concerning the annuity.

[14] The Amended Complaint is full of express or implicit admissions that show Ford knew or should have known of the claims as early as 2002, when the $2.7 million in Boston premiums was "diverted."

**E. Douglas and Belmont are not Subject to the Jurisdiction of this Court.**

Douglas and Belmont have previously asserted in their previous Motions to Dismiss the Amended Complaint (D.E. No. 72, 121), that they are not subject to the jurisdiction of this Court. Now Ford alleges that all of the Defendants including Belmont and Douglas assumed control of BLA and therefore, contracted to insure Mary and Kenneth. Complaint ¶333. This is an absurd allegation again grouping all the Defendants together, and which is contradicted by the allegations of the appointment of the liquidators. Ford alleges he purchased the annuity in 2002. Ford admits the liquidation of BLA did not begin until 2008. Ford has not alleged that Belmont of Douglas had any role in the liquidation. Nor has Ford alleged anywhere in the Complaint that the corporate veil of Belmont should be pierced to impose liability on Douglas.

Ford also alleges, "So Belmont was the administrator—and Douglas was an authorized signatory -- of an entity located in Miami, Florida, which received payments "from a trust in Florida." Again, the Complaint does not explain this hyper conclusory and cryptic statement. It appears to be based on the affidavit filed by Ford over a year ago (D.E. No. 84-1) (the "Ford Affidavit"), in opposition to the Motions to Dismiss the Amended Complaint.[15] Almost everything in the Ford Affidavit is patently false and misleading, as is confirmed by Attachments 1, 2 and 3. Attachment 1, a print-out memorializing events of 2003, states that **Belmont Trust, Ltd.**, not Defendant, **Belmont Insurance Management, Ltd**, was the administrator of Carina Investments, LLC ("Carina"). Carina was not an entity "located in Miami" as Ford falsely states. As the documents attached to the Ford Affidavit confirm. It is a Nevis entity located on that island, with a "business address" of **Morning Star Holdings, Ltd., P.O. Box 556, Main Street Charlestown, Island of Nevis.** Carina was owned by BLA**.** The Kleinfeld Law Firm of Miami,

[15] The Order required Ford not to rely on add-on pleadings such as the Ford Affidavit, but to include "every fact or allegation …within his Amended Complaint." Order p. 6.

Boston and Carina's lawyers, was simply listed as a U.S. mailing address for this BLA subsidiary.

Douglas is not listed as an "administrator" of the Nevis entity. According to Attachment 2 to the Ford Affidavit, in 2003, Douglas was merely a signatory on Carina's accounts at First Bank, Virgin Islands located in the **British Virgin Islands**. Attachment 2 also shows that Carina had issued a mortgage in Florida and that payments would be made monthly "**on to Boston Life**"**,** Ford's company, not to Douglas or Belmont. Nothing in or attached to Ford's Affidavit shows that Belmont and Douglas had minimum or **any contacts at all** with Florida. The Ford Affidavit actually confirms that the Court lacks jurisdiction over Belmont and Douglas. Ford has failed to overcome the Declarations filed by Douglas and Belmont (D.E. Nos. 72-1 and 72-2), attesting that they lack minimum contacts with Florida.

**F. <u>Ford Fails to State a Claim for RICO Under 28 USC §1962(c)</u>**

The Complaint fails to state a claim for RICO against Douglas and Belmont or anyone else. Under § 1962(c), "It shall be unlawful for any person employed by or associated with any **enterprise**…to **conduct or participate**… **in the conduct** of such enterprise's affairs through a pattern of **racketeering activity**…" (emphasis added). The RICO claims alleged in the Complaint, rest on a foundation of mail and wire fraud. As the Court stated in its March 15th Order, when pleading a RICO claim for mail and wire fraud, the plaintiff must state with particularity: "(1) the precise statements, documents or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud. *Ziemba v Cascade, Intl, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *American Medical Assn. v United Healthcare Corp.*, 588 F.Supp.2d 432, 433 (S.D. N.Y. 2008). See also, *American Dental*

*supra.*, at 1291 (11th Cir. 2010); Ford has once again failed to allege the role each Defendant played in the fraud, and has not alleged exactly what false statements Belmont or Douglas made to him, when those statements were made, how he was damaged and what motivated the making of the false statements. Instead Ford has just added Belmont and Douglas' names to paragraphs naming the other Defendants allegedly involved in transmitting the alleged wire and mail fraud with regard to the annuity issue. There is no explanation at all as to how all of the Defendants could have collectively sent each of the allegedly fraudulent communications between 2006 and 2010. As the court in *Di Vittorio v. Equidyne Extractive Industries, Inc*., 822 F.2d 1242, 1247 (2d Cir. 1987), stated, Rule 9(b) is "designed to further three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of a defense; (2) protecting a defendant from harm to his reputation or good will and (3) reducing the number of strike suits." All of these concerns are present in the instant case in which Ford casually smears the Defendants with vague but defamatory allegations for the admitted purpose of extorting some or all of the Dolphin Cove proceeds.

Although Ford alleges that he relied on these communications, this is both impossible and irrelevant. Ford alleges that he relied on representations that the annuity belonged to him and invested in the very same annuity that he had already invested in back in 2002. See e.g. Complaint ¶135.[16] This makes no sense. At the same time Ford alleges that he was receiving communications from the Defendants stating that the proceeds of the annuity would be set off to satisfy his outstanding debt to BLA. Therefore, there is no way Ford could have relied on statements that the annuity belonged to him. However, reliance is not relevant to a RICO wire/mail fraud claim. In such a case a plaintiff must allege that his damage was proximately

[16] In the very next paragraph, 136, Ford contradicts this now alleging that the July 22, 2010 communication stated that the "assets in Ford's annuity policy belong to BLA, the BLA liquidation and KPMG."

caused by the fraud. *Bridge, supra.* at 654 (2008); *First Nationwide Bank v Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994) (in order to have standing under RICO a plaintiff must show that he was damaged as a proximate cause of the defendant's predicate acts). Ford has not and cannot allege that his damages were **proximately caused** by the mail or wire fraud, as is required in order to assert a colorable claim for RICO. Ford's damage, if any, was proximately caused by the liquidators setting off the unpaid balance of Ford's loan against the annuity assets, not from communications stating who the annuity assets belonged to, or that the liquidators were asserting a claim to them.

Nor has Ford adequately alleged the vital "enterprise" element of RICO. It is well settled that the RICO enterprise must be separate from the defendants to the RICO claim. *Cedric Kushner Promotions Ltd., v. King,* 533 U.S. 158, 161 (2001); *Kelly v. Palmer, Reifler & Assoc., P.A.* 161 F. Supp. 2d 1356, 1378 (S.D. Fla. 2010). Ford has failed to allege this critical distinction. The Complaint actually states: "[a]ll the KPMG Defendants are associated with the alleged association in-fact enterprise…" but "Defendants are not the enterprise itself." Then: "the KPMG Defendants and other, but unidentified, individuals working for the KPMG Defendants are currently and/or have perpetrated racketeering activity **and are members of the association-in-fact enterprise.**" Complaint at ¶¶197-199 (emphasis added). Clearly Ford has failed to allege the existence of an enterprise separate from the Defendants, and in fact, has actually alleged that they are one and the same.

Nor has Ford adequately alleged that Belmont and Douglas participated in the mail and wire fraud. Instead, Ford has just added their names to paragraphs already containing the other Defendants. The Complaint does not explain what role Belmont and Douglas played with

respect to the allegedly fraudulent communications alleged in the Complaint. There is no allegation of any false statement made individually by Douglas or on behalf of Belmont.

### G. Ford has Failed to Allege a RICO Conspiracy Under 28 USC §1962(d)

Ford's RICO conspiracy claim fails for many of the same reasons as set out in Section F above. Ford has failed to allege the underlying mail and wire fraud with the particularity required by Rule 9(b), Fed. R. Civ. P.; has failed to distinguish between the Defendants and the "enterprise;" and has not alleged what fraudulent representations were made by Belmont and Douglas.

In addition, it is impossible to distinguish Count II from Count I. Ford has once again filed a shotgun pleading which incorporates all 413 preceding paragraphs, which include Count I, into Count II. Count II is supposed to allege a conspiracy to violate one or more of the subsections of section 1962. The incorporation of Count I into Count II makes it impossible to determine how the conspiracy differs from the defectively alleged Count I, and therefore, Count II necessarily fails to set forth a claim for conspiracy to commit RICO violations.

## CONCLUSION

Despite the Court's March 15th Order there has been no improvement in the quality of Ford's pleading. In fact, the current Complaint is more vague, confusing and implausible than Ford's last effort. It is now be clear that Ford cannot allege any viable claims against Belmont and Douglas. The Complaint should be dismissed with prejudice with the Court retaining jurisdiction to determine the amount of costs and attorney's fees that should be awarded to Belmont and Douglas.

Respectfully submitted,

BAST AMRON LLP
*Counsel for Defendants*
*Belmont Insurance Management Ltd*
*and Andrea Douglas*
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, Florida 33131
Telephone: 305.379.7904
Facsimile: 305.379.7905
Email: jbast@bastamron.com
Email: jhart@bastamron.com
Email: jkorch@bastamron.com

By: /s/ *Jeremy J. Hart, Esq.*
Jeffrey Bast, Esq. (FBN 996343)
Jeremy J. Hart, Esq. (FBN 510645)
Jeremy S. Korch, Esq. (FBN 14471)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of May, 2018, a true and correct copy of the foregoing has been filed with the Court and served on the parties below via CM/ECF.

- David Allan Freedman dfreedman@coffeyburlington.com, mpalmero@coffeyburlington.com, service@coffeyburlington.com
- Edward Alan Marod emarod@gunster.com, dpeterson@gunster.com, pdavid@gunster.com
- John William Terwilleger jterwilleger@gunster.com, dpeterson@gunster.com
- Paul Martin Platte paul@paulplatte.com, carol@cityattorneys.legal, info@paulplatte.com
- Sashi C. Bach sbach@bsfllp.com, jmalave@bsfllp.com, mcalvin@bsfllp.com, smcelroy@BSFLLP.com
- Stuart Harold Singer ssinger@bsfllp.com, krenae@bsfllp.com, mcalvin@bsfllp.com, sperkins@bsfllp.com
- Traci Hope Rollins traci.rollins@squirepb.com, carol.lesnick@squirepb.com, linda.parsons@squirepb.com, wpb_dckt@squirepb.com

/s/ *Jeremy J. Hart, Esq.*
Jeremy J. Hart, Esq. (FBN 510645)